IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | |
| v. | No. 4:25-CR-259-P |
| | |
| BENJAMIN SONG (01) | |
| CAMERON ARNOLD (02) | |
|   a/k/a "Autumn Hill" | |
| SAVANNA BATTEN (03) | |
| NATHAN BAUMANN (04) | |
| ZACHARY EVETTS (05) | |
| JOY GIBSON (06) | |
| BRADFORD MORRIS (07) | |
|   a/k/a "Meagan Morris" | |
| MARICELA RUEDA (08) | |
| ELIZABETH SOTO (09) | |
| INES SOTO (10) | |
| DANIEL ROLANDO (11) SANCHEZ-ESTRADA | |

**RESPONSE TO DEFENSE MOTIONS FOR BILL OF PARTICULARS**

# TABLE OF CONTENTS

**PAGE**

Introduction ........................................................................................................ 1

Background ......................................................................................................... 2

Legal Standard ................................................................................................... 7

Argument ............................................................................................................ 8

     I.    The United States has adequately disclosed the information needed for Defendants to form their defense. ................................................... 8

     II.   Defendants' specific arguments of alleged deficiencies are meritless or moot. ......................................................................................... 11

          A.    The United States need not give a detailed exposition of how it will prove knowledge and intent. .................................. 12

          B.    The attempted murder counts sufficiently allege the elements of the principal's offense and assert theories of liability as to Evetts and Arnold. ...................................................... 13

          C.    The material-support-for-terrorism count is sufficiently pleaded. ................................................................... 14

          D.    An indictment need not allege every act committed during the offense. ................................................................ 16

     III.  Multiplicity is not ripe before sentencing. .................................... 17

Conclusion ........................................................................................................ 19

Certificate of Service ....................................................................................... 21

**TABLE OF AUTHORITIES**

**CASES**                                                                                    **PAGES**

*Ball v. United States*,
   470 U.S. 856 (1985) ................................................................................................. 17, 18

*Holder v. Humanitarian Law Project*,
   130 S. Ct. 2705 (2010) .................................................................................................. 16

*Pinkerton v. United States*,
   66 S. Ct. 1180 (1946) .................................................................................................... 15

*United States v. Abu Khatallah*,
   151 F. Supp. 3d 116 (D.D.C. 2015) .............................................................................. 13

*United States v. Barker*,
   No. 3:16-CR-516-D, 2017 WL 4167512 (N.D. Tex. Sept. 20, 2017) ..................... 11, 14

*United States v. Bethany*,
   No. 3:18-CR-0297-S, 2020 WL 1976827 (N.D. Tex. Apr. 23, 2020) ................ 7, 11, 17

*United States v. Boswell*,
   109 F.4th 368 (5th Cir. 2024) ................................................................................... 7, 12

*United States v. Carreon,*
   11 F.3d 1225 (5th Cir. 1994) ...................................................................................... 7, 9

*United States v. Creech*,
   408 F.3d 264 (5th Cir. 2005) ........................................................................................ 13

*United States v. Davis*,
   53 F.4th 833 (5th Cir. 2022) ........................................................................................... 7

*United States v. Dominguez,*
   No. CR H-17-651-4, 2018 WL 2057442 (S.D. Tex. May 3, 2018) ............................... 19

*United States v. Felton,*
   417 F.3d 97 (1st Cir. 2005) ........................................................................................... 13

*United States v. Fleifel*,
   No. 3:12-CR-318-D 3, 2014 WL 6633049 (N.D. Tex. Nov. 24, 2014) ........................ 11

*United States v. Franco*,
   632 F.3d 880 (5th Cir. 2011) ........................................................................................... 8

**TABLE OF AUTHORITIES**

*United States v. Gonzales,*
   841 F.3d 339, 352 (5th Cir. 2016) ................................................................. 13

*United States v. Hagen,*
   Crim. No. 3:19-CR-0146-B, 2020 WL 1929848 (N.D. Tex. Apr. 21, 2020) ................. 9

*United States v. Hajecate,*
   683 F.2d 894 (5th Cir. 1982) ........................................................................ 17

*United States v. Hillis,*
   No. 4:23-CR-00164-ALM-AGD-13, 2025 WL 2078433 (E.D. Tex. July 7, 2025) ........ 7

*United States v. Johnson,*
   No. CR 14-238, 2017 WL 930633 (E.D. La. Mar. 9, 2017) ................................... 19

*United States v. Josephberg,*
   459 F.3d 350 (2d Cir. 2006) .......................................................................... 17

*United States v. Kaziu,*
   559 F. App'x 32 (2d Cir. 2014) ...................................................................... 13

