**DEFENSE EXHIBIT ONE**

AO 106 (Rev. 04/10) Application for a Search Warrant

## UNITED STATES DISTRICT COURT

for the

Northern District of Texas

NORTHERN DISTRICT OF TEXAS
FILED

JUL - 9 2025

CLERK, U.S. DISTRICT COURT

By_____
Deputy

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

5621 Cowden Street
Fort Worth, Texas 76114

)
)
)
)
)
)

Case No.  4:25-MJ-466

**FILED UNDER SEAL**

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
5621 Cowden Street, Fort Worth, Texas 76114, as further described in Attachment A.

located in the _____Northern_____ District of _____Texas_____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 111 | Assault on a Federal Officer |
| 18 U.S.C. §§ 924(c) | Possession of a Firearm in Furtherance of a Crime of Violence |

The application is based on these facts:

See attached Affidavit of FBI Special Agent Robin Ford-Lofland.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Special Agent Robin Ford-Lofland, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___7/9/25___

City and state:  Fort Worth, Texas

_____
*Judge's signature*

United States Magistrate Judge Jeffrey L. Cureton
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

IN THE MATTER OF THE SEARCH OF:

5621 COWDEN STREET, FORT WORTH,
TEXAS

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, Robin Ford-Lofland, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application under Rule 41 of the

Federal Rules of Criminal Procedure for a warrant to search the real property located at

5621 Cowden Street, Fort Worth, Texas, hereinafter **"Subject Premises,"** more

particularly described in Attachment A, for the things described in Attachment B.

2.      As will be explained below, on the evening of July 4, 2025, there was a

concerted attack on the Federal Immigration and Customs Enforcement Detention

Facility known as Prairieland Detention Center ("Prairieland") located at 1209 Sunflower

Lane, Alvarado, Texas.  The violations of law under investigation include but are not

limited to the following: 18 U.S.C. §§ 111 (Assault on a Federal Officer); 371

(Conspiracy); 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence);

1114 (Protection of Officers and Employees of the United States, and Officers Assisting

Such an Officer); 1361 (Damage to Government Property);

Affidavit in Support of Application for Search Warrant - Page 1

1512 (Tampering with a Witness, Victim, or an Informant); and 2 (Aiding and Abetting) (hereinafter "the Target Offenses"). Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that the Target Offenses have been committed, are being committed, and will be committed by the individuals described in this affidavit. There is also probable cause to search the **Subject Premises** described in Attachment A for evidence of these crimes, contraband, fruits of crime, and other items illegally possessed; property designed for use, intended for use, or used in committing a crime as described in Attachment B.

## AGENT BACKGROUND

3.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") Dallas Field Office. I have been employed with the FBI since February 2022. Currently, I am assigned to the Dallas Health Care Fraud Strikeforce, which consists of Agents from the FBI, HHS-OIG, and other law enforcement agencies, along with attorneys from the Department of Justice and the United States Attorney's Office. My responsibilities as a Special Agent on the Health Care Fraud Strikeforce include the investigation of a variety of federal offenses, such as conspiracy, healthcare fraud, and money laundering, among other offenses. Based on my training and experience, I am familiar with the ways that criminals conduct their business. I have used various investigative techniques, such as interviewing witnesses, interviewing defendants, conducting surveillance, and executing search, seizure, and arrest warrants in my federal investigations.

Affidavit in Support of Application for Search Warrant - Page 2

GOV_P06_00003027

I am familiar with how criminals use their telephones, vehicles, and social media accounts to facilitate the commission of these types of offenses. I have experience in reviewing data retrieved from various electronic devices such as cell phones, computers, thumb drives and other electronic storage devices.

4.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses, and the review of records. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5.    Federal law enforcement is conducting a criminal investigation of Ines Soto ("I. SOTO"), Bradford Winston Morris a/k/a Meagan Morris ("MORRIS"), Nathan Josiah Baumann ("BAUMANN"), Elizabeth Soto ("E. SOTO"), Maricela Rueda ("RUEDA"), Seth Edison Sikes ("SIKES"), Joy Abigail Gibson ("GIBSON"), Zachary Jared Evetts ("EVETTS"), Cameron Arnold a/k/a Autumn Hill ("ARNOLD"), Shelby Donahue ("DONAHUE"), Savanna Batten ("BATTEN"), Benjamin Song ("SONG"), Daniel Rolando Sanchez Estrada ("SANCHEZ"), and others (hereinafter the "Target Subjects") regarding the Target Offenses.

6.    More specifically, on or about July 4, 2025, at approximately 10:37 PM Central Daylight Time (CDT), the Prairieland Detention Center, located at 1209 Sunflower Lane, Alvarado, Texas, became concerned that a group of unidentified

Affidavit in Support of Application for Search Warrant - Page 3

GOV_P06_00003028

subjects were breaking into the facility. Prairieland Detention Center is a Department of Homeland Security ("DHS") detention facility that holds persons related to immigration violations or are awaiting deportation hearings.

