IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | No. 4:25-CR-259-P |
| CAMERON ARNOLD, ET AL., | |
| *Defendants*. | |

**BRIEF IN SUPPORT OF UNITED STATES' MOTION IN LIMINE TO
PRECLUDE DEFENDANTS FROM PRESENTING LEGALLY INVALID
DEFENSE**

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................. 1

Background.................................................................................................................. 2

Legal Standard............................................................................................................. 3

Argument ..................................................................................................................... 4

    I.    Defendants cannot assert a right of homicidal self-defense because they were not free from fault in prompting any law enforcement use of force. ..................................................................................................... 4

    II.    Even if Defendants were free from fault in prompting a law enforcement response, they cannot establish that the victim officer's use of force was unreasonable. ................................................................ 8

Conclusion ................................................................................................................ 12

Certificate of Service ................................................................................................ 13

Certificate of Conference.......................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beard v. United States*,
    158 U.S. 550 (1895)............................................................................................5

*Anderson v. United States,*
    170 U.S. 481 (1898)............................................................................................5

*Brothers v. Zoss*,
    837 F.3d 513 (5th Cir. 2016) ...................................................................9, 10, 11

*Dixon v. United States*,
    548 U.S. 1 (2006)................................................................................................9

*Graham v. Connor*,
    490 U.S. 386 (1989)............................................................................................9

*Hinojosa v. City of Terrell, Tex.*,
    834 F.2d 1223 (5th Cir. 1988) ......................................................................10, 11

*Luce v. United States*,
    469 U.S. 38 (1984)..............................................................................................3

*Mathews v. United States,*
    485 U.S. 58 (1988)..............................................................................................4

*United States v. Bailey*,
    444 U.S. 394 (1980)............................................................................................4

*United States v. Branch*,
    91 F.3d 699 (5th Cir. 1996). .......................................................................passim

*United States v. Feola,*
    420 U.S. 671 (1975)............................................................................................6

*United States v. Mumuni Saleh*,
    946 F.3d 97 (2d Cir. 2019) .................................................................................5

*United States v. Taylor,*
    680 F.2d 378 (5th Cir. 1982). .............................................................................3

## TABLE OF AUTHORITIES

*United States v. Thompson*,
 253 F.3d 700, 2001 WL 498430 (5th Cir. 2001) ............................................................... 3

*United States v. Wagner*,
 834 F.2d 1474 (9th Cir. 1987) ........................................................................................... 5

*United States v. Waller*,
 605 F. App'x 333 (5th Cir. 2015) ...................................................................................... 9

*Waters v. Lockett*,
 896 F.3d 559 (D.C. Cir. 2018) ........................................................................................... 5

### **Other Authorities**

Pattern Crim. Jury Instr. 5th Cir. § 1.39 (2024) ...................................................................... 4

### **Statutes**

18 U.S.C. § 111 ...................................................................................................................... 6

18 U.S.C. § 1114 .................................................................................................................... 6

# INTRODUCTION

The United States respectfully moves in limine for an order barring the Defendants from introducing any further evidence or argument at trial that relate to legally invalid claims of self-defense or defense of others. This motion has been brought on by Defendants' apparent intention, revealed through questioning at trial, to claim that Defendant Benjamin Song was legally justified in attempting to gun down law enforcement officers because a responding police officer purportedly used excessive force in pointing his service weapon at a defendant who was refusing to comply with the command to stop.

Any assertion of self-defense or defense of others is legally insupportable for two reasons. First, it has long been the rule that to assert self-defense against law enforcement, a "defendant [must] be free from fault in prompting [law enforcement's] use of force." *United States v. Branch*, 91 F.3d 699, 712 (5th Cir. 1996). Because the Defendants' unlawful actions in firing explosives at a federal detention facility and in destroying government property ultimately triggered the law enforcement response, the Defendants are categorically barred from pleading self-defense. Second, even if not barred because they were at fault, the Defendants cannot, as a matter of law, make the necessary showing that the responding officer's display of force in pointing his weapon at a non-compliant defendant was objectively unreasonable under the circumstances. These are both questions of law for the Court to decide.

Because any claim that the attempted killing of federal officers was justified is legally insupportable, further evidence, argument, or questioning raising this defense is

irrelevant and can serve only as a thinly veiled attempt to encourage the jury to nullify any verdict in this case.

