IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| V. | NO. 4:25-CR-00259-P |
| CAMERON ARNOLD (01) AKA "AUTUMN HILL" | |

**RESPONSE TO GOVERNMENT'S
MOTION IN LIMINE (ECF 333 & 334) #1**
DEFENDANT HILL (1)

TO THE HONORABLE JUDGE MARK T. PITTMAN,
UNITED STATES DISTRICT JUDGE:

COMES NOW, Cameron Arnold a.k.a. Autumn Hill (Defendant Hill) by and through her attorneys of record, Cody L. Cofer and James Luster, and hereby files this response to the Government's motion in limine (ECF 333 & 334). Each defendant joins this response unless a particular defendant affirmatively withdraws their joinder.

### I.  Introduction

Thomas Jefferson famously described the right to a jury trial as "the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution." In a 1789 letter to Thomas Paine, Jefferson highlighted this mechanism as essential for maintaining constitutional limitations on government power. The Government asks the Court to turn away from the jury's collective wisdom and slice the tether of the only anchor to the principles of our constitution.

The Government has melded two similar, but discrete, evidentiary questions. First, the Government's motion addresses head-on the right to defense-of-another, the associated jury instruction, and the right to present evidence supporting defense-of-another. Second, the Government effectively asks the Court to disallow Defendant Hill from offering evidence and

argument essential to a complete defense and a defense supported by the evidence. Because responding to the second effect of the Government's motion in limine would require Defendant Hill to marshal for the Government's inspection her view of the evidence and defensive theory, Defendant Hill has requested leave to file that portion of her response *ex parte* and under seal.

Granting of the Government's motion in limine would violate Defendant Hill's Sixth Amendment rights to: a trial by jury (allowing the jury to decide facts); a complete defense; fair trial; and cross-examination of witnesses. It is Counsel's practice to agree to reasonable requests for extensions of time and for waiver of procedural formalities, provided legitimate objectives of my client will not be adversely affected. However, granting the Government's motion in limine at this stage of trial deprives defendants of reasonable notice and creates prejudicial surprise. The Government's requested drastic disruption and limitation of the defense violate procedural and substantive due process under the Fifth and Sixth Amendments.

## II. Argument

A. <u>Based on the evidence at trial, defense-of-another is a permissible defensive theory.</u>

The evidence does not support the Government's motion. The Government first argues that defendants are barred from claiming defense-of-another[1] because they were not free from fault in prompting law enforcement's use of force. Under *United States v. Branch*, it is "a necessary precondition to the claim of self-defense that the defendant be free from fault in prompting [law enforcement's] use of force." 91 F.3d 699, 717 (5th Cir. 1996). The Government asserts defendants

---

[1] Generally, this response will treat "self-defense" and "defense of another" synonymously, much as the Fifth Circuit Pattern Jury Instructions does. *See* Pattern Crim. Jury Instr. 5th Cir. § 1.39 (2024). This response will make the distinction if necessary for clarity or faithful reading of the cited authority.

were at fault in prompting law enforcement's use of force because defendants unlawfully fired explosives at a federal detention facility and destroyed government property.

The premise of the Government's argument assumes the truth of the conclusion (defendants are guilty) instead of supporting it. This circular reasoning or "begging the question" is not only a logical fallacy, but it also contravenes the bedrock constitutional principles of criminal prosecution—presumption of innocence, right to a jury trial, and the burden of proof. The Government's argument is essentially, "Defendants cannot put on evidence that they are innocent because the Government says they are guilty."

While *Branch* establishes that defendants must be free from fault to claim defense-of-another, the facts here are distinguishable. Unlike in *Branch* where defendants were actively engaged in an armed standoff, the instant defendants were not engaged in activity that would justify deadly force. Further, the Government knows of evidence that some illegal activity (vandalism) was spontaneously committed by a relative outsider, Nathan Baumann.

The Government's characterization oversimplifies a complex sequence of events and fragmented theories of culpability. There was a meaningful temporal break between the fireworks display and Lieutenant Gross pulling his weapon. Lieutenant Gross testified he did not see fireworks, and he did not testify that he was responding to the fireworks display. The Government knows of evidence that has not yet been presented in court, that the vandalism was not a part of a larger conspiracy. At a minimum, these facts create an issue for the jury to decide. Additionally, the Government's interpretation of *Branch* would create an absolute bar to defense-of-another in virtually any police encounter stemming from suspected criminal activity, which goes beyond the Fifth Circuit's intended scope. *United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996) ("We need not explore the law of self-defense in confrontations between citizens and law enforcement officers to answer the question asked in this case.").

