IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  *Plaintiff*,<br><br>v.<br><br>CAMERON ARNOLD, ET AL.,<br><br>  *Defendants*. | No. 4:25-CR-259-P |

### REPLY IN SUPPORT OF UNITED STATES' MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM PRESENTING LEGALLY INVALID DEFENSE

The United States briefly replies to several of the Defendants' arguments concerning the United States' motion in limine. Dkt. No. 333.

**I. Whether the Victim Police Officer's Use of Force Was Objectively Reasonable Is a Question of law for the Court**

Across five briefs, Defendants offer no authority contradicting the United States' position that it is a question for the Court to decide now whether, as a matter of law, the undisputed facts establish that the victim officer's actions in pointing his weapon at a non-compliant defendant was objectively reasonable. No Defendant addresses, let alone overcomes, the instruction from *United States v. Branch* that to assert self-defense against law enforcement, a defendant must, at a minimum, establish that law enforcement's "use of force, viewed from the perspective of a reasonable officer at the scene, was objectively unreasonable under the circumstances." 91 F.3d 699, 715 (5th Cir. 1996); Dkt. 334 at 13.

1

Nor have Defendants cited anything suggesting that the assessment of an officer's objective reasonableness is a question of fact for the jury. *See* Dkt. No. 334 at 14 ("whether an officer's actions were objectively unreasonable is a 'matter[ ] of law for the court'" (quoting *Brothers v. Zoss*, 837 F.3d 513, 518 (5th Cir. 2016)). And although certain Defendants claim that there are unspecified factual disputes regarding the sequence of events that led the victim police officer to point his weapon at a non-compliant defendant, none of the Defendants explain why any factual disputes are material and would preclude a ruling by the Court now.

Arnold misstates the elements required for self-defense when he claims that in criminal cases the inquiry "focuses on the defendant's reasonable perception of imminent harm rather than the officer's reasonableness." Dkt. 340 at 4–5. Not only is this contrary to *Branch*, but it is at odds with the Fifth Circuit's pattern jury instructions, which state that a defendant may only invoke self-defense against "the immediate use of **unlawful** force." Pattern Crim. Jury Instr. 5th Cir. § 1.39 (2024) (emphasis added). Although a defendant must also "reasonably believe[ ] . . . force is necessary to prevent death or great bodily harm," *id.*, that is not the only element for self-defense. *Branch* establishes that the "unlawful" force question as applied to self-defense against law enforcement is determined by an objective standard judged from perspective of a reasonable officer at the scene, which is a question of law for the Court.

Arnold's other argument—that the actual use of deadly force against a defendant evading detention is unreasonable—is inapposite because it is undisputed that the victim officer did not fire first. As the United States already pointed out, there is a difference in

the Fifth Circuit's caselaw between the actual use of force (firing at a defendant) and a display of force used against a non-compliant suspect. Dkt. No. 334 at 10. Because the Fifth Circuit has repeatedly held that what actually happened here—a display of force in pointing a weapon at a non-compliant defendant while making an arrest or detaining him—is objectively reasonable, it is irrelevant that it would have been unreasonable for the victim officer to actually shoot Evetts.

## II. Defendants Are Disingenuous in Claiming that Newly Discovered Facts Justify Raising Self-Defense Now.

Defendants claim that two supposedly newly discovered facts justify their sandbagging in failing to raise the issue of self-defense before trial: first, they claim it is new information that the victim officer pointed his weapon at Evetts before Song shot the officer, and second, they claim to have been unaware that Song's weapon was struck by round. But Defendants are wrong on both counts because these facts were apparent from discovery—Defendants cannot claim surprise simply because they failed to review the discovery thoroughly.

As an initial matter, the Court can judge for itself whether the questioning at trial—which was laser-focused from the get-go on the victim officer's pointing his weapon at Evetts—is consistent with counsel being surprised by these facts. One does not design questioning around a fact that one was not aware of to begin with. Defendants' protestations of surprise ring hollow.

The discovery produced nearly five months ago containing the CCTV and body-worn camera footage of the events makes it obvious that the victim officer had his weapon

3

unholstered and pointing at Song and Evetts at the time Song shot the officer. Consider the following time hacks that are evident from a careful review of the two relevant videos of the events:

**Ex 10:**
1:29:30	Victim Officer's ("V.O.") car comes to a stop and Evetts runs past the police cruiser

1:29:33	Evetts runs even with and to Song's position

1:29:34	V.O. gets out of car (*see* slide 2 of Opening PowerPoint)

1:29:36	V.O. begins raising his weapon

1:29:37	Song begins firing

**Ex 3:**
22:59:58	V.O.: "hey stop"

23:00:00	V.O. puts car in park and begins opening door, Song yells "get to the rifles"

23:00:01	V.O.'s left foot hits the pavement, while another defendant (Gibson) says something unintelligible

23:00:02	Evetts is in frame and runs behind a tree out of frame of V.O.'s bodycam

23:00:03	V.O. has a radio in his left hand and says "drop it" as he moves towards Song

23:00:04	V.O.'s pistol-light illuminates the ground indicating V.O. has just drawn his weapon

23:00:05	Song says "get to the rifles" again, Sikes and Gibson are next to Song

23:00:06	V.O. says "get on the ground" and raises his weapon at Song and Evetts; the pistol butt is clearly visible in the top right portion of the video and V.O.'s pistol-light illuminates Song.

