IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CAUSE NO.: 4:25-cr-00259-P |
| ZACHARY EVETTS (02) | § § | |

**DEFENDANT ZACHARY EVETTS'S RESPONSE TO THE COURT'S INVITATION TO PROPOSE PROPER IN COURT IDENTIFICATION PROCEDURES AND MOTION TO STRIKE IN COURT IDENTIFICATION BY A WITNESS**

Counsel for Defendant Zachary Evetts files this Response to the Court's Invitation on 4 March 2026 to propose proper in court identification of witnesses after Evetts' counsel objected to the Court and government counsel directing Mr. Evetts to stand, and stand alone, when a witness, Ms. Lynette Sharp, appeared to struggle to make the requested identification while gazing in Mr. Evetts' direction in the courtroom.  Counsel for Mr. Evetts will comply with the court's direction to propose a lawful and proper means of allowing witnesses to make in court identification, but first we ask leave, under FRE 614, to object to the eventual in court identification of Mr. Evetts by Ms. Sharp and ask that the Court instruct the jury to disregard that identification.

I.

On 4 March 2026, during the direct examination of government witness Lynette Sharp, at certain points in that examination, either government counsel or the Court directed a defendant to stand up alone when Ms. Sharp was asked if he saw that particular defendant in the courtroom. Though violative of proper in court identification procedures, counsel for Mr. Evetts did not object, since they did not have standing to do so.  When, late in her testimony, the government

counsel asked Ms. Sharp to identify Mr. Evetts, she looked around the courtroom, including in Mr. Evetts' direction for some period of time, but she did not make an identification of Mr. Evetts.

The Court then directed M. Evetts to stand for the identification, and Mr. Evetts' counsel objected. The Court sent the jury to their deliberation room, and the Court asked Mr. Evetts' counsel what counsel would propose is a proper identification procedure. Mr. Evetts' counsel attempted to give an answer, but Mr. Evetts' counsel could not do so because the Court interrupted him every time he began to answer the Court. Then, the judge left the bench without receiving a response from counsel for Mr. Evetts.

After a brief recess, the jury was brought into the Court first, with defendants and the judge absent. Then all nine defendants were marched into the courtroom and lined up in front of the judge's bench. Mr. Evetts was put at the end of this line by court security personnel, to the far left as viewed from the bench, right in front of the witness stand. The other eight defendants were made to stand close together, but Mr. Evetts was placed about three feet separate, at the end of this line, from the next defendant to his left.

The judge then entered the courtroom. He had Ms. Sharp, back on the witness stand, and asked if she recognized Mr. Evetts. Ms. Sharp stated that she did, and pointed at him. The judge then had each of the other eight defendants step forward, one at a time, at the Court's direction, summoning them to do so by calling the defendant by name. The Court then asked Ms. Sharp to identify each of the remaining eight defendants. As she cried, Ms. Sharp complied with the Court's direction.

## II.

The Court stated that its rationale for this procedure included the poor lighting in the

courtroom. Most respectfully, counsel for Mr. Evetts disagree. We have not found the lighting to be an issue in the courtroom, and we have polled other attendees in the well and gallery and found no one who has stated that the lighting in the courtroom makes it difficult to see.

The author of this response and motion has tried hundreds of criminal and civil rights cases in state and federal courts across the Nation, and military courts around the world as prosecutor, defense counsel, and judge. This writer has indeed been in some courtrooms in which the lighting has been poor and unhelpful to the work of a trial. This courtroom is not such an environment.

Counsel for Mr. Evetts will also note that this faulty in court identification process is in a greater context of other improper conduct in the Court. Counsel for all nine defendants have objected throughout the trial to government counsel leading their witnesses in direct examination and by doing so, effectively testifying rather than soliciting reliable answers from their witnesses by open questioning. The Court has, on occasion, sustained such objections, but only on a few occasions.

Thus, counsel for Mr. Evetts is put in a bad position, sometimes called a Hobson's Choice. Do we continue to object to leading questions, expecting to be overruled, thus potentially appearing to the jury as either incompetent or obstructive, or do we carry out our duties to the Sixth Amendment to the US Constitution and object every time that government counsel leads on questions and matters of consequence? The concern of Mr. Evetts' counsel is that this gives the impression that the Court is endorsing this advocacy in examination, and by implication vouching for the government counsel and their case.

Clearly that is not the case in fact. This Court has repeatedly made efforts in the arrangement of the courtroom, the conduct of proceedings, and the judge's words to the

defendants, that show that this Court is firmly committed to a fair, just, and impartial trial of this case on the merits of the evidence and the law.  But as it is with all human beings when they are perhaps too close to a matter to see clearly, counsel for Mr. Evetts fear that the Court has not fully assessed how prejudicial and unfair the court identification process was, as it was conducted on the afternoon of 5 March.

### III.

The Court directed counsel for Mr. Evetts to propose a proper in court identification procedure.  We propose that a proper way to conduct in-court identification, should any counsel seek to do so for the remainder of this trial, is to do so as traditionally done.  That is, ask the witness to look about the courtroom and see if she sees the person whom she has been asked to identify in the courtroom.  If she says yes, then ask her to point to that person, and identify him or her by article of clothing or other identifying mark.  As per usual process, the counsel, or Court, can then memorialize that the witness has complied, whether the identification is, or is not, in fact objectively accurate.

If the witness states that she cannot tell if she sees the person whom she has been asked to identify, a proper procedure would be to have a whole row of defendants and their counsel stand up, since we are in two rows.  The witness would then be permitted to have fuller look at the persons to determine if she could identify the person.  If she says yes, then ask her to point to that person, and identify him or her by article of clothing or other identifying mark.  As per usual process, the counsel, or Court, can then memorialize that the witness has complied, whether the identification is, or is not, in fact objectively accurate.

If at any time the witness states clearly that she does not see the person whom she has been asked to identify, this process should cease.  It is certainly not the role of the Court to assist

counsel for any party when a witness fails to identify a person, even if the Court believes that the witness should be able to do so.  This preserves the neutrality of the Court.

In proposing this process, the writer of this response has taken into account the in-court identification processes conducted in hundreds of criminal trials over thirty-five years. Consideration was also given to seminal cases on in court identification to include *Manson v. Braithwaite*, 432 US 98 (1977) and *Neils v. Bigger*, 409 US 188 (1972) for guidance on the proper criteria of in court identification by a witness.  In particular, we considered such crieria as suggestiveness and reliability.  *Manson* at 109-10.

### IV.

Finally, in accordance with FRE 614(c), we ask that the Court strike the testimony of Ms. Sharp in her in court testimony in which the Court directed her to identify Mr. Evetts.  We also ask for a brief instruction to the jury to disregard that portion of her testimony.  Counsel for Mr. Evett believe that that will be sufficient remedy to the improper in court testimony.

Respectfully Submitted,

*/s/ Patrick J. McLain*
Patrick J. McLain
Attorney for Zachary Evetts
Texas State Bar Number: 13737480
900 Jackson Street, Suite 640
Dallas, Texas 75202
telephone: (214) 416-9100
patrick@patrickjmclain.com

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the above and foregoing Response and Motion was delivered via electronic mail to the office of the United States Attorney for the Northern District of Texas, Fort Worth Division, and counsel for the other eight defendants in this case on 5 March 2026.

                                            */s/ Patrick J. McLain*
                                            Patrick J. McLain