**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CAUSE NO.: 4:25-cr-00259-P |
| | § | |
| BRADFORD MORRIS (05) | § | |
| AKA MEAGAN MORRIS | § | |

**DEFENDANT MORRIS' MOTION FOR A JUDGMENT OF ACQUITTAL OR, IN THE
ALTERNATIVE, A MOTION FOR A NEW TRIAL**

Counsel for Defendant Bradford "Meagan" Morris files this Motion for a Judgment of Acquittal on all counts of conviction; i.e., Counts 1 through 4 of the Second Superseding Indictment, in accordance with Federal Rule of Criminal Procedure 29. In the alternative, Defendant Morris moves for a Motion for a New Trial, in accordance with Federal Rule of Criminal Procedure 33. This motion is filed in accordance with the timelines set forth in Fed.R.Crim.P. 29(c)(1) and Fed.R.Crim.P. 33(b)(2).

**I. Statement of the Motion**

On 13 March 2026, following a trial before a jury on the Second Superseding Indictment in this case, Defendant Morris was found guilty on Counts 1 through 4 of that charging instrument, and she was acquitted on the remaining counts in which she was named. Defendant Morris believes that this Court should enter a Judgment of Acquittal under Fed.R.Crim.P. 29 as to Counts 1 through 4 due to the insufficiency of the evidence because, considered in the light most favorable to the government, a rational trier of fact drawing all reasonable inferences could not find that the government proved its case

US v. Morris (4:25-CR-00259-P) – Defendant Morris' Motion for a Judgment of Acquittal or, in the Alternative, a Motion for a New Trial  - page 1

beyond a reasonable doubt on at least one element of each of those four counts.  In the alternative, if the Court is not persuaded that it ought to make such a Judgment of Acquittal as to one or more of those four counts, in the interest of Justice.

Defendant Morris moves for a Motion for a New Trial under Fed.R.Crim.P. 33 on any count on which she was not acquitted by the jury, or in response to the above motion under Fed.R.Crim.P. 29.  In so doing, Defendant Morris requests that this Court make an independent assessment of the weight of the evidence and the credibility of witnesses in granting a new trial.  To be clear, Defendant Morris makes this Motion for a New Trial under Fed.R.Crim.P. 33 if this Court decides not to grant the Motion for a Judgment of Acquittal under Fed.R.Crim.P. 29

## II.  Law

Fed.R.Crim.P. 29(c) permits a defendant to move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later, and this Court may set aside any verdict of guilty and enter an acquittal.  If this Court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed.  The court must specify the reasons for that determination; see Fed.R.Crim.P. 29(d)(1).

The standard for overturning a finding of guilty by a jury is for this Court to determine, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) *emphasis* in the original. "Even the trial court, which has heard the testimony of witnesses firsthand, is not to weigh

the evidence or assess the credibility of witnesses when it judges the merits of a motion for acquittal." *Burks v. United States*, 437 U.S. 1, 16 (1978), citations omitted. Our circuit court of appeals summed up the standard thus:

> "The test outlined by this Court when a trial court rules on a motion for judgment of acquittal challenging the sufficiency of the evidence applies to such motions whether made at the close of the Government's case, at the close of all the evidence, or after the return of a guilty verdict. The District Court must determine whether the relevant evidence, viewed in the light most favorable to the Government, could be accepted by a reasonably minded jury as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. The same test applies whether the evidence is direct or circumstantial. All reasonable inferences which tend to support the Government's case must be accepted. Any conflicts in the evidence must be resolved in the Government's favor. "
>
> *United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979) citations omitted.

As to Count One, Riot (18 USC §§ 2101 and 2), interstate commerce must be proved at two points in prosecution of riot; both in the preparation and execution of a plan to riot. *United States v. Dellinger*, 472 F.2d 340, 349, 359 (7th Cir. 1972). The Seventh Circuit affirmed its decision in *Dellinger* in *United States v. Betts*, 99 F.4th 1048, 1056 (7th Cir. 2024). *See also United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020).

