**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CAUSE NO.: 4:25-cr-00259-P |
| | § | |
| ZACHARY EVETTS (02) | § | |

<u>**DEFENDANT EVETTS'S MOTION FOR A JUDGMENT OF ACQUITTAL OR, IN THE
ALTERNATIVE, A MOTION FOR A NEW TRIAL**</u>

Counsel for Defendant Zachary Evetts files this Motion for a Judgment of Acquittal on all counts of conviction; i.e., Counts 1 through 4 of the Second Superseding Indictment, in accordance with Federal Rule of Criminal Procedure 29.  In the alternative, Defendant Evetts makes a Motion for a New Trial, in accordance with Federal Rule of Criminal Procedure 33. This motion is filed in accordance with the timelines set forth in Fed. R. Crim. P. 29(c)(1) and Fed. R. Crim. P. 33(b)(2).

**I.  Statement of the Motion**

On 13 March 2026, following a trial before a jury on the Second Superseding Indictment in this case, Defendant Evetts was found guilty on Counts 1 through 4 of that charging instrument, and he was acquitted on the remaining counts in which he was named.  Defendant Evetts believes that this Court should enter a Judgment of Acquittal under Fed. R. Crim. P. 29 as to Counts 1 through 4 due to the insufficiency of the evidence because, considered in the light most favorable to the government, a rational trier of fact drawing all reasonable inferences could not find that the government proved its case beyond a reasonable doubt on at least one element of each of those four counts.

In the alternative, if the Court is not persuaded that it ought to make such a Judgment of Acquittal as to one or more of those four counts, in the interest of justice, Defendant Evetts

makes a Motion for a New Trial under Fed. R. Crim. P. 33 on any count on which he was not acquitted by the jury, or in response to the above motion under Fed. R. Crim. P. 29.  In so doing, Defendant Evetts requests that this Court make an independent assessment of the weight of the evidence and the credibility of witnesses in granting a new trial.  To be clear, Defendant Evetts makes this Motion for a New Trial under Fed. R. Crim. P. 33 if this Court decides not to grant the Motion for a Judgment of Acquittal under Fed. R. Crim. P. 29,

## II.  Law

Fed. R. Crim. P. 29(c) permits a defendant to move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later, and this Court may set aside any verdict of guilty and enter an acquittal.  If this Court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed.  The court must specify the reasons for that determination; see Fed. R. Crim. P. 29(d)(1).

The standard for overturning a finding of guilty by a jury is for this Court to determine, "after viewing the evidence in the light most favorable to the prosecution, [whether] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "Even the trial court, which has heard the testimony of witnesses firsthand, is not to weigh the evidence or assess the credibility of witnesses when it judges the merits of a motion for acquittal."  *Burks v. United States*, 437 U.S. 1, 16 (1978) (citations omitted).  Our circuit court of appeals summed up the standard thus:

> The test outlined by this Court when a trial court rules on a motion for judgment of acquittal challenging the sufficiency of the evidence applies to such motions whether made at the close of the Government's case, at the close of all the evidence, or after the return of a guilty verdict.  The District Court must determine whether

the relevant evidence, viewed in the light most favorable to the Government, could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.  The same test applies whether the evidence is direct or circumstantial.  All reasonable inferences which tend to support the Government's case must be accepted.  Any conflicts in the evidence must be resolved in the Government's favor.  *United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979) (citations omitted).

As to Count One, Riot (18 U.S.C. §§ 2101 and 2), interstate commerce must be proved at two points in the prosecution of riot – both in the preparation and in the execution of a plan to riot. *United States v. Dellinger*, 472 F.2d 340, 349, 359 (7th Cir. 1972).  The Seventh Circuit affirmed its decision in *Dellinger* in *United States v. Betts*, 99 F.4th 1048, 1056 (7th Cir. 2024). *See also United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020).

