IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

V.                                                                              No. 4:25-cr-00259-P

BENJAMIN HANIL SONG (03)

### MOVANT BENJAMIN SONG'S MOTION FOR NEW TRIAL AND REQUEST FOR EVIDENTIARY HEARING

TO THE HONORABLE MARK T. PITTMAN,
UNITED STATES DISTRICT JUDGE:

Movant Benjamin Song respectfully moves for a new trial under Federal Rule of Criminal Procedure 33. In the alternative, Movant requests an evidentiary hearing on bad faith under *Youngblood* and that the Government be ordered to produce all materials in its possession related to bullet strikes in this case.

### INTRODUCTION

The defense first learned during trial that crime-scene investigators did not take photographs of the alleged bullet strikes into the ground or concrete that the Government relied on to argue direction of fire, trajectory, and intent. No overall photographs, no mid-range photographs, no close-up photographs, no scaled photographs, and no measurements or trajectory mapping tied to those alleged strike points were disclosed before trial. The omission mattered because the alleged strike locations were transient physical evidence bearing directly on whether rounds were intentionally fired at officers, fired into the ground, or deflected and ricocheted before any injury occurred.

The failure to disclose, preserve, and document those alleged impact sites deprived the defense of materially favorable information and a fair opportunity to investigate the central issue in the case: intent. The absence of scene documentation is    itself favorable to the defense because

MOTION FOR NEW TRIAL                                                                      Page 1

it undermines     the reliability of the Government's reconstruction, supports     impeachment of the investigators, and supports     the defense's theory that the physical evidence did not establish an intentional attempt to kill. If investigators recognized these alleged impacts but failed to document them, the issue is a due-process failure to preserve apparently exculpatory evidence. If the Government knew before trial that no such photographs or measurements existed and did not disclose that fact in time for the defense to act on it, the issue is also properly analyzed under *Brady* and *Giglio*. Under either framing and certainly in the interest of justice, the verdict cannot stand.

## I. TIMELINESS

Rule 33 permits a district court to vacate a judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). A motion grounded on newly discovered evidence must be filed within three years after the verdict, while a motion grounded on any other reason must be filed within fourteen days after the verdict. Fed. R. Crim. P. 33(b)(1)-(2). Because the defense first learned during trial that the alleged ground and concrete strikes were never photographed or otherwise documented, this motion is filed under Rule 33(b)(2) and is timely if filed within fourteen days of the verdict. To the extent the full scope of the nondisclosure or non-documentation was confirmed only after the verdict through later review of discovery, witness interviews, or transcript analysis, Movant alternatively invokes Rule 33(b)(1).

The Fifth Circuit has recognized both Rule 33 pathways. When the motion rests on newly discovered evidence, the movant generally must satisfy the *Berry* test by showing that the evidence was unknown at trial, could not have been discovered earlier with diligence, is material rather than cumulative, and would probably produce an acquittal. *United States v. Turner*, 674 F.3d 420, 429 (5th Cir. 2012). When the motion rests on *Brady* error, the court evaluates the claim under *Brady*'s

suppression, favorability, and materiality standards. *Id.* at 428; *United States v. Perry*, 35 F.4th 293, 345 (5th Cir. 2022).

## II. RELEVANT BACKGROUND

The Government's theory at trial required proving that Movant Benjamin Song intentionally fired at Alvarado Police Department Lieutenant Thomas Gross rather than into the ground or away from any person. *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991) (holding that an attempted murder under 18 U.S.C. § 1114 requires a specific intent to kill). Indeed, *Braxton* explicitly holds that merely shooting at a person does not establish a specific intent to kill that person, making direct fire necessary yet not necessarily sufficient to find attempted murder. *Id.* at 350-51. Accordingly, the alleged ground and concrete strikes were not collateral details. They were among the only objective physical features that could have shown where rounds first impacted, whether a ricochet occurred, and whether the Government's account of direction of fire was forensically reliable.

On February 27, 2026, however, Texas Ranger Billy James Hill acknowledged that investigators did not take photographs of the alleged bullet strikes in the dirt or on the concrete. Prior to his testimony on the same day, Alvarado Police Crime Scene Investigator Kim Burris further referenced a reconstruction of the shooting but acknowledged that it did not include trajectory analysis or shooter-position determinations, instead reflecting only the locations of the shell casings that were recovered. Ranger Hill testified that a Leica RTC 360 Digital Crime Scene Scanner[1] was obtained from the Cleburne office for measurement purposes. He stated that Ms.