*United States v. Martinez¸*
   599 F. Supp. 2d 784 (W.D. Tex. 2009) ............................................................ 19

*United States v. McDowell,*
   498 F.3d 308 (5th Cir. 2007) .................................................................. 11, 14

*United States v. Moody,*
   923 F.2d 341 (5th Cir. 1991) .......................................................................... 8

*United States v. Mostafa,*
   965 F. Supp. 2d 451 (S.D.N.Y. 2013) ....................................................... 11, 18

*United States v. Superior Growers Supply, Inc.,*
   982 F.2d 173 (6th Cir. 1992) .......................................................................... 9

*United States v. USPlabs, LLC,*
   338 F. Supp. 3d 547 (N.D. Tex. 2018) .............................................................. 8

*United States v. Vasquez,*
   867 F.2d 872 (5th Cir. 1989) .......................................................................... 7

# TABLE OF AUTHORITIES

## STATUTES

18 U.S.C. § 844 ........................................................................................................ 6

18 U.S.C. § 924(c) ............................................................................................... 5, 6

18 U.S.C. § 1114 ........................................................................................... 5, 11, 14

18 U.S.C. § 2101 .................................................................................................... 6

18 U.S.C. § 2339A ........................................................................................ 5, 14, 15

## OTHER AUTHORITIES

Pattern Jury Instructions: Fifth Circuit (Criminal) § 2.04 (2024) ............................... 11, 14

Pattern Jury Instructions: Fifth Circuit (Criminal) § 2.17 (2024) ..................................... 14

Pattern Jury Instructions: Fifth Circuit (Criminal) § 2.92A (2024) ...................... 11, 15, 16

## RULES

Federal Rule of Criminal Procedure 7(f) ...................................................................... 7, 11

# INTRODUCTION

The United States respectfully asks this Court to deny the motions for bill of particulars of Defendants Zachary Evetts (ECF No. 96) and Cameron Arnold (ECF No. 91).

*First*, a bill of particulars is not necessary because the United States has already furnished Defendants with sufficient information to prepare a defense and avoid surprise at trial. This information has come in the form of (1) detailed factual allegations of the original and superseding indictments, (2) the expansive discovery production of the United States in the case, and (3) an all-day presentation at a probable cause/detention hearing—complete with a PowerPoint slideshow running to over 70 slides, cross-examination of the case agent, and argument by counsel—at which the United States disclosed and explained the key evidence and its theory of the case. Because Defendants already have the information needed for their defense, their motions should be denied as impermissibly seeking broad generalized discovery that infringes on the Government's criminal discovery rights.

*Second*, Evetts's and Arnold's specific arguments about alleged deficiencies in the indictments are either meritless or moot. Evetts and Arnold provide no support for their claim that the material-support-for-terrorism count must allege the elements and *mens rea* of the predicate offenses, as well as their "victims," "damages," and "specific harms." Because this count tracks the statutory language and the Fifth Circuit's pattern jury instructions, it is sufficient. Evetts's further assertion that the Government must disclose how it intends to prove his knowledge and intent on that same count improperly

seeks a detailed exposition of the Government's evidence. Evetts and Arnold are also wrong in arguing—again without support—that the attempted-murder counts must allege their *mens rea*. These counts include the elements of the principal Benjamin Song's offenses and then give notice that the United States will pursue aiding-and-abetting and *Pinkerton* theories of liability as to Evetts, Arnold, and others. Because theories of liability are not elements of the offense and need not be alleged in the indictment, these counts need state no more. For all these claimed deficiencies, the arguments are moot given the disclosure of the information the Defendants claim to lack.

*Third*, Arnold's assertion that a bill of particulars is needed to cure alleged multiplicitous counts should be denied as premature, as any such multiplicity will not ripen until sentencing. It is black-letter law that the Double Jeopardy clause does not prohibit simultaneous prosecutions for the same offense, but instead prohibits duplicative punishment. Although Defendants may not be convicted and sentenced on multiplicitous counts, dismissal before trial is not needed. The correct course is to permit each count with sufficient proof to be submitted to the jury, and then, only after guilty verdicts are reached on each count, the Court should enter judgment on a single count. The Court need not reach this issue now.