7.      At approximately 10:42 PM CDT, the Target Subjects were observed on CCTV spraying graffiti, firing fireworks towards the facility, and using high powered flashlights. DHS officers manning the facility then called 9-1-1, prompting a response from Alvarado Police Department ("APD").

8.      At approximately 10:59 PM CDT, an APD officer was dispatched to the Prairieland Detention Center to make contact with the then-unidentified subjects (later identified to be the Target Subjects). Upon arrival on scene, one or more of the Target Subjects opened fire, shooting the APD officer in the neck and/or upper back area. The Target Subjects also shot at DHS Correctional Officers within Prairieland Detention Center. The shooting was captured on both CCTV and the APD officer's body-camera. Review of the APD officer's body-camera and interviews of the correctional officers indicated there were two probable shooters using AR-style rifles to fire at the officers. The correctional officers estimated the Target Subjects discharged between 20 and 30 rounds of what appeared to be automatic machinegun fire. One of the AR-style rifles that was recovered at the scene had a bullet "stove-piped" or jammed in the chamber thereby causing the weapon to malfunction.

Affidavit in Support of Application for Search Warrant - Page 4

9.      Shortly thereafter, Bradford Winston Morris a/k/a Meagan MORRIS, was traffic-stopped after fleeing the scene in a red/maroon 2007 Hyundai and was taken into custody by the Johnson County Sheriff's Office ("JCSO"). That is, a detective with JCSO was on the way to Sunflower Lane when he was informed that a red/maroon Hyundai was observed fleeing the scene and that the vehicle was headed in the detective's direction. During the traffic stop, a black pistol was observed in plain view in the vehicle and the occupant was asked if there were any other firearms in the vehicle. The sole occupant, MORRIS, told JCSO officers that there was another firearm in the backseat. At that time, the officers observed an AR-15 style rifle in the backseat of the car. MORRIS was removed from the vehicle and detained. The JCSO officers observed two Kevlar ballistic style vests, one of which was in the backseat and the other which was in the back of the van. There was also a ballistic helmet in the vehicle. MORRIS had a loaded magazine in his pocket that matched the pistol and a handheld-radio in his possession. MORRIS was Mirandized and waived his rights. MORRIS told officers that he met these people online and that he transported some of the Target Subjects down from Dallas. MORRIS said the plan was to go to the location to make some noise. MORRIS claimed ownership of all the firearms in the vehicle.

10.     Further, during the course of the investigation, MORRIS was interviewed by a Special Agent with the FBI and a Ranger with Texas Department of Public Safety. MORRIS was Mirandized and waived his rights. MORRIS told the FBI that he was at home in Oak Cliff and that he heard about an event on a Signal Group Chat that he was a

**Affidavit in Support of Application for Search Warrant - Page 1**

part of. MORRIS told the FBI that he had been a part of the group chat for a while and that he had been invited to the group chat years ago after attending a protest. MORRIS explained he drove himself, his girlfriend (ARNOLD), and two people he knew by nicknames: "Champagne" and "Rowan." During the course of the investigation, MORRIS identified Joy Abigail GIBSON as the individual he knew as "Rowan." MORRIS said that "Champagne" and Rowan, a/k/a GIBSON, were strangers, but he invited them to his home in Oak Cliff to ride together to the event at Prairieland Detention Center. MORRIS said he drove the four of them there and parked in a nearby area. MORRIS said he took his handgun, his AR-15 style rifle, and a bullet proof vest. MORRIS said he brought those for his own protection and that he also brought four handheld radios. MORRIS said he gave three of the radios to ARNOLD, Champagne, and Rowan, a/k/a GIBSON, and they decided that MORRIS would stay in the car to protect the vehicle to make sure no one broke into the vehicle. While MORRIS was in the car, he saw multiple other vehicles parked in the area to include a red car parked in front of him and a white SUV. During the course of the investigation, the red car MORRIS described was determined to be 2016 Red Mazda CX5 registered to Zachary Jared EVETTS. Further, during the course of the investigation, the white SUV was determined to be a 2017 White Nissan Rogue that was driven by Nathan Josiah BAUMANN, who resides in College Station, Texas. MORRIS explained that he observed a male get out of the front driver's seat of the red car and pull out a cart/wagon and load the cart/wagon with fireworks and a case of water.

Affidavit in Support of Application for Search Warrant - Page 2

GOV_P06_00003031

MORRIS denied seeing any firearms being loaded into the cart/wagon, and he stayed in the car. MORRIS said that at some point he heard gun shots and waited for his friends for approximately two minutes and then decided that was long enough and he left. Shortly after leaving, MORRIS was stopped by JCSO as referenced above.