## BACKGROUND[1]

This Court's scheduling orders established an orderly procedure intended to "minimize time after commencement of the trial in resolving differences in the language to be included in the Court's charge to the jury." *See* Dkt. No. 84 ¶ 16; Dkt. No. 119 ¶ 16. Under this procedure, the United States was to send Defendants its proposed jury instructions, and each Defendant was to respond with objections and a proposal for "the text of *all additional instructions* [each defendant] wishes to have included in the court's charge to the jury" that were not included in the United States' original proposal. *Id.* ¶¶ 16(a)–(b) (emphasis added). The parties were then to meet face-to-face to discuss the parties' positions and to "identify[ ] areas of disagreement" that the Court would need to resolve, after which the United States would submit the "Agreed Charge" to the Court, noting the parties' positions. *Id.* ¶¶ (c)–(d).

The parties followed this procedure, meeting face-to-face and submitting the Agreed Charge to the Court as required. At no time did any Defendant mention anything about a self-defense instruction—not in their written responses to the proposed charge, not in the meet-and-confer, and not in response to the United States' submission of the Agreed Charge.

---

[1] This motion is filed on the fifth day of the jury trial in this matter, and thus the United States omits a substantive summary of the evidence and testimony offered at trial given the Court's familiarity with the evidence.

**Brief in Support of United States' Mot. in Lim. for Legally Invalid Defense – Page 2**

Of the Defendants who made opening statements at trial, none mentioned self-defense. Defendant Song's counsel, however, reserved his opening. Yet the Defendants' cross-examination of many testifying officers—including specifically the three victim officers who were fired upon—revealed that the Defendants are attempting to raise a claim of self-defense or defense of a third party based on the notion that Song or one of the other Defendants was entitled to gun down the responding police officer after he pointed his service weapon at a defendant who was evading detention.

## LEGAL STANDARD

In limine rulings have "developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). A motion in limine should be granted when the presentation of irrelevant evidence or argument risks inviting jury nullification. *See United States v. Thompson*, 253 F.3d 700, 2001 WL 498430, at *16 (5th Cir. 2001) (unpublished table opinion). "Jury nullification is not a 'right' belonging to the defendant," *id.*, and a "trial judge may block defense attorney's attempts to serenade a jury with the siren song of nullification," *id.* (cleaned up and quoting *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993)). "A judge has wide discretion to control the material presented by counsel" in arguments to the jury, and may preclude presentation of "baseless" legal theories. *United States v. Taylor,* 680 F.2d 378, 380 (5th Cir. 1982).

A district court should refuse to give a requested jury instruction "that lacks sufficient foundation in the evidence." *Branch*, 91 F.3d at 712. "If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not

entitled to present evidence in support of that defense at trial." *United States v. Bailey*, 444 U.S. 394, 415 (1980). To justify an instruction on an affirmative defense, a defendant must offer more than the "merest scintilla of evidence," *Branch*, 91 F.3d at 712; instead, he must provide evidence "sufficient for a reasonable jury to find in [the defendant's] favor." *Mathews v. United States,* 485 U.S. 58, 63 (1988). A requested instruction lacks a sufficient foundation if it relies on a basis that "essentially indulges and even encourages speculations." *Branch*, 91 F.3d at 712 (cleaned up).

## ARGUMENT

This Court should grant the United States' motion in limine for two reasons. First, Defendants are not free from fault in prompting law enforcement's use of force, and thus they are barred from pleading self-defense or defense of others. Second, Defendants cannot make the minimum showing that law enforcement's use of force, viewed from the perspective of a reasonable officer at the scene, was objectively unreasonable under the circumstances. This is a matter of law for the Court to decide, and the undisputed facts seen in the light most favorable to the Defendants compel the conclusion that the responding officer's display of force was objectively reasonable.