The Government argues that even if defendants were not at fault, they cannot establish that the officer's display of force was objectively unreasonable under the circumstances. To assess whether an officer's use of force is reasonable, courts must consider the facts and circumstances including the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is actively resisting arrest or fleeing. *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016).

The United States Supreme Court held a Tennessee statute unconstitutional insofar as it authorized the use of deadly force against fleeing suspects that posed no immediate threat:

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

The citation of *Tennessee v. Garner* is not intended to push this matter down the rabbit hole of qualified immunity analysis. Rather, *Tennessee v. Garner* contradicts the Government's broad assertion that for service calls regarding disturbances or property crimes, police have carte blanche to shoot unarmed, fleeing suspects in the back.

The Government's analysis of objective reasonableness fails to account for the totality of circumstances from the defendants' perspective. While Fifth Circuit precedent does generally permit officers to point weapons during detentions, this does not create a blanket rule that such actions are always reasonable regardless of context. The circumstances here—including the officers' approach, communication, identification, and the defendants' understanding of the situation—must be fully considered. The Government also conflates Fourth Amendment excessive force standards with the distinct legal standard for defense-of-another in criminal cases, which

focuses on the defendant's reasonable perception of imminent harm rather than the officer's reasonableness. The evidence has raised a fact question as to defense-of-another.

Presenting a defense-of-another theory is not jury nullification but rather the assertion of a legally recognized defense that the jury should be permitted to evaluate. The defendants have a Sixth Amendment right to present a complete defense. Preemptively barring this defense would improperly usurp the jury's fact-finding role on contested factual issues that are intertwined with the defense-of-another claim. Courts routinely instruct juries on defense-of-another when there is any evidence supporting it, allowing the jury to determine whether the elements are satisfied. This is particularly important where, as here, the facts and circumstances surrounding the confrontation are complex and subject to multiple interpretations.

> B. <u>There is good cause for the Court to charge the jury on defense-of-another despite its absence from the "Agreed Charge."</u>

The Government produced terabytes of discovery. In all the discovery, it was not clear that Lieutenant Gross pointed his weapon at the back of an unarmed, fleeing suspect. The Government produced Detention Officer Harp's statement that Lieutenant Gross pulled his weapon before shots were fired. Lieutenant Gross's own written statement did not make it clear when and how he pulled his weapon. Lieutenant Gross's trial testimony was the first time he admitted to pulling his weapon and pointing it at the fleeing subject before shots were fired.

Because Government's counsel did not disclose this fact to the defense, Counsel expects this was only known to Lieutenant Gross, perhaps his Texas Municipal Police Association (TMPA) attorney, and the shooter.

This late revelation provides good cause to submit a defense-of-another charge to the jury. Further, considering the developed evidence, strict adherence to the scheduling order's deadline becomes unreasonable. *See* Fed. R. Crim. P. 30(a).

C. <u>The Government's concerns may be addressed by a carefully crafted jury charge, rather than withholding competent evidence from the jury</u>

We should trust the jury. We presume jurors follow the Court's instructions. *United States v. Skelton*, 514 F.3d 433, 446 (5th Cir. 2008). The Court may address the Government's concerns by simply adding to the final instruction regarding defense-of-another (Section 1.39): To have a right to defense-of-another, a defendant may not recklessly or negligently place themselves in a situation in which it was probable that they would be forced to choose to use deadly force against another. *See United States v. Santiago*, 96 F.4th 834, 850 (5th Cir. 2024).

### III.     Conclusion & Prayer

Wherefore, Defendant Hill respectfully requests the Court deny the Government's Motion in Limine and prays for such other relief Defendant Hill may be entitled.

Respectfully submitted by,

/s/Cody L. Cofer
Cody L. Cofer
TX SBN: 24066643

/s/James Luster
James Luster
TX SBN: 24061994

COFER LUSTER LAW FIRM, PC
604 E. 4th Street, Suite 101
Fort Worth, Texas 76102
Phone: 682-777-3336
Fax: 682-238-5577
Email: ccofer@coferluster.com
Attorney for Cameron Arnold a.k.a. Autumn Hill

## CERTIFICATE OF SERVICE

      I hereby certify that on March 2, 2026, I electronically served the Government's attorney a copy of this pleading.

                                      /s/Cody L. Cofer
                                      Cody L. Cofer