23:00:07	Evetts runs behind Song and Song opens fire on and strikes V.O. who goes down

23:00:09        V.O. hits the ground and his bodycam falls off his chest and remains on the ground

23:00:10-12    V.O. fires three rounds at Song

23:00:13        V.O. exclaims "fuck, I'm hit"

23:00:15        Song fires again

Because the videos themselves demonstrate that the victim officer did, in fact, point his weapon at Song and Evetts before Song gunned him down, and Defendants' questioning at trial supports that Defendants' knew of this fact and built their trial strategy around it, their claims of surprise fails.

      Moreover, in John Thomas's proffer report, it states that Song told Thomas that Song saw the officer reach for his firearm and Song in turn shot at the officer. (GX 141, pg. 5.) This clearly shows that Song has been trying to claim self-defense from the beginning. And at the probable cause hearing, in response to Song's defense attorney's questions regarding seeing when the V.O. draws his weapon, the government's witness said, "I know he [referring to V.O.] draws his gun at some point, but I just—it's not when he initially gets out of the vehicle." (Tr. at 232.)

      Defendant's other claim—that somehow it was a revelation learned for the first time at trial that Song's weapon was hit by a round from the victim officer—is both factually wrong and irrelevant. The United States disclosed the following in discovery:

- GX. 30: Sgt. McDonald's report of the retrieval of Song's rifle notes that the "magazine was jammed and could not be taken out of the gun," and that there was "an indentation on the mag well that kept the magazine from being able to release."

- GX. 202: Therese Moynihan's expert report includes a picture on page 1 of the indentation on the left side of the magazine well and states "damage noted." Later

      in her report, she states that "[a]s received, the body of a box magazine is stuck inside the magazine well and is being held in place by damage to the outside of the mag well on the lower receiver."

- GX 181: Pages 2-3 of this report showed the rounds extracted from the magazine where and it can be clearly seen that several of the rounds have indentations on their sides as if they were bent while inside the magazine, and it shows the plate that has the damage.

- GX 132: At page 5, Sharp states that Song told her that he may have been hit by gun fire.

Clearly, all counsel knew Song's firearm had sustained significant damage that prevented multiple people from being able to remove the magazine from the firearm. It is not unreasonable to think Song's attorney had asked Song whether the firearm had sustained that injury before the shooting.

    Nevertheless, the readily discernible inference from this discovery is that the victim officer fired a round that hit Song's weapon. This fact explains why Song's rifle jammed when it did, why the rifle had damage on the exterior of the magazine well, why there were indentations on the rounds in the magazine, why two experts and an APD officer could not remove the magazine from the rifle, and why Song believed he had been shot. That counsel would have to analyze the facts to infer this explanation (the same as the prosecution, assuming counsel failed to even ask Song) does not change that nothing was hidden in discovery. Moreover, whether the victim officer hit Song's weapon doesn't change things for self-defense. At most, this fact simply confirms what was already obvious from the videos—that the victim officer was pointing his weapon at Song and Evetts at the time Song shot him. This revelation hardly justifies why Defendants could wait to raise self-defense until well after the Agreed Charge was submitted.

6

### III. Affirmative Defenses Can Be Precluded when Defense Fails to Proffer Sufficient Evidence for Each Element.

Defendants' complaint that they believe the United States is asking the Court to endorse the United States' version of events in determining the Defendants were at fault reveals that Defendants misunderstand the nature of their burden of production to be entitled to present evidence at trial regarding self-defense. As the United States has already pointed out, the Supreme Court has explained that if a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present that defense at trial. *See United States v. Bailey*, 444 U.S. 394, 415 (1980) (affirming preclusion of duress or necessity defenses). In evaluating a motion in limine, a court should accept as true the evidence proffered by the defendant to determine if the defense is insufficient as a matter of law; if a defendant cannot make such a sufficient proffer, then the defense should be precluded. *See United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998) (explaining that "a defendant must present evidence of each of the elements of the [affirmative] defense before it may be presented to the jury," and "a court must objectively evaluate the facts presented by the defendant" to determine if "threshold showing" was made); *United States v. Lee*, 208 F. App'x 352, 353 (5th Cir. 2006) ("The legal sufficiency of a proffered defense is a question of law").[1]

---

[1] *See also United States v. Santiago-Godinez*, 12 F.3d 722, 726 (7th Cir. 1993) (affirming preclusion of entrapment defense, and explaining that "[t]he legal sufficiency of a proffered defense is a question of law" that should be decided by "accept[ing] as true the proffered evidence" from the defendant to determine whether the defense "is insufficient as a matter of law to support the affirmative defense"); *United States v. Gole*, 158 F.3d 166, 168 (2d Cir. 1998) ("[I]t is well established that the legal sufficiency of a proffered defense is a question of law." (cleaned up)); *accord United States v. Young,* 613 F.3d 735, 744 (8th Cir. 2010).

At minimum, the Court should require that Defendants proffer the evidence they believe establishes their right to self-defense; if that evidence is insufficient as a matter of law, the Court should preclude further argument and evidence about it. The United States submits that Defendants will be unable to make such a sufficient showing.

## CONCLUSION

The United States respectfully asks that the Court enter an order barring the Defendants from offering evidence or argument concerning legally invalid defenses of self-defense and defense of others.

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

*s/ Matthew Capoccia*
Matthew Capoccia
Assistant United States Attorney
Texas State Bar No. 24121526
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Email: matthew.capoccia@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on March 2, 2026, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorney of record who has consented in writing to accept this Notice as service of this document by electronic means. A courtesy copy of the filed document has also been emailed to the above-mentioned defense counsel.

                                              */s/ Matthew Capoccia*  
                                              Matthew Capoccia  
                                              Assistant United States Attorney