As to Count Two, Providing Material Support to Terrorists (18 USC § 2339A), material support is defined in section (b) of that statute as:

> (1)    the term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial

securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials;

(2)    the term "training" means instruction or teaching designed to impart a specific skill, as opposed to general knowledge; and

(3)    the term "expert advice or assistance" means advice or assistance derived from scientific, technical or other specialized knowledge.

Thus, the evidence must supply some support whereby, in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of material support for terrorism beyond a reasonable doubt.

18 USC §2331 defines domestic terrorism as it is alleged in Count Two in the Second Superseding Indictment.  Specifically, section 5 of that statute states: "the term "domestic terrorism" means activities that--

(A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State;
(B) appear to be intended--
     (i) to intimidate or coerce a civilian population;
     (ii)  to influence the policy of a government by intimidation or coercion; or
     (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
(C) occur primarily within the territorial jurisdiction of the United States;

The Second Superseding Indictment alleges that the acts that meet the criteria of 18 USC § 2331(5) were violations of 18 USC §§ 844(f), 1361, and 1114.  The provision of 18 USC § 2339A that prohibits "the concealment of an escape from the commission of any such violation" is, by necessary implication, in reference to the carrying out, attempting, or conspiring to commit any of those three alleged acts.

Count Three, Conspiracy to Use and Carry an Explosive (18 USC § 844(m)), penalizes any conspiracy to commit conduct listed in 18 USC § 844(h).  That would be anyone who--

"(1) uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States, or
(2) carries an explosive during the commission of any felony which may be prosecuted in a court of the United States."

Note that not all explosives fall under this statutes prohibition of explosives.  The prosecutor must establish that the alleged explosives fall under a prohibited category under Title 49, Subtitle B, Chapter 1, Subchapter C, §173.50 Class 1 – Definitions and §173.52 Classification codes and compatibility groups of explosives.

As to Count Four, Use and Carry an Explosive (18 USC § 844(h)) prohibits either anyone who--

"(1) uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States, or
(2) carries an explosive during the commission of any felony which may be prosecuted in a court of the United States."

Again, not all explosive items fall under this statute's prohibition of explosives.  The prosecutor must establish that the alleged explosives fall under a prohibited category under Title 49, Subtitle B, Chapter 1, Subchapter C, §173.50 Class 1 – Definitions and §173.52 Classification codes and compatibility groups of explosives.

For both Counts Three and Four, there must be some sort of notice that the explosives and their use are in some way prohibited.  See *United States v. Womack*, 654 F.2d 1034, 1039 (5th Cir. 1981).  There must be evidence that the item(s) alleged in the counts and/or their use were prohibited by statute or regulation.

In accordance with Fed.R.Crim.P. 33(b), a defendant must make a motion for a new trial, grounded on any reason other than newly discovered evidence within 14 days after the verdict or finding of guilty.  In accordance with Fed.R.Crim.P. 33(a), this Court

may grant the motion and vacate the Court's judgment if it is required in the interests of justice.  A court may hold a hearing on a motion for a new trial.

### III.  Application of the Law to the Evidence at Trial

**Count One – Riot**.

First element:  There was no evidence that there was any facility of interstate commerce used at the time that any decision was made to vandalize United States Government property or fire a weapon at anyone, much less an officer of the United States, or in the execution of those alleged acts.  There was no text or other communication that showed a plan to harm United States Government property.  The fireworks were discussed only in terms of how they were actually used, to get the attention of the detainees at the Prairieland Detention Center.

As the government's cooperating witness Nathan Baumann stated, his spray painting and other vandalism was done wholly on his own initiative, and even though he says he was later joined by Seth Sikes or, according to his version months later, Zachary Morris, it was not a plan communicated by, employed through, a facility of interstate commerce.  Finally, the jury found only Lieutenant Gross was the target of the attempted murder in Count Five; they acquitted as to the two contract detention officers.  The detention facility employees could be argued to be officers of the United States Government, but Lieutenant Gross was not an officer of the United States.  The jury found Defendant Song guilty under Count 5 as to Lieutenant Gross, but they acquitted as to Counts 6 and 7, which named the two detention facility employees.