As to Count Two, Providing Material Support to Terrorists (18 U.S.C. § 2339A), material support is defined in section (b) of that statute as follows:

(1) the term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials;

(2) the term "training" means instruction or teaching designed to impart a specific skill, as opposed to general knowledge; and

(3) the term "expert advice or assistance" means advice or assistance derived from scientific, technical or other specialized knowledge.

Thus, the evidence must supply some support whereby, in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of material support for terrorism beyond a reasonable doubt.

18 U.S.C. §2331 defines domestic terrorism as it is alleged in Count Two in the Second Superseding Indictment.  Specifically, section 5 of that statute states: **"**the term "domestic terrorism" means activities that–

   (A) involve acts dangerous to human life that are a violation of the criminal laws
     of the United States or of any State;
   (B) appear to be intended–
    (i)  to intimidate or coerce a civilian population;
    (ii) to influence the policy of a government by intimidation or coercion; or
    (iii) to affect the conduct of a government by mass destruction, assassination,
      or kidnapping; and
   (C) occur primarily within the territorial jurisdiction of the United States;

The Second Superseding Indictment alleges that the acts that meet the criteria of 18 U.S.C. § 2331(5) were violations of 18 U.S.C. §§ 844(f), 1361, and 1114.  The provision of 18 U.S.C. § 2339A that prohibits "the concealment of an escape from the commission of any such violation" is, by necessary implication, in reference to the carrying out, attempting, or conspiring to commit any of those three alleged acts.

Count Three, Conspiracy to Use and Carry an Explosive (18 U.S.C. § 844(m)), penalizes any conspiracy to commit conduct listed in 18 U.S.C. § 844(h).  That would be anyone who

   (1) uses fire or an explosive to commit any felony which may be prosecuted in a
     court of the United States, or
   (2) carries an explosive during the commission of any felony which may be
     prosecuted in a court of the United States.

Note that not all explosives fall under this statute's prohibition of explosives.  The prosecutor must establish that the alleged explosives fall under a prohibited category under Title 49, Subtitle B, Chapter 1, Subchapter C, §173.50 Class 1 – Definitions and §173.52 Classification codes and compatibility groups of explosives.

As to Count Four, Use and Carry an Explosive (18 U.S.C. § 844(h)) prohibits either anyone who

   (1) uses fire or an explosive to commit any felony which may be prosecuted in a
     court of the United States, or
   (2) carries an explosive during the commission of any felony which may be
     prosecuted in a court of the United States.

Again, not all explosive items fall under this statute's prohibition of explosives.  The prosecutor

must establish that the alleged explosives fall under a prohibited category under Title 49, Subtitle B, Chapter 1, Subchapter C, §173.50 Class 1 – Definitions and §173.52 Classification codes and compatibility groups of explosives.

Thus, for both Counts Three and Four, there must be some sort of notice that the explosives and their use are in some way prohibited.  See *United States v. Womack*, 654 F.2d 1034, 1039 (5th Cir. 1981).  There must be evidence that the item(s) alleged in the counts and/or their use were prohibited by statute or regulation.

In accordance with Fed. R. Crim. P. 33(b), a defendant must make a motion for a new trial grounded on any reason other than newly discovered evidence within 14 days after the verdict or finding of guilty.  In accordance with Fed. R. Crim. P. 33(a), this Court may grant the motion and vacate the Court's judgment if it is required in the interests of justice.  A court may hold a hearing on a motion for a new trial.

### III.  Application of the Law to the Evidence at Trial

**Count One – Riot**.

First element:  There was no evidence that there was any facility of interstate commerce used at the time that any decision was made to vandalize US government property or fire a weapon at anyone, much less an officer of the United States, or in the execution of those alleged acts.  There was no text or other communication that showed a plan to harm U.S. government property.  The fireworks were discussed only in terms of how they were actually used, to get the attention of the detainees at the Prairieland Detention Center.