---

[1] A Leica RTC360 laser scanner can be used to measure, document, and recreate a shooting scene with a high degree of precision. By capturing dense three-dimensional spatial data of the scene and its physical evidence, the scanner allows investigators to generate an accurate digital reconstruction of the crime scene, including distances, locations, and spatial relationships among relevant objects and points of evidence. The RTC360 also provides high-precision documentation, with distance measurement accuracy of 1 mm plus 10 ppm at 68% confidence and range noise as low as 0.4 to 0.5 mm at 10 to 20 meters, making it capable of supporting accurate bullet trajectory analysis within three-

Burris was in charge of processing the scene. He offered his opinion that the rifle shooter changed positions by approximately 15 yards from the original location, which he estimated was between 45 and 50 yards from Lieutenant Gross. As to the first location, Ranger Hill stated—which was the first time defense learned—that there were defects in the concrete that appeared to be fresh bullet defects. However, no swabs were taken from the bullet-strike areas in the concrete. Despite the fact that it had been raining, no shoeprint molds were cast, no photographs were taken of the bullet strikes in the concrete, and no effort was made to search for other ground strikes; finally , there were no projectiles that were recovered, other than the single projectile recovered from Lieutenant Gross's vest. Ranger Hill further testified regarding the single recovered bullet—which had been deformed by striking an object.  He also testified about an unfired rifle round that was recovered.  Ms. Burris also testified that metal detectors were used in an effort to locate all shell casings from both the rifle and Lieutenant Gross's pistol. Eleven shell casings from the rifle were recovered, but only two from Lieutenant Gross's pistol, with one pistol casing remaining missing. No attempt was made to look for the casing in the treads of the Fire Marshal's vehicle which had traveled through the shooting scene, just as no attempt was made to document alleged damage to the facility.  It was acknowledged only at trial that no projectiles struck the Prairieland Detention Center, the guard shack, Lieutenant Gross's vehicle, or the Fire Marshall's vehicle.

The defense had not been told (and due to the Government's failure to disclose the existence of ground strikes, had no opportunity to discover) before trial that no photographs existed for those impact locations, that no scaled close-ups were taken, that no measurements fixed those locations in relation to the scene, or that no preserved substrate or fragment analysis tied the alleged

---

dimensional point clouds. That data can then be imported into forensic reconstruction software, such as Leica Map360, to recreate the shooting scene, evaluate possible bullet trajectories, and produce visual models for analysis and courtroom presentation.

impacts to a particular direction of travel. Government Exhibit 51, Supplemental Report, paragraph 6, pages 1-2, states Ranger Tyler Williamson "requested that Ranger Hill and Burris coordinate the processing of the crime scenes, and that Ranger Hill deploy the Leica RTC 360 Digital Crime Scene Scanner to create a forensic map of the scene." Other witnesses' testimony included Government Exhibit 33, Franklin Armory FAI – 15 with binary trigger; Government Exhibit 48, 5.56 spent casings found first; Government Exhibit 48, 5.56 spent casings found later; Government Exhibit 50, photos of Franklin Armory FAI – 15; Government Exhibit 52, photo of wet pavement and yellow police tape in the vicinity of the rifle shooter; and Government Exhibit 55, photos of fresh spray paint on multiple vehicles and the guard shack.

The trial revelation relative to the ground strikes came too late to cure the prejudice. By then the defense had lost the meaningful opportunity to inspect the precise locations before the scene changed, retain a reconstruction expert keyed to the actual impact points, seek testing for substrate transfer or ricochet indicators (such as the projectile deformation), move to exclude or limit reconstruction opinions premised on undocumented strike sites, or request a missing-evidence instruction tailored to the omission. Cross-examination alone could not restore what the defense would have done had it known before trial that the Government knew of impact evidence that had not been photographed or preserved.

The Government produced an extensive volume of discovery in this case, consisting of tens of thousands of pages of documents across seventeen separate productions, as well as numerous video files and physical evidence. Given the sheer quantity of materials produced, the time provided was not sufficient for the defense to meaningfully review all documents, watch and analyze all video evidence, and also inspect the physical evidence in a thorough and effective

manner. As a result, additional time is necessary to allow counsel to adequately evaluate the full scope of the discovery and prepare the defense.