## BACKGROUND

Late at night on July 4, 2025, a North Texas Antifa Cell ("Antifa Cell") of at least eleven operatives—including Evetts and Arnold—rioted and attacked the Prairieland Detention Center. The group was clad in "black bloc"—dark clothing with head and face coverings—to conceal their identities, and they brought with them body armor, combat-

style first aid kits, fireworks, and eleven firearms, including AR-15 style rifles. The attack began when most of the Antifa Cell, including Arnold, shot fireworks at the facility using a firework mortar, while Evetts and one other person destroyed a CCTV camera and vandalized vehicles and a guardshed on the Prairieland property. As the attack progressed, two unarmed DHS correctional officers went outside to investigate while other DHS personnel called local police for assistance. After an Alvarado police officer arrived, Benjamin Song, a leader in the group, yelled "get to the rifles!" and then, moments later, opened fire, striking the officer in the neck. The wounded officer fell to the ground but was able to return a few shots. Song continued firing rounds at the wounded officer and the two DHS correctional officers until his rifle jammed. The Antifa Cell then fled, with most of the defendants, including Evetts, arrested near the scene. Arnold was arrested the following day, while Song evaded capture for two weeks.

The United States detained the defendants, including Evetts and Arnold, under a 14-page criminal complaint that detailed the evidence collected in the weeks after the attack. (ECF No. 1). This included, among other things, disclosure of the items seized at the scene (including from Evetts's vehicle) or from the residences of the defendants, consisting of firearms, combat-related items like body armor and military-grade first aid kits, and Antifa-related paraphernalia and literature encouraging violent resistance against the United States. The complaint also indicated the Government's awareness of the events leading up to the attack, including that many of the defendants had attended a pre-attack meeting the night before.

In late September, the United States presented a comprehensive overview of its case at a seven-hour probable cause/detention hearing that Evetts and Arnold attended. (ECF No. 105). Reflecting the depth of the presentation and argument, the hearing transcript stretches to nearly 300 pages of substantive text. (*See generally id.*). During the United States' presentation, FBI Special Agent Joseph Weithorn testified about the key evidence—consisting of the seized items mentioned above as well as CCTV and body camera footage, cooperator testimony, gunshot residue tests, and chat messages recovered from the phones of Antifa Cell members—using a PowerPoint slideshow of more than 70 slides. A sample of some of the evidence as to Evetts and Arnold is below:

- Chat messages revealed that Evetts attended a daytime protest at Prairieland earlier on the day of the attack to conduct reconnaissance, sending back messages to the Antifa Cell regarding (1) the length of time which a vehicle entry gate remained open each time it opened, (*id.* at 93:3-19), (2) whether police were on site (*id.* at 94:3-8), and (3) how the barbed wire at the facility was arrayed (*id.* at 95:2-6);

- Evetts obtained the knife used to slash tires of vehicles at the facility (*id.* at 37:8-10);

- Chat messages and cooperator testimony confirmed that Evetts acquired the fireworks fired at the facility and transported them to the scene (*id.* at 94:8-18);

- Witness testimony and camera footage established that Evetts destroyed a CCTV camera that had a field of view of where the Antifa Cell was launching fireworks with a mortar, and chat messages confirmed that another Antifa Cell member had specifically flagged this CCTV camera in advance of the attack (*id.* at 38:2-39:2, 92:5-21);

- Arnold was present at a "gear check" meeting the night before the attack where Song discussed multiple-act tactics for the attack, stated he was "not going to jail" when asked if he would be peacefully arrested if the police responded during the attack, and also encouraged the other members of the Antifa Cell to bring weapons, body armor, and military-grade first aid kits (*id.* at 87:3-88:15).

- Cooperator testimony confirmed that Arnold participated in launching fireworks towards the Prairieland Detention Facility (*id.* at 36:21-37:5)

After Special Agent Weithorn finished his presentation, the defendants—including counsel for Evetts and Arnold—cross-examined him in questioning covering 100 transcript pages. (*See id.* at 138-234).

At the close of the hearing, the United States explained the evidence satisfying the elements of the offenses. (*See* ECF No. 105 at 266-72, 298-300). In particular, it stressed that the defendants' knowledge and intent relating to the offenses can be inferred from the facts of the attack itself. The daytime reconnaissance of security measures at the facility, the use of black bloc, the presence of assault rifles, body armor, and combat-style first aid kits, as well as the flight from the scene after the shooting are inconsistent with a peaceful protest and instead support that the defendants were aware that they were involved in an attack in which the use of deadly force was reasonably foreseeable. (*See id.* at 299-300). The Government further explained that intent and motive can be inferred from each individual's adherence to an extremist ideology that holds that violent force is justified to resist and overthrow the United States government. (*See id.* at 266-70). And the United States explained that many of the defendants were liable for the attempted murder under aiding-and-abetting and *Pinkerton* liability theories. (*See id.*).