11.     At approximately 11:10 PM CDT, JCSO Deputies made contact with seven additional subjects at the intersection of Tanglewood Dr. and Burnett Blvd. on foot, approximately 300 yards east of the engagement of the APD officer. The subjects were dressed in black, military-style clothing, body armor, and covered in mud. Some of the subjects were armed and others had radios. Additional firearms, magazines containing ammunition, and body armor were found during a search of the area between this encounter and the Prairieland Detention Center.

12.     The following subjects were taken into custody by law enforcement: Ines SOTO, Nathan Josiah BAUMANN, Elizabeth SOTO, Maricela RUEDA, Seth Edison SIKES, Joy Abigail GIBSON, and Savanna BATTEN.

13.     During a search incident to arrest, law enforcement found a Black Motorola Cell Phone in Black Case and a Google Cell Phone in Green Case in GIBSON's backpack inside a Faraday bag. Based on my training and experience, I know that Faraday bags are used to block certain electromagnetic signals, including phone signals. Based on my training and experience, I also know that Faraday bags are commonly used by criminal actors to prevent law enforcement from tracking location information through cell phones.

**Affidavit in Support of Application for Search Warrant - Page 3**

Based on this, I have reason to believe that the individuals involved in this offense were actively attempting to conceal their activities from law enforcement.

14.     GIBSON was transported to the Alvarado Police Department. GIBSON chose not to speak to investigators without counsel present. GIBSON was thereafter transported to the Johnson County Jail, where GIBSON remains in custody.

15.     During the course of the investigation, the FBI has determined that E. SOTO and I. SOTO are related and that they reside at 5621 Cowden Street, Fort Worth, Texas, more particularly described in Attachment A. That is, E. SOTO and I. SOTO list that address on their Texas driver's license.

16.     I am familiar with significant information about the investigation to date that has been submitted in other probable cause warrants for investigative steps. Based on the investigation thus far, at least one person stated that he saw a flyer on a Discord chat and went to the location without knowing any of the other participants. Another individual was found with a backpack containing multiple pieces of paper, some of which included flyers that indicated anti-government extremist ideology. At least one individual also stated that he did not know there was going to be any violence during the demonstration.

17.     Based on my training and experience, I am aware that those involved in planning calculated and coordinated acts of violence often will retain in their residences, and in rooms occupied by them, items and records related to such criminal conspiracy.

Affidavit in Support of Application for Search Warrant - Page 4

18.    For example, on or about July 5, 2025, when law enforcement executed a valid search warrant at MORRIS's Dallas, Texas residence (the "56th Street Residence") related to this case, they recovered nine firearms, three body-armor vests, spray paint cans and fireworks.

19.    Additionally, at least one of the **Target Subjects**, RUEDA, asked another person to remove and transport property from her home. While in custody on or about July 6, 2025, RUEDA called Daniel Sanchez, whom the FBI believes to be RUEDA's romantic partner, and told him to move her vehicle from near the 56th Street Residence and to go to her home to "move whatever you need to move at the house." The next day, an FBI surveillance team observed Sanchez moving multiple packages from his residence and transport at least one box to an apartment in Denton, Texas. The FBI executed a search warrant on the Denton apartment, found the box Sanchez moved, and recovered anti-government propaganda.

20.    Based on the aforementioned, there is probable cause to believe that evidence of these crimes, contraband, fruits of crime, and other items illegally possessed; or property designed for use, intended for use, or used in committing a crime as described in Attachment B, will be located inside the **Subject Premises**.

### TECHNICAL TERMS

21.    Based on my training and experience, I use the following technical terms to convey the following meanings:

Affidavit in Support of Application for Search Warrant - Page 5

GOV_P06_00003034

a. Internet Protocol Address: An Internet Protocol address ("IP address") is a unique numeric address used by devices on the Internet. Every device attached to the Internet must be assigned a public IP address so that Internet traffic sent from and directed to that device may be directed properly from its source to its destination. An IP address acts much like a home or business street address—it enables devices connected to the Internet to properly route traffic to each other. Devices connected to the Internet are assigned public IP addresses by Internet service providers ("ISPs"). There are two types of IP addresses: IPv4 (Internet Protocol version 4) and IPv6 (Internet Protocol version 6). An IPv4 address has four sets ("octets") of numbers, each ranging from 0 to 255, separated by periods (e.g., 149.101.82.209). An IPv6 address has eight groups ("segments") of hexadecimal numbers, each ranging from 0 to FFFF, separated by colons (e.g., 2607:f330:5fa1:1020:0000:0000:0000:00d1).