**I.    Defendants cannot assert a right of homicidal self-defense because they were not free from fault in prompting any law enforcement use of force.**

It has long been established that it is "a necessary precondition to the claim of self-defense that the defendant be free from fault in prompting [law enforcement's] use of force." *Branch*, 91 F.3d at 717; *see also* Pattern Crim. Jury Instr. 5th Cir. § 1.39 (2024). This rule derives from the general principle that an aggressor may not avail himself of a

claim of self-defense. More than a century ago, the Supreme Court explained in *Anderson v. United States* that where "the slayer brings on the difficulty for the purpose of killing the deceased, or violation of law on his part is the reason of his expectation of an attack, the plea of self-defense cannot avail." 170 U.S. 481, 508 (1898); *see also Beard v. United States*, 158 U.S. 550, 564 (1895) (holding that defendant may not use force in self-defense if he "provoke[d] the assault"). Consistent with this rule, the Fifth Circuit and its sister circuits hold that self-defense is unavailable where "the defendants' need to defend themselves arose out of their own armed aggression." *Branch*, 91 F.3d at 717.[2]

The Fifth Circuit's decision in *United States v. Branch* illustrates the extent to which a defendant's assertion of homicidal self-defense against law enforcement is barred where the defendant's unlawful actions prompted law enforcement's response. 91 F.3d 699 (5th Cir. 1996). *Branch* involved a prosecution arising from the 1993 confrontation at the Branch Davidians' compound in Waco, Texas. The United States initially sent ATF officers to serve search and arrest warrants on sect members after discovering that they were amassing a large supply of weaponry to fight the federal government. Shortly after the officers' arrival at the compound, they were met with a barrage of gunfire. The defendants, Davidian sect members, were ultimately convicted of multiple offenses. On appeal, the Fifth Circuit held that the district court correctly declined to give a self-defense

---

[2] *See, e.g.*, *United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could not, as a matter of law, have been acting in self-defense"); *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) ("A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself."); *United States v. Wagner*, 834 F.2d 1474, 1486 (9th Cir. 1987) (holding that self-defense is unavailable as a matter of law where the defendant is the aggressor, because "[o]ne who is the aggressor in a conflict culminating in death cannot invoke the necessities of self-preservation").

**Brief in Support of United States' Mot. in Lim. for Legally Invalid Defense – Page 5**

Case 4:25-cr-00259-P   Document 334   Filed 02/27/26   Page 10 of 18   PageID 3713

jury instruction requested by the defense. The court first ruled that any claim of self-defense was foreclosed because the evidence established that the defendants shot first. *Id.* at 716. The court also explained that even if one credited the defendants' claim that the ATF fired the first shots, the defendants would not be entitled to the instruction because "[i]t is a necessary precondition to the claim of self-defense that the defendants be free from fault in prompting the ATF's use of force." *Id.* at 717. This is because the general principles of self-defense "must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties." *Id.* at 714. As the court explained, "[w]e do not need citizen avengers who are authorized to respond to unlawful police conduct by gunning down the offending officers." *Id.* (quoting *United States v. Johnson,* 542 F.2d 230, 233 (5th Cir. 1976)). And the court specifically ruled as to one of the members who proceeded to the front door with an assault rifle to confront the ATF agents that he was not entitled to claim self-defense: "A member of a conspiracy to murder federal agents, who dresses for combat, retrieves an assault rifle, and proceeds to the front door to confront government agents executing a lawful warrant, is not entitled to claim the benefit of self-defense when the hoped-for confrontation with the agents occurs." *Id.* at 718.

*Branch*'s rule prohibiting defendants from claiming self-defense after they wrongfully bring about a confrontation with law enforcement accords with federal law that provides special protection to federal officers. As the Supreme Court observed in *United States v. Feola,* 420 U.S. 671, 679, 684 (1975), the statutes which prohibit the killing or assault of federal officers, 18 U.S.C. §§ 111, 1114, were enacted to give "maximum

Brief in Support of United States' Mot. in Lim. for Legally Invalid Defense – Page 6

protection to federal officers" and to create "the highest possible degree of certainty that those who killed or assaulted federal officers were brought to justice." Because police responses often require some degree of force, any rule other than the one announced in *Branch* that would allow a criminal to claim legal justification to kill police officers based on the defendant's perception that the amount of force applied was excessive would frustrate these purposes and risk permitting criminals to get away with murdering officers.