Second element:  The vandalism did not meet the definition of riot.  The one admitted vandal, Nathan Baumann, stated that he acted on his own accord, and he

testified that he was later joined by one other person whom he first identified as Seth Sikes or, according to his version months later, Zachary Morris.  There was no connection to any other persons, thus the requirement of an assemblage of three or more persons was not met, since there was no evidence that this spontaneous action by Mr. Baumann was foreseeable by any of the defendants, much less actually agreed to by them, or part of their planned noise demonstration.

Likewise, there was no evidence that the one act of harm to a person, the injury to Lieutenant Gross, was an act that met the second element of riot.  There was no evidence that Defendant Song acted on a plan or agreement, nor did he use a facility of interstate commerce to plan or effect the shooting that resulted in Lieutenant Gross' injury.  The plan to send a message of hope to the detainees at Prairieland Detention Center had no reference to causing harm to persons.  Again, Lieutenant Gross was not an officer of the United States.

Third element:  There was no evidence of an overt act, even after the use of a facility of interstate commerce, that tied Morris to a plan to damage physical property or cause harm to a person as part of a group of three or more persons.  This includes the use of fireworks since there was no evidence that the fireworks caused, or were used with the intent to cause, damage to property.  The testimony at trial established that the fireworks did not do any damage to property belonging to the United States Government.  The fireworks were employed solely for the purpose of getting the attention of the detainees so that the participants in the noise demonstration could deliver their message of encouragement.  There's no evidence offered whatsoever that the fireworks caused damage to anyone, except Mr. Sikes' hand.

US v. Morris (4:25-CR-00259-P) – Defendant Morris' Motion for a Judgment of Acquittal or, in the Alternative, a Motion for a New Trial  - page 7

Finally, the fireworks were in no way connected, in the evidence, to the vandalism by Mr. Baumann or anyone he claimed to be an accomplice.

**Count Two - Providing Material Support to Terrorists**

First element:  There was no evidence that Morris provided material support or resources other than fireworks.  Specifically, there was no evidence that Morris provided any materials or resources to vandalize government property, such as spray paint or whatever was used to harm the government owned van, or any other government property such as the damaged sign or the guard shack that Mr. Baumann testified that was vandalized.  The evidence at trial was that the fireworks had no part in damage to any government property.  Nor was there any evidence that Morris  concealed, disguised, or attempted to conceal any physical property used to vandalize, or to harm Lieutenant Gross.

Second element:  There was no evidence at trial that Morris provided fireworks to destroy property (see argument in re the 3rd element of Count One above).  There was no evidence that Morris provided any material or resources used to vandalize or harm Lieutenant Gross.  Again, Lieutenant Gross does not meet the definition of an "officer or employee of the United States or of any agency in any branch of the United States Government" under 18 USC § 1114 that would make him a victim of "unlawful killing of a human being with malice aforethought" as murder is defined under 18 USC § 1111.  For the same reasons stated above, there is no evidence that Morris attempted material support to terrorists, as defined in the two elements above.

**Count Three – Conspiracy to Use and Carry an Explosive** *(As to both the conspiracy to use, as well as the carry, portions of Count Three)*:

First element:  All of the evidence introduced at trial showed that Morris agreed to bring, and brought, fireworks to the Prairieland Detention Center on 4 July 2025 for the sole purpose of getting the attention of the detainees so that the participants in the noise demonstration could deliver their message of encouragement.  There was no evidence offered that Morris brought fireworks to the noise demonstration at the Prairieland Detention Center for any other reason.  This was further corroborated by the video evidence and testimony that the fireworks did not do damage to any property, and they were used solely for gaining attention to their intended audience, the detainees.