As the government's cooperating witness Nathan Baumann stated, his spray painting and other vandalism was done wholly on his own initiative, and even though he says he was later joined by Seth Sikes or, according to his version months later, Zachary Evetts, it was not a plan

communicated by, employed through, any facility of interstate commerce. Finally, the jury found that only Lieutenant Gross was the target of the attempted murder in Count Five; they acquitted as to the two contract detention officers. Though the detention facility employees could be argued to be officers of the U.S. government, Lieutenant Gross cannot be. As an Alvarado police officer, he was a Texas state official performing state duties at all times, not an officer of the United States. The jury found Defendant Song guilty under Count 5 as to Lieutenant Gross, but they acquitted as to Counts 6 and 7, which named the two detention facility employees.

Second element: The vandalism in the Prairieland Detention Center parking lot did not meet the definition of riot. The single admitted vandal, Nathan Baumann, stated that he acted on his own accord, and he testified that he was later joined by only one other person, whom he first identified as Seth Sikes or, according to his version months later, Zachary Evetts. There was no connection to any other persons; thus, the requirement of an assemblage of three or more persons was not met, since there was no evidence that this spontaneous action by Mr. Baumann was foreseeable by any of the defendants, much less actually agreed to by them, nor was it any part of their planned noise demonstration.

Likewise, there was no evidence that the one act of harm to a person, the injury to Lieutenant Gross, was an act that met the second element of riot. There was no evidence that Defendant Song acted on a plan or agreement, nor did he use a facility of interstate commerce to plan or effect the shooting that resulted in Lieutenant Gross's injury. The plan to send a message of hope to the detainees at Prairieland Detention Center had no reference to causing harm to persons. And regardless, Lieutenant Gross was not an officer of the United States.

Finally, the use of fireworks cannot help meet the definition of a riot. The messages

which predated the noise demonstration show that the fireworks were employed with the intent of getting the attention of, and sending a message of hope to, the inmates at the detention center. The indictment alleges the fireworks were shot and thrown at the Prairieland Detention Center and its perimeter fence, but the evidence established such results were the exception, not the rule, and were the unintended consequence of Seth Sikes not using the fireworks properly. In any case, and consistent with the intent communicated prior to the noise demonstration, the fireworks caused absolutely no damage to the facility or its perimeter fence.

Third element: There was no evidence of an overt act, even after the use of a facility of interstate commerce, which tied Mr. Evetts to a plan to damage property or cause harm to a person as part of a group of three or more persons. This includes the use of fireworks since there was no evidence that the fireworks caused, or were used with the intent to cause, damage to property. The testimony at trial established that the fireworks did not do any damage to any part of the facility, and they were employed solely for the purpose of getting the attention of the detainees so that the participants in the noise demonstration could deliver their message of encouragement. There was no evidence offered whatsoever that the fireworks caused damage to anyone, save Mr. Sikes' own hand. Finally, the fireworks were in no way connected, in the evidence, to the vandalism by Mr. Baumann or the person he claimed to be his sole accomplice.

**Count Two - Providing Material Support to Terrorists**

First element: There was no evidence that Mr. Evetts provided material support or resources other than fireworks. Specifically, there was no evidence that Mr. Evetts provided any materials or resources to vandalize government property, such as spray paint or whatever was used to harm the government owned van, or any other government property such as the damaged sign or the guard shack that Mr. Baumann testified that he vandalized. The evidence at trial was

that the fireworks had no part in damaging any government property.  Nor was there any evidence that Mr. Evetts concealed, disguised, or attempted to conceal any item used either to vandalize any property, or to harm Lieutenant Gross.

Second element:  There was no evidence at trial that Mr. Evetts provided fireworks to destroy property (see argument regarding Element Three of Count One above).  There was no evidence that Mr. Evetts provided any material or resources used to vandalize or harm Lieutenant Gross.  Again, Lieutenant Gross does not meet the definition of an "officer or employee of the United States or of any agency in any branch of the United States Government" under 18 U.S.C. § 1114 that would make him a victim of "unlawful killing of a human being with malice aforethought" as murder is defined under 18 U.S.C. § 1111.  For the same reasons stated above, there is no evidence that Mr. Evetts attempted material support to terrorists, as defined in the two elements above.