### III. LEGAL STANDARD

Rule 33 gives the Court broad authority to order a new trial when the interest of justice so requires. Fed. R. Crim. P. 33(a). Although such motions are treated with caution, a new trial is warranted when the verdict is undermined by nondisclosure of favorable evidence, by the inability to fairly test core physical evidence, or by trial surprise that impaired the defense on a central issue. See *Turner*, 674 F.3d at 423-25, 429.

Under *Brady*, the prosecution's suppression of favorable evidence violates due process when the evidence is material to guilt or punishment, irrespective of the prosecution's good or bad faith. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The rule extends to impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). In the Fifth Circuit, a *Brady* claimant must show that the evidence was favorable, suppressed by the prosecution, and material. *Perry*, 35 F.4th at 345. Evidence is material when there is a reasonable probability that timely disclosure would have produced a different result, meaning a probability sufficient to undermine confidence in the verdict. *Id.*; *Turner*, 674 F.3d at 424. The prosecutor's duty includes learning of favorable information known to police and other members of the prosecution team. *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995).

A related due-process duty applies when the Government fails to preserve evidence. If evidence had apparent exculpatory value before it was lost or destroyed, and comparable evidence cannot be obtained by other reasonably available means, due process is violated. *California v. Trombetta*, 467 U.S. 479, 488-89 (1984). If the Court concludes that the evidence was merely

potentially useful, the failure to preserve it still violates due process when law enforcement acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).

### IV. ARGUMENT

A.   <u>The nondisclosure that no photographs or measurements existed was favorable and material to the defense.</u>

The favorable information here is not limited to a missing photograph. It is the undisclosed fact that the Government's asserted impact evidence was never properly documented in the first place. That information was favorable for at least three reasons.

First, it was exculpatory because undocumented ground and concrete strikes directly bear on trajectory, ricochet, and intent. If rounds first struck dirt or concrete, that fact could support the defense theory that Movant    did not intentionally aim at Lieutenant Gross, that the alleged wound was consistent with a ricochet or deflected round, and that the Government's reconstruction overstated what the physical scene proved. The actual projectile that was found in Lieutenant Gross's vest had a deformity that Ranger Hill indicated was produced by an impact on an object, which could be consistent with a ricochet. On counts requiring proof of intent to kill, that distinction is fundamental.

Second, it would have been grounds for impeachment. A jury is entitled to know whether investigators actually photographed, measured, and preserved the physical features they later invoked to prove intent. The failure to take basic documentation of the very strike sites the Government says mattered would have permitted the defense to argue that the investigation was incomplete, selective, or unreliable. See *Giglio*, 405 U.S. at 154-55.

Third, timely disclosure would have changed defense strategy in concrete ways. The defense could have sought scene access, retained a reconstruction expert, requested preservation of the alleged strike locations, moved to exclude speculative trajectory opinions, sought a missing-

evidence instruction, and reoriented opening, cross-examination, and closing around the fact that the Government could not show the jury photographs of the very impacts it claimed corroborated intent. This is precisely the kind of information that can place the whole case in a different light and undermine confidence in the verdict. See *Kyles*, 514 U.S. at 435.

B.     Government had a duty to disclose the omission in time for the defense to use it.

The prosecution's disclosure obligation is not limited to favorable items physically sitting in the prosecutor's file. The prosecutor must learn of favorable information known to law-enforcement personnel working on the case. *Kyles*, 514 U.S. at 437-38. Thus, if crime-scene personnel knew before trial that no photographs or measurements existed for the alleged ground and concrete strike locations, that knowledge is chargeable to the Government.

This case therefore is not answered by saying that the Government had no duty to 'create' evidence. The point is narrower and more concrete. Once the Government chose to rely on alleged strike sites to prove intent, due process required timely disclosure that those sites had not been photographed, measured, or otherwise preserved. The defense was entitled to know before trial that the Government could not produce the basic scene documentation that a reasonable jury would expect to exist for such central physical evidence.

Had the defense known that fact in time, counsel could have sought meaningful pretrial relief. Instead, the defense first learned of the omission only once trial was underway, after strategic decisions had been made and after the opportunity for timely independent scene work had largely passed. That kind of late revelation is materially prejudicial. See *Brady*, 373 U.S. at 87; *Perry*, 35 F.4th at 345.