In October, the United States indicted Arnold and Evetts in a seven-count indictment: one count for providing material support to terrorists, 18 U.S.C. § 2339A, three counts of attempted murder of officers of the United States that alleged aiding-and-abetting liability, *id.* § 1114(a)(3), and three counts for discharge of a firearm during a crime of violence that alleged aiding-and-abetting liability, *id.* § 924(c)(1)(A)(iii). (ECF No. 79). This indictment included nine numbered paragraphs of factual allegations

stretching over four pages of text incorporated into each of the substantive counts. (*Id.* at 1-4). These allegations include a general summary of the July 4 attack, the nature of the Antifa Cell, and the planning of the attack.

The grand jury returned the superseding indictment on November 14. (ECF No. 108). This document roughly doubles the factual allegations of the original, including 27 numbered paragraphs of facts covering eight pages of text. (*See id.* at 1-8). As to Evetts, it specifically adds allegations about his attendance at the "gear check" the night before the attack, his reconnaissance the day of the attack, and the numerous relevant chat messages he sent or received. (*See id.* 6-8; APP002-066 (redline)). As to Arnold, it alleges, among other things, that he attended the gear check and that both he and Evetts carpooled to Prairieland with the rest of the Antifa Cell. (*Id.* at 7-8). The superseding indictment also adds eight defendants, including Benjamin Song. Song, who was previously referred to as "coconspirator 1," is named as the principal in the attempted murder and 924(c) counts. (*Id.* at 14-19). As to Arnold and Evetts, the indictment includes counts for riot (Count 1), 18 U.S.C. § 2101, conspiracy to use and carry an explosive (Count 3), *id.* § 844(m), and use and carry of an explosive (Count 4), *id.* § 844(h)(1). (ECF No. 108 at 9, 12-13). The superseding indictment also amends the material-support-for-terrorism count to omit the conspiracy allegation, and it adds a reference to *Pinkerton* liability for the attempted murder and 924(c) counts. (*Id.* at 14-19).

The United States has provided and will continue to provide full discovery to Evetts, Arnold, and the other defendants in accordance with its discovery obligations. This discovery so far amounts to more than 5 TB of data and tens of thousands of pages.

It includes witness proffer notes, body camera and CCTV footage, investigative reports, expert reports, phone extracts, and chat messages.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 7(f) permits a defendant to move for a bill of particulars within 14 days of arraignment. A defendant "possesses no right to a bill of particulars." *United States v. Davis*, 53 F.4th 833, 845 (5th Cir. 2022) (cleaned up). A bill of particulars may be permitted when necessary to "obviate surprise at trial, enable the defendant to prepare his defense with full knowledge of the charges against him, and to enable double jeopardy to be pled in case of a subsequent prosecution." *United States v. Boswell*, 109 F.4th 368, 383–84 (5th Cir. 2024). A bill of particulars is "not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *Id.* So long as "the government has provided the information called for in some other satisfactory form then no bill of particulars is required." *United States v. Vasquez*, 867 F.2d 872, 874 (5th Cir. 1989). Information may come in a satisfactory form as discovery materials or through the prosecutor's explanations of the case at pretrial hearings. *See United States v. Carreon,* 11 F.3d 1225, 1239–40 & n.68 (5th Cir. 1994).

A "bill of particulars is not a discovery device." *United States v. Hillis*, No. 4:23-CR-00164-ALM-AGD-13, 2025 WL 2078433, at *4 (E.D. Tex. July 7, 2025). It cannot be used, for instance, "to discover all overt acts that might be proved at trial." *United States v. Bethany*, No. 3:18-CR-0297-S, 2020 WL 1976827, at *2 (N.D. Tex. Apr. 23, 2020) (cleaned up).

"[T]he criteria for the sufficiency of an indictment and for whether a district court erred (abused its discretion) in denying a bill of particulars are very similar." *United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991). "Generally, an indictment that closely tracks the language under which it is brought is sufficient to give a defendant notice of the crimes with which he is charged." *United States v. Franco*, 632 F.3d 880, 884 (5th Cir. 2011). But an indictment need not "allege in detail the factual proof that will be relied upon to support the charges." *United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 557 (N.D. Tex. 2018).

## ARGUMENT

Defendants' motions fail on three grounds. First, their general complaints that they lack sufficient information to form their defense are belied by the extensive disclosure the Government has made of its case. Second, their specific conclusory arguments about alleged deficiencies in the indictment are either meritless or moot. Third, Arnold's claim that a bill of particulars is needed to remedy alleged multiplicitous counts should be denied as unripe before sentencing.