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

22.    As described above and in Attachment B, this application seeks permission to search for records that might be found at the **Subject Premises**, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

Affidavit in Support of Application for Search Warrant - Page 6

23.    *Probable cause.* I submit that if a computer or storage medium is found at the **Subject Premises**, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

24.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files and information that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic

Affidavit in Support of Application for Search Warrant - Page 7

evidence that establishes how computers were used, the purpose of their use, who used

them, and when. There is probable cause to believe that this forensic electronic evidence

will be on any storage medium at the **Subject Premises** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the

Affidavit in Support of Application for Search Warrant - Page 8

crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

Affidavit in Support of Application for Search Warrant - Page 9

25.    *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

      a.  The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

      b.  Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

GOV_P06_00003039

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

26.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

27.    Because it is possible that more than one person shares the **Subject Premises** as a residence, it is possible that the **Subject Premises** will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

**Affidavit in Support of Application for Search Warrant - Page 11**

## CONCLUSION

28.    I submit that this affidavit supports probable cause for a warrant to search

the **Subject Premises** described in Attachment A and seize the items described in

Attachment B.

Respectfully submitted,

_____
Special Agent Robin Ford-Lofland
Federal Bureau of Investigation

Subscribed and sworn to before me on this _____ 9th _____ day of July 2025 at _____

_1:31_ a.m./p.m., in Fort Worth, Texas.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

**Affidavit in Support of Application for Search Warrant - Page 12**

## ATTACHMENT A

*Property to be searched*

The **Subject Premises** to be searched is known as 5621 Cowden Street, Fort Worth, TX 76114, including the residence, any storage, sheds, and any vehicles locate on the property at the time of execution. The **Subject Premises** is further described as a single-family, one-story residence with blue siding and white garage. The **Subject Premises** are located between Kaw Avenue and Biway Street, Fort Worth, Texas. The front door and garage face south:



Attachment A—Page 1

GOV_P06_00003042

**ATTACHMENT B**

*Property to be seized*

1.      All records relating to violations of the following: 18 U.S.C. §§ 111 (Assault on a Federal Officer); 371 (Conspiracy); 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence); 1114 (Protection of Officers and Employees of the United States, and Officers Assisting Such an Officer); 1361 (Damage to Government Property); 1512 (Tampering with a Witness, Victim, or an Informant); and 2 (Aiding and Abetting) (hereinafter "the Target Offenses"), those violations involving the following known individuals: Ines Soto ("I. SOTO"), Bradford Winston Morris a/k/a Meagan Morris ("MORRIS"), Nathan Josiah Baumann ("BAUMANN"), Elizabeth Soto ("E. SOTO"), Maricela Rueda ("RUEDA"), Seth Edison Sikes ("SIKES"), Joy Abigail Gibson ("GIBSON"), Zachary Jared Evetts ("EVETTS"), Cameron Arnold a/k/a Autumn Hill ("ARNOLD"), Shelby Donahue ("DONAHUE"), Savanna Batten ("BATTEN"), Benjamin Song ("SONG"), Daniel Rolando Sanchez Estrada ("SANCHEZ"), and others (hereinafter the "Target Subjects") and occurring between on or about July 4, 2025, and on or about July 6, 2025, including:

   a.  Any and all firearms, ammunition, fireworks, weapons, magazines, and ballistic vests;

   b.  Any and all flyers, printed materials, social media posts, and communications concerning: anti-government ideology; over throwing the U.S. Government; anti-law enforcement; interfering with Immigration and

Attachment B—Page 1

Customs Enforcement and/or other law enforcement or government functions;

c.  Any and all notes, plans, training materials, manifestos, and drawings;

d.  Any and all spray paint or other paint material;

e.  Any and all receipts, bills, invoices, or similar documents showing the purchase of any of the above items;

f.  Any and all contact lists;

g.  Any and all text messages, phone logs, instant messages, private messages, emails, voicemails and other forms of electronic communication using a cellular telephone or electronic device;

h.  Any and all photographs including still photos, negatives, videos, showing evidence of the aforementioned offenses and that will help identify others involved in the offenses;

i.  Any and all faraday bags or other similar type containers; and

j.  Any and all cellular telephones, laptops, radios, and other communication devices.

2.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

Attachment B—Page 2

a.  evidence of who used, owned, or controlled the COMPUTER at the time

the things described in this warrant were created, edited, or deleted, such as

logs, registry entries, configuration files, saved usernames and passwords,

documents, browsing history, user profiles, email, email contacts, "chat,"

instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER,

such as viruses, Trojan horses, and other forms of malicious software, as

well as evidence of the presence or absence of security software designed to

detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to

determine the chronological context of computer access, use, and events

relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the

crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or

similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are

designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

Attachment B—Page 3

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disk drives or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

Attachment B—Page 4

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Attachment B—Page 1