*Branch* supports that any assertion of self-defense or defense of third parties is legally insupportable. The Defendants—and especially Benjamin Song, who organized the attack on Prairieland and ultimately attempted to kill several victim officers—wrongfully brought about a law enforcement response by firing explosives (fireworks) at the prison and destroying government property. It is undisputed that officials at Prairieland called 9-11 and reported that someone was attempting to breach the facility based on these actions. This led to the victim Alvarado police officer arriving at the scene and being fired upon within seconds of getting out of his vehicle. Just as the Davidians in *Branch* could not claim self-defense because they could not satisfy the "necessary precondition" that they be "free from fault in prompting the ATF's use of force," the Defendants are barred from claiming self-defense where their own crimes prompted federal officials to respond with force. Moreover, just as in *Branch*, any claim of self-defense is factually insupportable because the Defendants—specifically, Benjamin Song—fired the first shot.

Song in particular should also be barred from asserting self-defense because the evidence establishes that he was seeking out a confrontation with federal officers. The CCTV video evidence from the prison, GX10, and the testimony of the two victim

corrections officers support that after the Defendants were told to leave and that the police had been called, Song remained in place armed with an AR-15 near the roadway from which any law enforcement response would arrive. The victim police officer's body-worn camera footage establishes that Song shouted "get to the rifles" within seconds of the officer's arrival and that he opened fire almost immediately thereafter. Just like the defendant in *Branch* who proceeded to the front door with an assault rifle to confront the ATF agents, Song cannot claim self-defense: a member of a criminal conspiracy who is "dresse[d] for combat," armed with "an assault rifle," and who places himself into a position "to confront government agents executing [their lawful duties] is not entitled to claim the benefit of self-defense when the hoped-for confrontation with the agents occurs." 91 F.3d at 718.

## II. Even if Defendants were free from fault in prompting a law enforcement response, they cannot establish that the victim officer's use of force was unreasonable.

Because the Defendants cannot satisfy the necessary precondition for a claim of self-defense that they be free from fault in prompting the law enforcement response, the Court need not reach the question whether the Defendants could otherwise establish the elements of self-defense. Nonetheless, Defendants' claims would fail because, even when seen in the light most favorable to Defendants, the undisputed facts support that Defendants cannot make a minimum showing that law enforcement's "use of force, viewed from the

perspective of a reasonable officer at the scene, was objectively unreasonable under the circumstances." *Branch*, 91 F.3d at 715.[3]

To assess whether an officer's use force is reasonable, a court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Brothers v. Zoss*, 837 F.3d 513, 518 (5th Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *see also id.* (explaining that Graham's "reasonableness" standard also applies to investigatory stops). The court must apply "the perspective of a reasonable officer on the scene, rather than [judge] with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 396–97). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting

---

[3] The *Branch* court held that a defendant "bears the initial burden of production" for self-defense and that only after meeting his burden of production must the Government "bear the burden of persuasion and must negate self-defense beyond a reasonable doubt." 91 F.3d at 712, 714 n.1.  The Fifth Circuit has observed in an unpublished opinion that the Supreme Court's decision in *Dixon v. United States*, 548 U.S. 1 (2006), which held that affirmative defenses like duress must be proved by the defense by a preponderance of the evidence, calls into question whether self-defense should also be proved by a defendant by a preponderance of the evidence.  *See United States v. Waller*, 605 F. App'x 333, 336–37 (5th Cir. 2015).  Nonetheless, even spotting the Defendants the more favorable pre-*Dixon* standard announced in *Branch*, Defendants still cannot make the minimum showing necessary.

**Brief in Support of United States' Mot. in Lim. for Legally Invalid Defense – Page 9**

them, without regard to their underlying intent or motivation." *Id.* And whether an officer's actions were objectively unreasonable is a "matter[ ] of law for the court." *Id.* at 517.

The Fifth Circuit has repeatedly held that an officer's pointing a weapon at a non-compliant suspect during the course of an arrest or detention is not excessive as a matter of law. *See, e.g.*, *Brothers*, 837 F.3d at 519–20 (reversing and remanding denial of qualified immunity where officers pointed weapons at non-compliant subjects). The Fifth Circuit's caselaw distinguishes between the "use of force (*e.g.,* firing a gun)" and "the display of force employed as a conditional threat to use actual force *if necessary*" that occurs when an officer points a gun at a suspect. *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1231 (5th Cir. 1988). The Fifth Circuit has explained that there is good reason to treat a display of force as reasonable during the course of a lawful seizure. A show of force "may actually have the effect of decreasing violence" because an officer who points a gun at a suspect "may be able to abort a potentially violent situation." *Id.* at 1231. And on the other hand, if an officer "wait[s] until the situation escalates further before drawing his gun," he may "thereby end up having to (or believing he has to) shoot to protect himself or others." *Id.*