Second element:  There was no evidence or testimony that any person who participated in the noise demonstration, including Morris, intended to use the fireworks to commit an offense.  The evidence also demonstrated that the fireworks were lawfully purchased, and none of the evidence showed that the fireworks deployed in an unlawful manner, much less to support a riot.

The three crimes that Count One alleged as the gravamen of the riot charge were maliciously damaging or destroying, or attempting to damage or destroy, by means of an explosive (18 USC § 844f); damage to government property (18 USC § 1361); or attempted murder of an officer or employee of the United States or of any agency in any branch of the US (18 USC § 1114).  Since Count Three alleges that the gravamen of the alleged Conspiracy to Use and Carry an Explosive was the offense of Riot (18 USC § 2101), the fireworks had to be employed to accomplish one of the three offenses alleged in Count One, and there was no evidence provided to support the use of fireworks to effect any of those three alleged felonies alleged as the crime committed by means of Riot.

US v. Morris (4:25-CR-00259-P) – Defendant Morris' Motion for a Judgment of Acquittal or, in the Alternative, a Motion for a New Trial  - page 9

**Count Four – Use and Carry an Explosive**

Second element:  All of the evidence introduced at trial showed that the fireworks were brought, or carried, to the site of the noise demonstration, and the fireworks were used solely for the purpose of gaining the attention of their intended audience, the detainees at the Prairieland Detention Center.  Since Count Four alleges that the gravamen of the alleged Use and Carry (of) an Explosive was the offense of Riot (18 USC § 2101), the fireworks had to be employed to accomplish one of the three offenses alleged in Count One.  There was no evidence provided to support the use of fireworks to affect any of those three felonies alleged as the crime committed by means of Riot.

The three crimes that Count One alleged as the gravamen of the riot charge were maliciously damaging or destroying, or attempting to damage or destroy, by means of an explosive (18 USC § 844f); damage to government property (18 USC § 1361); or attempted murder of an officer or employee of the United States or of any agency in any branch of the United States Government (18 USC § 1114).  As noted in the discussion of Count Three above, there was no evidence offered that the fireworks were employed, or brought to be employed, to accomplish any of those three offenses.

### IV.  Prayer

For the reasons set forth above, Defendant Morris prays that this Court enter a Judgment of Acquittal on all counts of conviction; i.e., Counts 1 through 4 of the Second Superseding Indictment, in accordance with Federal Rule of Criminal Procedure 29.  In the alternative, Defendant Morris asks that this Court order a New Trial, in accordance with Federal Rule of Criminal Procedure 33.  Defendant Morris has been apprised that other defendants in this case have made similar motions, and has been provided drafts

of some of those motions.  To the extent that the facts and arguments are relevant to this

motion, Defendant Morris respectfully requests that the Court consider the arguments of

those motions in concert with this motion.

Respectfully Submitted,

*/s/  J. Warren St. John*
J. WARREN ST. JOHN
State Bar No. 18986300
2020 Burnett Plaza
801 Cherry Street, Unit No. 5
Fort Worth, Texas  76102-6810
Telephone:  817/336-1436
Fax: 817/336-1429
Email: jwlawyer1896@yahoo.com

*/s/ D. Miles Brissette*
D. MILES BRISSETTE
State Bar No. 50511628
THE LAW OFFICES OF GILL & BRISSETTE
3663 Airport Freeway
Fort Worth, Texas 76111
Telephone: 817-803-6918
Fax: 817/554-1534
Email: Miles@GillBrissette.com

ATTORNEYS FOR DEFENDANT
BRADFOR MORRIS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this Motion was delivered via electronic mail to the office of the United States Attorney for the Northern District of Texas, Fort Worth Division, and counsel for the other eight defendants in this case on 27 March 2026.

*/s/ J. Warren St. John*
J. WARREN ST. JOHN

US v. Morris (4:25-CR-00259-P) – Defendant Morris' Motion for a Judgment of Acquittal or, in the Alternative, a Motion for a New Trial  - page 11