**Count Three – Conspiracy to Use and Carry an Explosive (***As to both the conspiracy to use, as well as to carry, portions of Count Three)*:

First element:  All of the evidence introduced at trial showed that Mr. Evetts agreed to bring, and brought, fireworks to the Prairieland Detention Center on 4 July 2025 for the sole purpose of getting the attention of the detainees so that the participants in the noise demonstration could deliver their message of encouragement.  There was no evidence offered that Mr. Evetts brought fireworks to the noise demonstration at the Prairieland Detention Center for any other reason.  This was further corroborated by the video evidence and testimony that the fireworks did not do damage to any property and were used solely for gaining the attention of their intended audience, the detainees.

Second element:  There was no evidence or testimony that any person who participated in

the noise demonstration, including Mr. Evetts, intended to use the fireworks to commit an offense.  The evidence also demonstrated that the fireworks were lawfully purchased, and none of the evidence showed that the fireworks were deployed in an unlawful manner, much less to support a riot.

The three crimes that Count One alleged as the gravamen of the riot charge were maliciously damaging or destroying, or attempting to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance (18 U.S.C. § 844f); damage to government property (18 U.S.C. § 1361); or attempted murder of an officer or employee of the United States or of any agency in any branch of the United States Government (18 U.S.C. § 1114).  Since Count Three alleges that the gravamen of the alleged Conspiracy to Use and Carry an Explosive was the offense of Riot (18 U.S.C. § 2101), the fireworks had to be employed to accomplish one of the three offenses alleged in Count One, and there was no evidence provided to support the use of fireworks to effect any of those three alleged felonies alleged as the crime committed by means of Riot.

**Count Four – Use and Carry an Explosive**

Second element:  All of the evidence introduced at trial showed that the fireworks were brought, or carried, to the site of the noise demonstration, and were used solely for the purpose of gaining the attention of their intended audience, the detainees at the Prairieland Detention Center.  Since Count Four alleges that the gravamen of the alleged Use and Carry (of) an Explosive was the offense of Riot (18 U.S.C. § 2101), the fireworks had to be employed to accomplish one of the three offenses alleged in Count One.  There was no evidence provided to

support the use of fireworks to effect any of those three felonies alleged as the crime committed by means of Riot.

The three crimes that Count One alleged as the gravamen of the riot charge were maliciously damaging or destroying, or attempting to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance (18 U.S.C. § 844f); damage to government property (18 U.S.C. § 1361); or attempted murder of an officer or employee of the United States or of any agency in any branch of the United States Government (18 U.S.C. § 1114). As noted in the discussion of Count Three above, there was no evidence offered that the fireworks were employed, or brought to be employed, to accomplish any of those three offenses.

## IV.  Prayer

For the reasons set forth above, Defendant Evetts prays that this Court enter a Judgment of Acquittal on all counts of conviction; i.e., Counts 1 through 4 of the Second Superseding Indictment, in accordance with Federal Rule of Criminal Procedure 29. In the alternative, Defendant Evetts asks that this Court order a New Trial, in accordance with Federal Rule of Criminal Procedure 33. Defendant Evetts has been apprised that other defendants in this case have made similar motions and has been provided drafts of some of those motions. To the extent that the facts and arguments of other defendants are relevant to this motion, and consistent with the practice at trial that any objection applies to all defendants unless a defendant specifically excepts himself from the objection, Defendant Evetts respectfully requests that the Court consider such arguments in concert with this motion.

Respectfully Submitted,


/s/ Patrick J. McLain
Patrick J. McLain
Attorney for Zachary Evetts
Texas State Bar Number: 13737480
900 Jackson Street, Suite 640
Dallas, Texas 75202
telephone: (214) 416-9100
patrick@patrickjmclain.com


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this Motion was delivered via electronic mail to the office of the United States Attorney for the Northern District of Texas, Fort Worth Division, and counsel for the other eight defendants in this case on 27 March 2026.


/s/ Patrick J. McLain
Patrick J. McLain