C.     The failure to document and preserve the alleged strike sites independently violates due process.

The alleged ground and concrete strikes were not routine background details. They were transient physical evidence with obvious exculpatory potential. If they existed where the Government claims, their shape, orientation, dimensions, substrate compositions, associated fragments, and relation to the rest of the scene could have helped determine whether rounds were directed at a person, driven into the ground, or deflected by an intermediate surface. That exculpatory value was apparent before the scene changed. *See Trombetta*, 467 U.S. at 488-89.

Comparable evidence cannot now be obtained by reasonably available means. Dirt formations are quickly destroyed by weathering, foot traffic, and cleanup. Concrete surfaces are similarly altered by wear, sweeping, repair, and scene release. Once the alleged strike points were left undocumented, the defense lost the best opportunity to test them objectively. Later testimony describing what an investigator recalls seeing is not a substitute for contemporaneous photographs, measurements, preserved fragments, or scene mapping.

At a minimum, the record warrants an evidentiary hearing on bad faith under *Youngblood*. If investigators recognized the alleged strikes, understood their relevance, selectively documented other scene items, yet chose not to photograph or measure these impacts and did not disclose that omission before trial, the Court should determine whether the failure was merely negligent or reflected a conscious decision to avoid preserving evidence inconsistent with the Government's theory. *See Youngblood*, 488 U.S. at 57-58.

D.     The interest of justice requires a new trial.

A new trial is warranted even apart from any one doctrinal label. This case was tried to a jury on a question of intent heavily dependent on physical-scene interpretation. The jury never saw contemporaneous images of the alleged strike sites because none were taken. The jury never saw forensics of the alleged projectile impacts on the facility because, as admitted in cross examination,

no pictures were taken to document that no damage had occurred. The defense was denied a fair chance to investigate that omission before trial. And the Government nevertheless asked the jury to infer intent from impact evidence that supposedly corroborated the Government's posited direction of fire but had not been preserved or disclosed in a way that allowed adversarial testing.

When central physical evidence is left undocumented and the defense does not learn that fact until trial, confidence in the verdict is undermined. The Court should not speculate that the missing documentation would have been unfavorable to the defense or that cross-examination fully cured the problem. Rule 33 exists so that verdicts are not left in place when the trial process has failed to provide a reliable basis for deciding guilt on a disputed, fact-intensive question.

## V. REQUEST FOR EVIDENTIARY HEARING AND RELATED RELIEF

If the Court does not immediately grant a new trial, Movant Benjamin Song requests an evidentiary hearing. The present record is sufficient to show substantial prejudice, but a hearing is appropriate to determine at least the following: (1) who first observed the alleged ground and concrete strike sites; (2) what scene-processing steps were and were not performed; (3) whether any notes, sketches, measurements, scanner data, drone imagery, body-worn-camera footage, dispatch recordings, or photo logs refer to those alleged impact locations; (4) when the prosecution learned that no photographs existed; and (5) whether any failure to document or preserve the sites resulted from bad faith, selective investigation, or a deliberate effort to avoid creating evidence inconsistent with the Government's theory.

Movant Benjamin Song further requests an order requiring the Government to produce, before the hearing, all materials related to those alleged strike sites, including scene notes, rough sketches, evidence logs, photo indices, communications among investigators and prosecutors,

body-camera footage, dashboard video, aerial imagery, scanner data, and any reports or memoranda describing shots into the ground or concrete.

## VI. PRAYER

For these reasons, Movant Benjamin Song respectfully requests that this Court order a New Trial, in accordance with Federal Rule of Criminal Procedure 33. In the alternative, Movant requests an evidentiary hearing, production of the scene-processing materials identified above. Movant Benjamin Song has been apprised that other defendants in this case have made similar motions and has been provided drafts of some of those motions. To the extent that the facts and arguments of other defendants are relevant to this motion, and consistent with the practice at trial that any objection applies to all defendants unless a defendant specifically excepts himself from the objection, Defendant Benjamin Song respectfully requests that the Court consider such arguments in concert with this motion., and such other relief as justice requires.

SONG WHIDDON PLLC

/s/ **Tailim Song**

Tailim Song
State Bar No. 00792845
tsong@songwhiddon.com
8131 LBJ Freeway, Suite 770
Dallas, Texas 75251-1395
Telephone: (214) 528-8400
Fax: (214) 528-8402
ATTORNEYS FOR BENJAMIN SONG

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this Motion was delivered via electronic mail to the office of the United States Attorney for the Northern District of Texas, Fort Worth Division, and counsel for the other eight defendants in this case on 27th day of March 2026.

/s/ Tailim Song
Tailim Song