## I.    The United States has adequately disclosed the information needed for Defendants to form their defense.

Defendants' broad claims that the indictment lacks sufficient information to allow them to form their defense fail because the United States has disclosed the key evidence and its theory of the case in multiple sufficient forms. As recounted above, the superseding indictment greatly expanded the factual allegations of the original indictment in describing the Antifa Cell, the attack, and the basis for concluding that Evetts and

Arnold committed the charged offenses. (*See generally* ECF Nos. 79, 105). Moreover, the original and superseding indictments are sufficient even without the extensive factual recitation because they set forth the elements of the offenses charged and sufficiently apprise Defendants of the charges against them because they "state the offense using the words of the statute itself." *United States v. Hagen*, Crim. No. 3:19-CR-0146-B, 2020 WL 1929848, at *12 (N.D. Tex. Apr. 21, 2020) (cleaned up and quoting *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992)). The superseding indictment, in other words, goes well beyond the minimum required to allow Defendants to prepare their defense and plead double jeopardy at a subsequent prosecution.

Beyond the indictments, the United States has also disclosed the bulk of the evidence and its theory of the case in other forms. It has done so in the original criminal complaint (ECF No. 1) and in the comprehensive presentation at the probable cause/detention hearing (ECF No. 105). It also produced voluminous discovery. Standing alone, any one of these four sources of information—the indictments, criminal complaint, disclosure at pre-trial hearings, and voluminous discovery—would be sufficient. Together, they compel the conclusion that Defendants' motions are due to be denied. *See Carreon*, 11 F.3d 239–40 & n.68 (bill of particulars not necessary where the government "provided Carreon with substantial discovery materials revealing the government's theory of the case, and the prosecutor further explained this theory during pretrial hearings").

All indications from Defendants' other papers suggest they are fully aware of the nature of the Government's case and have already been able to form their defense.

Evetts's motion in limine sought to, among other things, suppress the evidence of weapons, ammunition, body armor, and Antifa-related propaganda seized from his vehicle at Prairieland and from his apartment. (ECF No. 86). He also sought to preclude statements from his co-conspirators unless the Court held an elaborate pre-trial *James* hearing, and he tried to gag the United States from being able to use evidence about his adherence to a violent and extremist ideology by precluding the use of words like Antifa. (*See id.*). Given that Evetts sought to exclude the key evidence the Government has already disclosed, he seems to be able to form a defense. Evetts has also seemingly admitted that he understands the Government's case. (ECF No. 86 at 17 ("The Government's case, simply put, is that a number of persons made a plan to attack upon the Prairieland Detention Center on 4 July 2025 and pursuant to that plan, attempted harm was committed against three law enforcement personnel which included the unlawful discharge of a firearm"); *id.* at 5 ("Based upon the Government's presentation of evidence at a probable cause hearing . . . this so-called 'Antifa Cell' is expected to be a central theme in the Government's case")). And he has elsewhere claimed that, despite the United States producing voluminous discovery, the relevant documents in the case amount to "a few hundred pages" (ECF No. 104 at 5-6), so it is difficult to see how he needs the Government to lay out its case in a bill of particulars.

At bottom, Defendants' motions are the latest episode of their efforts to obtain generalized discovery outside of the bounds of the rules of criminal procedure. A first example of this is Evetts's motion in limine that sought, among other things, a *James* hearing. (ECF No. 86). Courts in the Fifth Circuit routinely reject such requests as

requiring a "mini-trial" that would be a "form of elaborate pretrial discovery conducted under the guise of requiring that [the government] satisfy the predicate facts" for the admission of co-conspirator testimony. *United States v. Fleifel*, No. 3:12-CR-318-D 3, 2014 WL 6633049, at *4 (N.D. Tex. Nov. 24, 2014). Evetts's motion to compel discovery further sought vast discovery well outside the scope of criminal discovery. (*See generally* ECF No. 100). That Defendants' efforts now come under the guise of Rule 7(f) does not change that they impermissibly seek "generalized discovery and the Government's theory of the case." *Bethany*, 2020 WL 1976827, at *2. As another court explained in rejecting a similar motion for bill of particulars in a material-support-for-terrorism case:

> There is no provision in the Federal Rules of Criminal Procedure for the type of broad, sweeping discovery defendant seeks. Nothing about the nature of this indictment or the produced discovery is particularly unusual to require a bill of particulars. That this case has a high profile and involves allegations of material support to terrorists does not change the general rules that this court is to apply.