Applying these standards here to the undisputed facts viewed in the light most favorable to the Defendants compels a conclusion that the victim officer's show of force was reasonable as a matter of law. Even under Defendants' most favorable telling of events, these are the undisputed facts: the victim police officer, having received a report from a dispatcher that a suspect was attempting to breach a prison, arrived at the scene at 11 pm; the officer saw evidence of vandalism and destruction of government property; then, after sighting one masked defendant clad in black who did not comply with the command to

**Brief in Support of United States' Mot. in Lim. for Legally Invalid Defense – Page 10**

stop while he was fleeing detention and another defendant armed with an AR-15 standing in the dark nearby, the officer pointed his service weapon at the non-compliant defendant for several seconds before the officer was gunned down by a barrage of bullets.[4]

Each of the *Graham* factors applied here supports the decision to use force. A reasonable officer at the scene could have had reasonable suspicion in concluding that the non-compliant defendant was the one who committed the crime reported to the officer—attempting to breach into a federal prison. That is a serious offense, as was the destruction of property at a federal prison that the officer observed. Given the time of day, the suspected crimes, and the non-compliant Defendant's attire, a reasonable officer could have perceived him to be a threat and potentially armed. Finally, the Defendant resisted detention, refusing to comply with the instruction to stop. Under these circumstances, the victim police officer's show of force was objectively reasonable. *See Brothers*, 837 F.3d at 519–20; *Hinojosa*, 834 F.2d at 1231. It is of no moment that the Defendants claim that the non-compliant Defendant was actually unarmed or that the Defendants were purportedly peacefully protesting—at best, these are facts that could only be known with "the 20/20 vision of hindsight." *Brothers*, 837 F.3d at 518. Based on the facts that were known from the perspective of a reasonable officer on the scene, any claim of self-defense or defense of third parties must fail as a matter of law.

---

[4] The United States does not believe that the victim police officer actually pointed his weapon at the non-compliant Defendant, but for purposes solely of this motion the United States does not dispute that Defendants' most favorable interpretation of the events is that the officer did point his weapon at the non-compliant suspect for several seconds.

**Brief in Support of United States' Mot. in Lim. for Legally Invalid Defense – Page 11**

## CONCLUSION

Because any defense that Defendants might raise that Song or another Defendant was entitled to shoot at the victim officers based on self-defense or defense of others is legally invalid, further argument and evidence about these topics is irrelevant and can serve only a single purpose: the potential for jury nullification. The United States therefore seeks an order barring the Defendants from offering evidence or argument concerning these legally invalid defenses.

Dated: February 27, 2026               Respectfully submitted,

 

                                         RYAN RAYBOULD
                                         UNITED STATES ATTORNEY

                                         *s/ Matthew Capoccia*
                                         Matthew Capoccia
                                         Assistant United States Attorney
                                         Texas State Bar No. 24121526
                                         801 Cherry Street, Suite 1700
                                         Fort Worth, Texas 76102
                                         Telephone: 817-252-5200
                                         Email: matthew.capoccia@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorney of record who has consented in writing to accept this Notice as service of this document by electronic means. A courtesy copy of the filed motion has also been emailed to the above-mentioned defense counsel.

*/s/ Matthew Capoccia*
Matthew Capoccia
Assistant United States Attorney

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred by email regarding the relief requested in this motion with counsel for all Defendants on February 27, 2026, and attached the draft brief in support of the motion for their review. Counsel for Cameron Arnold/Autumn Hill confirmed their client opposes the motion. Counsel for the following Defendants stated they were not able to provide a position:

- Savanna Batten (Chris Tolbert)
- Bradford Morris/Meagan Morris (Miles Brissette)
- Elizabeth Soto (Harmony Schuerman)
- Ines Soto (Leigh W. Davis)

As of the time of filing, the United States has received no response from the following Defendants:

- Zachary Evetts
- Maricela Rueda
- Benjamin Song
- Daniel Estrada

*/s/ Matthew Capoccia*
Matthew Capoccia
Assistant United States Attorney