*United States v. Mostafa*, 965 F. Supp. 2d 451, 466 (S.D.N.Y. 2013). Because granting Defendant's motions would "wrongly infringe upon the Government's right not to disclose all of its evidence, witnesses, and theory of the case," *Bethany*, 2020 WL 1976827, at *2, this Court should deny the motions.

## II. Defendants' specific arguments of alleged deficiencies are meritless or moot.

Outside of generally complaining that Defendants lack notice of the specifics of the Government's case, Defendants offer a shotgun blast of meritless arguments about alleged deficiencies in the indictments. All these arguments proceed the same way: a

conclusory statement that the indictments are missing some essential element that is unaccompanied by citation to apposite authority supporting that the indictment is insufficiently pleaded (as opposed to establishing that further jury instructions are needed). Indeed, Defendants perform the remarkable feat of failing to cite a single case since the late 1980s in which a court in the Fifth Circuit granted a bill of particulars or dismissed an insufficiently pleaded indictment. The United States briefly rebuts some of these meritless arguments below.

### A.    The United States need not give a detailed exposition of how it will prove knowledge and intent.

Evetts is wrong when he claims that a bill of particulars is needed because it is purportedly "opaque" how the United States will prove that he "intended or knew that his conduct would support terrorists." (ECF No. 96 at 8). The United States need not give a "detailed exposition of its evidence or . . . explain the legal theories upon which it intends to rely at trial." *Boswell*, 109 F.4th at 383–84. In any case, the United States has already indicated how it will prove knowledge and intent—including from the facts regarding the attack itself, Evetts's attendance at the pre-attack "gear check," his involvement in conducting reconnaissance for the attack, and chat messages he sent or received leading up to the attack. (ECF No. 108 at 6-8 (superseding indictment); ECF No. 105 at 266-72 (United States' summation at probable cause hearing)). The United States has also explained that it will rely on Evetts's adherence to a violent and extremist Antifa ideology for purposes of motive and intent. (ECF No. 105 at 266-70). This is common and proper in material-support-for-terrorism cases regardless of whether the ideology is

that of Antifa, white supremacy, or Islamic jihad. *See, e.g.*, *United States v. Felton,* 417

F.3d 97, 101–02 (1st Cir. 2005) (evidence of defendants' white supremacist "beliefs and

associations was highly relevant" to motive and intent); *United States v. Kaziu*, 559

F. App'x 32, 35–36 (2d Cir. 2014) (evidence of Islamic jihadist "political beliefs"

correctly admitted to prove the "*mens rea* element of the charged offense"); *United States*

*v. Abu Khatallah*, 151 F. Supp. 3d 116, 143–44 (D.D.C. 2015) (similar).

### B.    The attempted murder counts sufficiently allege the elements of the principal's offense and assert theories of liability as to Evetts and Arnold.

Evetts and Arnold mistake theories of liability with elements of the offense when

they claim that the attempted-murder counts are insufficient because they fail to state

their *mens rea*. (*See* ECF No. 96 at 9; ECF No. 91 at 5). Defendants cite nothing

establishing the indictment is insufficient—Evetts merely declares that "there is no way

to determine" his *mens rea* based on it (ECF No. 96 at 9), and Arnold claims to not

"know which elements or facts she is to defend against, particularly regarding specific

intent" (ECF No. 91 at 5). But theories of liability such as aiding-and-abetting or

*Pinkerton* liability are not elements of the offense, and a defendant may be convicted

under them "even without such theor[ies] charged in the indictment." *United States v.*

*Creech*, 408 F.3d 264, 273 (5th Cir. 2005). For *Pinkerton* liability, a defendant may be

convicted of offenses such as first-degree murder—which requires malice aforethought

and premeditation—committed by fellow conspirators in furtherance of a conspiracy if

such murder was "reasonably foreseeable" that it might occur during the planned offense.

*United States v. Gonzales*, 841 F.3d 339, 352 (5th Cir. 2016); *see also* Pattern Jury

Instructions: Fifth Circuit (Criminal) § 2.17 (2024) ("Pattern Jury Instr."). When an indictment states that a defendant aided or abetted an offense, it necessarily means that the defendant "shared in the criminal intent of the principal." *United States v. McDowell*, 498 F.3d 308, 313 (5th Cir. 2007) (cleaned up); *see also* Pattern Jury Instr. § 2.04. An indictment provides more than sufficient notice for a defense relating to a theory of liability when it includes (1) the essential elements of the principal's underlying offense tracking the language of the statute and (2) a statement that the defendant is liable for that offense under a theory such as aiding and abetting. *See United States v. Barker*, No. 3:16-CR-516-D, 2017 WL 4167512, at \*7 (N.D. Tex. Sept. 20, 2017).

The attempted-murder-of-federal-officers counts are sufficiently pleaded. They allege all the material elements of an offense under 18 U.S.C. § 1114(a)(3), including the *mens rea* that Song acted with malice aforethought, and they assert aiding-and-abetting and *Pinkerton* liability. (*See* ECF No. 108 at 14-16). Evetts and Arnold have failed to establish that the indictment need say more. In any case, their arguments are moot because the United States has disclosed and pleaded ample facts supporting the requirements for the theories of liability. (*See supra* at 4-6).

### C.    The material-support-for-terrorism count is sufficiently pleaded.

Evetts's and Arnold's unsupported claim that the material-support-for-terrorism count is insufficient because it relies on more than one predicate offense and because it allegedly fails to assert the elements for the predicate offenses is without merit. (ECF No. 91 at 2-3; ECF No. 96 at 8). This count (Count 2) incorporates the indictment's preceding factual allegations, tracks the language of the statute, 18 U.S.C. § 2339A, and the relevant

jury instructions in alleging, among other things, that the defendants provided and

attempted to provide material support "knowing and intending" that the material support

was to be "used in preparation for, and in carrying out, violations of 18 U.S.C. §§ 844(f),

1361, and 1114." (*Compare* ECF No 108 at 11, *with* 18 U.S.C. § 2339A, *and* Pattern Jury

Instr. § 2.92A).[1] Although the Defendants claim that it must allege much more, they cite

---

[1] Count 2 reads:

> On or about July 4, 2025, in the Northern District of Texas, the defendants, **Cameron Arnold**, also known as Autumn Hill, **Zachary Evetts**, **Benjamin Song**, **Savanna Batten**, **Bradford Morris**, also known as Meagan Morris, **Maricela Rueda**, **Elizabeth Soto**, and **Ines Soto**, provided and attempted to provide material support and resources, as those terms are defined in 18 U.S.C. § 2339A(b)(1), and did conceal and disguise the nature of the material support and resources, including property, services, training, communications equipment, weapons, explosives, personnel (including themselves), and transportation, knowing and intending that they were to be used in preparation for, and in carrying out, violations of 18 U.S.C. §§ 844(f), 1361 and 1114, and in preparation for and carrying out the concealment of an escape from such violations.
> All in violation of 18 U.S.C. § 2339A and *Pinkerton v. United States*, 66 S. Ct. 1180 (1946).

ECF No. 108 at 11. The statute, in relevant part, provides:

> Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section . . . 844(f) or (i), . . . 1114, [or] 1361 . . . or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or attempts or conspires to do such an act, shall be fined under this title, imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life.

18 U.S.C. § 2339A(a). And the Fifth Circuit's pattern jury instructions provide as follows:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt: First: That the defendant provided material support or resources to [attempted to provide material support or resources to] [conspired to provide material support or resources to] _____ (describe person(s) or organization(s) described in the indictment) [concealed or disguised [attempted to conceal or disguise] [conspired to conceal or disguise] the nature, location, source, or ownership of material support or resources]; and Second: That the defendant did

*(Cont'd on next page)*

no relevant authority. Between them they muster only a single case—*Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2717-18 (2010)—which indirectly addresses how the element of intent should ultimately be defined in jury instructions, *see* Pattern Jury Instr. § 2.92A (addressing *Holder*), but nothing in *Holder* suggests that the indictment's language tracking the statute and pattern jury instructions is insufficient. Citing nothing, Defendants claim that the indictment must allege the elements of the predicate offenses, including "potential victims, harms, and mental states," (ECF No. 91 at 2-3), as well "damage amounts" (ECF No. 96 at 8). But their briefs do not explain why this is the case, nor is the United States aware of authority requiring these things be alleged in an indictment. And in any case, the United States has disclosed evidence that the Defendants participated in a plan to attack the Prairieland facility in which the Defendants sought to damage or destroy government property with explosives and in which there was a foreseeable risk that co-conspirator Song would use deadly force when faced with police response. Any complaints Defendants might have on this count are thus both meritless and moot.

> **D.    An indictment need not allege every act committed during the offense.**

Arnold's argument that the indictment is so general that he cannot form his defense on grounds like alibi overstates the law. (ECF No. 91 at 3-4). He cites no relevant

---

so knowing or intending that the material support or resources were to be used to prepare for [carry out] a violation of _____ (describe federal terrorism offense).

Pattern Jury Instr. § 2.92A.

authority, and courts have repeatedly held that a defendant is not entitled, for example, "to discover all overt acts that might be proved at trial." *E.g.*, *Bethany*, 2020 WL 1976827, at *2. If Arnold is right that he is entitled to discovery supporting an alibi defense for every act that forms any part of an offense, then nothing could satisfy him other than a detailed accounting as to each and every defendants' words and actions during the entirety of the offenses. This cannot be correct because "a bill of particulars cannot be required to compel revelation of the full theory of the case or all the evidentiary facts." *United States v. Hajecate,* 683 F.2d 894, 898 (5th Cir. 1982). The United States has disclosed the key facts needed to form a defense, and Arnold has failed to point to anything specific supporting that he is entitled to more.

## III.    Multiplicity is not ripe before sentencing.

Arnold incorrectly argues that his motion should be granted because certain counts—the material-support count and the underlying terrorism counts, on the one hand, and the three section 924(c) counts for use of a firearm during a crime of violence as to each of the three victim officers[2] on the other—might be multiplicitous, but this misunderstands the relevant law. It is well established that the Double Jeopardy clause does not prohibit simultaneous prosecutions for the same offense; it prohibits duplicative punishment. *See United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006). The Supreme Court's ruling in *Ball v. United States*, 470 U.S. 856 (1985) is instructive for

---

[2] Arnold asks whether the Government is alleging a single firearm was used or carried in connection with these crimes or multiple. (ECF No. 91 at 7). The 924(c) counts allege a single rifle carried by Benjamin Song. (ECF No. 108 at 17-19).

how district courts should approach claims of multiplicitous counts. There, a defendant was charged in a multi-count indictment with unlawfully receiving and possessing the same weapon where receipt and possession were established by a single act. *Id.* at 857. He was convicted of both receiving and possessing the weapon. *Id.* The Supreme Court held that although the defendant could not be *punished* twice for what was in reality the same offense, that did not mean the multiplicitous counts needed to be dismissed pre-trial:

> [T]he Government may seek a multiple-count indictment against a felon for violations of §§ 922(h) and 1202(a) involving the same weapon where a single act establishes the receipt and possession, [but] the accused may not suffer two convictions or sentences on that indictment. *If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses.*

*Id.* at 865 (emphasis added). In other words, multiplicitous counts are generally resolved *after* trial, not before it, and each count with sufficient evidence should be submitted to the jury.

Courts faced with similar arguments to Arnold's have refused to engage in a multiplicity analysis before trial. For instance, in a case in which a defendant argued that a count for conspiracy to provide material support to terrorism and the associated count for providing material support to terrorism were multiplicitous of each other, the court refused to address it pre-trial. *See Mostafa*, 965 F. Supp. 2d at 464 ("multiplicity is properly addressed by the trial court at the sentencing stage . . . The Court will not engage in a multiplicity inquiry at this time"). Courts in the Fifth Circuit

have similarly rejected pre-trial requests to dismiss purportedly multiplicitous counts. *See, e.g.*, *United States v. Martinez¸* 599 F. Supp. 2d 784, 794 (W.D. Tex. 2009) ("the danger [of multiplicity] is only inchoate at the time of charging and does not become full-fledged until after sentencing" and "[a]ny such argument is premature and will only be addressed once these matters have been brought to trial"); *United States v. Dominguez*, No. CR H-17-651-4, 2018 WL 2057442, at *5 (S.D. Tex. May 3, 2018) (denying as premature a motion to dismiss multiplicitous count); *United States v. Johnson*, No. CR 14-238, 2017 WL 930633, at *13 (E.D. La. Mar. 9, 2017) ("While Defendant is correct that, if Counts 2 and 3 are multiplicitous, Defendant could not be convicted and sentenced to both counts, he incorrectly suggests that we would have to dismiss one of the counts now."). This Court should do likewise.

## CONCLUSION

The United States respectfully asks this Court to deny the motions for bill of particulars of Defendants Zachary Evetts (ECF No. 96) and Cameron Arnold (ECF No. 91).

Dated: November 18, 2025                    Respectfully submitted,

                                            RYAN RAYBOULD
                                            UNITED STATES ATTORNEY

                                            *s/ Matthew Capoccia*
                                            Matthew Capoccia
                                            Assistant United States Attorney
                                            Texas State Bar No. 24121526
                                            801 Cherry Street, Suite 1700
                                            Fort Worth, Texas 76102
                                            Telephone: 817-252-5200

Email: matthew.capoccia@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2025, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorney of record who has consented in writing to accept this Notice as service of this document by electronic means. A courtesy copy of the filed motion has also been emailed to the above-mentioned defense counsel.

*s/ Matthew Capoccia*
Matthew Capoccia
Assistant United States Attorney