# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

**UNITED STATES OF AMERICA,**

    *Plaintiff,*

**v.**

    **No. 4:25-CR-259-P**

**BENJAMIN SONG  (01)**

    *Defendant.*

## UNITED STATES' OPPOSITION TO DEFENDANT SONG'S MOTION FOR
## NEW TRIAL AND REQUEST FOR EVIDENTIARY HEARING

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................ 1

Background.................................................................................................................. 3

Legal Standard ........................................................................................................... 5

Argument .................................................................................................................... 6

    I.    Song's motion for new trial for newly discovered evidence fails as to all five *Berry* factors. ................................................................................ 8

        A.    First *Berry* Factor (Evidence Unknown at Time of Trial): Song's claim that the evidence was unknown at the time of trial is disingenuous.......................................................................... 8

        B.    Second *Berry* Factor (Due Diligence): The evidence could have been discovered with due diligence....................................... 10

        C.    Third *Berry* Factor (Evidence Not Cumulative or Impeaching): Evidence that the United States purportedly failed to take adequate ground strike photos is, at most, impeachment evidence. ...................................................................... 11

        D.    Fourth *Berry* Factor (Materiality): Neither Ranger Hill's testimony nor further ground strike evidence was material given the other evidence................................................................. 11

        E.    Fifth *Berry* Factor (Weight of New Evidence): The purported revelation from Ranger Hill's testimony would not "probably" have resulted in an acquittal, because the jury convicted despite knowing of it. ...................................................... 12

    II.    Song fails to establish a *Brady* violation justifying a new trial. .................... 12

    III.    Song cannot establish a *Youngblood* violation because he offers nothing more than conclusory allegations of bad faith................................. 13

    IV.    The interests of justice do not require a new trial. ........................................ 15

    V.    No unique situation exists supporting the need to depart from the usual rule that Rule 33 motions should be decided without holding an evidentiary hearing.................................................................................. 15

Conclusion ................................................................................................................ 16

Certificate of Service ............................................................................................... 17

Case 4:25-cr-00259-P    Document 386    Filed 04/10/26    Page 3 of 21    PageID 4158

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arizona v. Youngblood*,
  488 U.S. 51 (1988) ...................................................................................................... 6, 13

*Armstrong v. Ashley*,
  60 F.4th 262 (5th Cir. 2023) ..................................................................................... 6, 13, 14

*Banks v. Dretke*,
  540 U.S. 668 (2004) ........................................................................................................ 6

*Berry v. State*,
  10 Ga. 511 (Ga. 1851) ..................................................................................................... 5

*California v. Trombetta*,
  467 U.S. 479 (1984) ...................................................................................................... 14

*United States v. Brown*,
  650 F.3d 581 (5th Cir. 2011) ......................................................................................... 6, 12

*United States v. Denton*,
  No. 22-40020, 2023 WL 143169 (5th Cir. Jan. 10, 2023)............................................... 13

*United States v. Dickerson*,
  909 F.3d 118 (5th Cir. 2018) ......................................................................................... 15

*United States v. Freeman*,
  77 F.3d 812 (5th Cir. 1996) ........................................................................................... 5, 12

*United States v. Glenn*,
  935 F.3d 313 (5th Cir. 2019) ...................................................................................... 6, 7, 12, 13

*United States v. Hamilton*,
  559 F.2d 1370 (5th Cir. 1977) ....................................................................................... 15

*United States v. McNealy*,
  625 F.3d 858 (5th Cir. 2010) .......................................................................................... 7

**United States' Opp. to Song's Mot. for New Trial – Page ii**

# TABLE OF AUTHORITIES

*United States v. Perry*,
35 F.4th 293 (5th Cir. 2022) ........................................................................ 6, 13

*United States v. Severns*,
559 F.3d 274 (5th Cir. 2009) .............................................................................. 5

*United States v. Sipe*,
388 F.3d 471 (5th Cir. 2004) ............................................................................ 11

*United States v. Turner*,
674 F.3d 420 (5th Cir. 2012) .............................................................................. 5

*United States v. Wall*,
389 F.3d 457 (5th Cir. 2004) ................................................................... 5, 10, 11

**Rules**

Federal Rule of Criminal Procedure 33 ............................................................ 1, 5

**INTRODUCTION**

The United States respectfully asks this Court to deny Defendant Benjamin Song's motion for new trial and request for hearing. Dkt. No. 381.  Although Song offers many complaints about United States' investigation into and disclosure of evidence that Song fired at least some rounds into the ground ("ground strikes"), these complaints concern two different types of evidence: first, impeachment evidence that was supposedly undisclosed until trial that close-up photos of the ground strikes did not exist; second, potentially exculpatory evidence that might have been obtained if the United States had collected and preserved all evidence relating to the ground strikes.  While the former can support a motion for a new trial for "newly discovered" evidence or a *Brady* violation, the latter only establishes a due process (or *Youngblood*) violation if government agents acted in bad faith. Song's motion fails as to both types of evidence.

*First*, Song's motion fails to establish each of the five *Berry* factors needed to justify a new trial for "newly discovered" evidence. Fed. R. Crim. P. 33(b)(1).  Among other failings, Song's claim to have been unaware of the existence of potential ground strike evidence makes no sense: if Song truly did shoot only at the ground, he wouldn't need the government to inform him that there could be evidence of ground strikes.  Song's failure to understand that the United States didn't take close-up photos of the ground strikes is also due to his lack of due diligence. He could have gleaned this fact by examining the crime scene photos at some point between when they were disclosed on October 1 and when trial began in February 2026—he has only himself and his counsel to blame for failing to do so. Song also cannot establish that the evidence of the lack of close-up photos is neither

United States' Opp. to Song's Mot. for New Trial – Page 1

cumulative nor impeachment (it is, at most, impeachment). And Song cannot establish that this evidence is material given the overwhelming evidence supporting his guilt.  Finally, Song can't prove that the revelation of this evidence at trial would probably result in an acquittal because *it was revealed at trial and did not result in an acquittal.*

*Second*, Song has not proven a *Brady* violation both because the evidence is not material and because the evidence was not suppressed. Song could have discovered the evidence with due diligence, and in any case, he discovered the evidence with sufficient time at trial to make use of it.

*Third*, Song fails to establish a *Youngblood* violation as to the preservation of the potentially exculpatory ground-strike evidence because, despite ample opportunity to cross-examine government witnesses in the three-week trial, he has no evidence that government agents acted in bad faith in failing to preserve it.  His argument that he need not prove bad faith because the evidence was of apparent exculpatory value is foreclosed by Fifth Circuit precedent. And his claim, without support, that he should get another shot to obtain evidence of bad faith at a hearing is without merit.

*Fourth,* the interests of justice do not otherwise warrant a new trial.  Song's argument for a new trial on this ground largely recycles his *Youngblood* claim, but a new trial is not warranted because the evidence of Song's guilt is overwhelming; Song and his counsel are responsible for not obtaining the evidence whose absence he now complains of; and the evidence of ground strikes was already in the record—the jury just didn't find it convincing.

*Fifth*, no exceptional circumstance exists to depart from the rule in the Fifth Circuit that Rule 33 motions should be decided on the papers and affidavits without the need for an evidentiary hearing.

## BACKGROUND

On July 4, 2025, Benjamin Song opened fire on a victim Alvarado police officer within seconds of the officer arriving at the scene, shooting him in the neck. This encounter was captured on CCTV camera footage from the Prairieland Detention Facility that was later played at trial. The footage, among other things, shows a single puff of dirt on the concrete directly in front of Song when he opened fire. *See* Gov. Ex. 10 at 1:29:37–38. The officer's body-worn camera also captured the shooting, and it makes clear that Song was shooting at a near-automatic rate of fire, firing over ten rounds in a matter of seconds.

The United States produced its crime scene evidence to Defendant Song on October 1, 2025. Among other things, this included several hundred photos of the scene of the shooting at Prairieland Detention Center, including photos of the concrete area in front of Song where any ground strikes would have been. *See, e.g.*, Gov. Ex. 52 at 1–6. Despite now claiming (at 5) that the United States' evidence was so extensive that "the time provided was not sufficient for the defense to meaningfully review" it all, Song never sought a continuance to further analyze this evidence.

Between July 4, 2025, and February 27, 2026 (the date Song claims to have first learned of the absence of ground strike pictures), Song's counsel also never went to Prairieland to take their own pictures of the scene or to gather evidence. Given Song's current assertion that he knew since July 4 that he had only fired at the ground, his counsel's

failure is inexplicable. Nor did Song's counsel ever ask the United States about the existence of ground strike photos—indeed, the United States' review of its correspondence reveals no discovery request from Song of any kind at any time. This is true even though the video of the shooting reflecting the ground strikes was played at the probable cause/detention hearing on September 30, Song's counsel questioned the FBI case agent at length at the hearing, and the United States produced its crime scene photos the next day. *See* Dkt. No. 105 at 216–234 (cross-examination by Mr. Hayes). Song's failure to obtain evidence from the scene is also unlike several of the other defendants—including Defendants Batten and Evetts—whose counsel did go to Prairieland and took their own pictures. *See, e.g.*, Batten Def. Exs. 27–33; Evetts Def. Exs. 7–10.

At trial, the evidence supporting that Song intentionally shot the victim police officer was overwhelming. Beyond the strong video evidence, three cooperating witnesses—Susan Kent, John Thomas, and Lynette Sharp—confirmed that Song had told them that he had shot the Alvarado police officer. None of them testified that Song claimed to have done so accidentally. Also in evidence was the assessment from Song's long-time friend Meagan Morris that Song was living out his fantasy of violently attacking police officers when he opened fire at the scene. And there was ample evidence that Song subscribed to an ideology that advocated violent resistance to the United States government that supports his motive and intent.

Evidence of the ground strikes came into the trial through the video of the shooting, Gov. Ex. 10, and cross-examination by defense counsel of the United States' witnesses in the morning of the third day of substantive evidence. After the cross-examination in which

**United States' Opp. to Song's Mot. for New Trial – Page 4**

Ranger Hill testified that he did not take pictures of the ground strikes, Song did not seek a continuance to investigate the supposed revelation. Song chose not to make any opening statement, but he argued in closing that the evidence supported that there was reasonable doubt as to whether he intended to shoot the victim police officer because it was possible that the officer was hit by a ricochet. The jury considered and rejected this argument, convicting Song of attempted murder.

## LEGAL STANDARD

Rule 33 provides that upon a defendant's motion a district court can "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Motions for new trial under Rule 33 are "disfavored and reviewed with great caution." *United States v. Severns*, 559 F.3d 274, 280 (5th Cir. 2009).

For Rule 33 motions based on newly discovered evidence, courts in this Circuit apply a five-prong test known as the *Berry* rule. *See United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004); *see Berry v. State*, 10 Ga. 511 (Ga. 1851). Under this standard, a defendant must establish that: (1) the evidence is newly discovered and was unknown to him at trial; (2) his lack of diligence was not the reason he failed to detect the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) if introduced at a new trial, the evidence would probably produce an acquittal. *Wall*, 389 F.3d at 467. The failure to satisfy any one factor is fatal to the motion. *United States v. Freeman*, 77 F.3d 812, 817 (5th Cir. 1996).

Rule 33 motions may also be premised on *Brady* violations. *See United States v. Turner*, 674 F.3d 420, 429 (5th Cir. 2012) (denying motion for new trial for *Brady* claim).

"To establish a *Brady* violation, a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *United States v. Glenn*, 935 F.3d 313, 319 (5th Cir. 2019) (citation omitted). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (citations omitted)). "Stated differently, the favorable evidence must 'put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* (quoting *Banks v. Dretke*, 540 U.S. 668, 698 (2004)). For evidence to be "suppressed," it "must not have been discoverable through the defendant's due diligence." *United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011). No *Brady* violation occurs where a defendant learns of the evidence at trial with enough time to "effective[ly] use [it] at trial." *United States v. Perry*, 35 F.4th 293, 348 (5th Cir. 2022).

Where the government fails to preserve evidence "of which no more can be said than that it . . . might have exonerated the defendant," a defendant must "show bad faith on the part of the police" to prove a due process violation. *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). To prove bad faith, a defendant must do more than point to allegedly exculpatory evidence and claim it was improperly preserved. *See Armstrong v. Ashley*, 60 F.4th 262, 273 (5th Cir. 2023).

## ARGUMENT

This Court should deny Song's motion for new trial for five reasons. First, he utterly fails to establish all five of the *Berry* factors needed to justify a new trial for newly discovered evidence. Second, Song cannot make out a *Brady* claim because the relevant

**United States' Opp. to Song's Mot. for New Trial – Page 6**

evidence is not material and was not suppressed. Third, Song cannot establish a *Youngblood* violation because he offers no evidence of bad faith. Fourth, Song's request for a new trial in the interests of justice is without merit. Fifth, Song is not entitled to a hearing on this issue.

At the outset, it is necessary to distinguish between which types of evidence Song complains about are exculpatory, impeaching, or merely potentially exculpatory. Song's claim relating to the revelation that the United States supposedly failed to adequately photograph the crime scene is, at best, impeachment evidence. It is not exculpatory because it does not tend to prove that Song did not commit the offense. But where, as here, a defendant claims that certain other evidence would have been exculpatory but that it was not collected or preserved, it is properly analyzed under *Youngblood* as of "potentially exculpatory" value if the defendant cannot establish what precisely the evidence would have shown. *Glenn*, 935 F.3d at 320; *see also United States v. McNealy*, 625 F.3d 858, 869 (5th Cir. 2010) (concluding "potentially available" exculpatory evidence "should be considered 'potentially useful evidence' rather than 'material exculpatory evidence'"). Outside of Song's occasional *ipse dixit* that the ground strike evidence would have been exculpatory, he offers no evidence supporting that conclusion. He elsewhere admits the evidence merely had "exculpatory potential" and that it "could have helped determine whether rounds were directed at a person." Dkt. No. 381 at 9.

Thus, the below analysis discusses the claim that Song purportedly learned for the first time at trial that the United States did not take the kinds of crime scene photographs

United States' Opp. to Song's Mot. for New Trial – Page 7

he desired under the "newly discovered evidence" and *Brady* frameworks, and the alleged loss of potentially exculpatory evidence under the *Youngblood* framework.

## I.  Song's motion for new trial for newly discovered evidence fails as to all five *Berry* factors.

Song's motion for a new trial based on "newly discovered" evidence fails on every level. Indeed, Song's brief does not even bother to try to argue how he meets each *Berry* factor.  The United States briefly addresses each factor below.

### A.  First *Berry* Factor (Evidence Unknown at Time of Trial): Song's claim that the evidence was unknown at the time of trial is disingenuous.

This case has been rife with implausible, disingenuous claims by various defense counsel. This started with the assertion that defendants could not possibly understand the nature of the United States' case without a bill of particulars despite the United States' disclosure of its case in a highly detailed indictment, expansive discovery production, and an all-day presentation at a probable cause/detention hearing. *See* Dkt. Nos. 91, 96, 112, 178. It continued with contradictory claims about the complexity of the case's discovery. At one point, one defendant claimed (when convenient for his purposes) that the case was so simple that it should not be designated complex, Dkt. No. 104 (only "a few hundred pages" of documents were purportedly relevant), but then this same defendant asserted, when trying to evade sanctions, that discovery was so voluminous and complicated that it was "akin to searching through a mountainous haystack to determine where the relevant needles lie," Dkt. No. 179 at 5. And the trend of disingenuous claims reached its peak when defendants (including Song) asserted it was a revelation at trial that the victim officer pulled his weapon out as soon as he exited his vehicle, and also that it was new

United States' Opp. to Song's Mot. for New Trial – Page 8

information that one of the rounds the officer fired when he fell to the ground struck Song's weapon. *Compare* Dkt. No. 340 at 5 (claiming surprise), *with* Dkt. No. 343 at 4–6 (refuting that these facts were hidden in discovery with reference to specific items disclosing them).

The current motion and the claim that Song did not know of the absence of close-up ground strike photos is more of the same. The Court can judge for itself whether it is credible that Song's counsel—despite purportedly knowing since July 2025 about Song's story that he only fired at the ground,[1] and then receiving the United States' crime scene evidence on October 1, 2025—could possibly have not noticed for five months that the discovery did not contain the types of close-up photos of ground strikes they desired. If Song truly believed his story, it makes no sense that his counsel would do nothing for eight months to diligently seek supporting evidence. It is implausible that Song intended to sit on his hands until trial and was somehow counting on a revelation of the existence of unproduced ground strike photos at the eleventh hour. The most reasonable explanation is that Song and his counsel knew that (1) he did not fire all his rounds at the ground, (2) a close review of the scene would not help Song, and (3) Song could nonetheless use the absence of the close-up photos to impeach investigators at trial while simultaneously arguing a ricochet theory based on the video evidence. That Song's

---

[1] Song makes a puzzling claim (at 4) that the "Government's failure to disclose the existence of ground strikes" prejudiced him. How it is possible that Song would not himself have disclosed the existence of ground strikes to his counsel beginning in around July 2025 if his current story that he only fired at the ground is true is unexplained. Song's claim also makes little sense given that the video of the shooting clearly shows at least one ground strike.

**United States' Opp. to Song's Mot. for New Trial – Page 9**

counsel did not miss a beat when Ranger Hill testified that he did not take pictures specifically of the ground strikes is no accident—they were fully prepared for this fact and intended to rely upon it to impeach the witness.

### B. Second *Berry* Factor (Due Diligence): The evidence could have been discovered with due diligence.

A court should not grant a new trial if the defendant "should have known of the existence" of the "newly discovered" evidence by exercising due diligence. *Wall*, 389 F.3d at 469. Here, Song could have learned of the supposed lack of ground strike photos of the quality he desired by doing the following: examining the several hundred crime scene photos the United States produced. That he failed to do so is inexcusable, especially because he never sought a continuance based on his current claim that there was inadequate time to review the evidence. And Song could have but did not ask the United States if such ground photos existed. Thus, Song has no one to blame but himself for his claimed unawareness of the "newly discovered" evidence.

Moreover, where "a defendant becomes aware of evidence early in a trial, it is incumbent upon the defendant to seek a continuance or demonstrate efforts to obtain the evidence before it will be considered newly discovered." *Wall*, 389 F.3d at 469. Here, although Song claims (at 7–8) he could have taken various actions at trial if he had known of this evidence earlier, he never sought a continuance, nor did he do anything to attempt to obtain further evidence. He thus fails to satisfy the second *Berry* factor.

**C.**    **Third *Berry* Factor (Evidence Not Cumulative or Impeaching): Evidence that the United States purportedly failed to take adequate ground strike photos is, at most, impeachment evidence.**

Impeachment evidence "normally is not a basis for granting a motion for new trial." *Wall*, 389 F.3d at 470 (collecting caselaw). Here, as explained above, the evidence relating to Ranger Hill's testimony is, at most, impeaching of the thoroughness of the investigation. It therefore fails to satisfy *Berry*'s third factor.

To the extent the Court otherwise considers some ground strike evidence to have been "newly discovered" at trial, such evidence is merely cumulative of the video footage reflecting the ground strikes that was played at trial and which Song used as the basis for his ricochet theory in closing.

**D.**    **Fourth *Berry* Factor (Materiality): Neither Ranger Hill's testimony nor further ground strike evidence was material given the other evidence.**

Whether evidence is material "depends almost entirely on the value of the evidence relative to the other evidence mustered by the state." *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004). Here, as explained above, the evidence that Song intentionally shot at the victim officer was overwhelming based on the video evidence and the testimony of multiple co-conspirators. And the evidence that there had been ground strikes was also established by other evidence—including the video and other witness testimony—such that Ranger Hill's testimony and the absence of in-depth ground strike photos was immaterial. Song was also able to use the supposed lack of adequate ground strike evidence to impeach the government's witnesses. Further, there were photos taken of the scene where the ground strikes happened which Song could have used

**United States' Opp. to Song's Mot. for New Trial – Page 11**

at trial. *See* Gov. Ex. 52. This is simply not a situation in which the purportedly newly discovered evidence "'put the whole case in such a different light as to undermine confidence in the verdict.'" *Glenn*, 935 F.3d at 319 (citation omitted).

> **E.      Fifth *Berry* Factor (Weight of New Evidence): The purported revelation from Ranger Hill's testimony would not "probably" have resulted in an acquittal because the jury convicted despite knowing of it.**

Finally, it is obvious that the supposed revelation from Ranger Hill's testimony would not "probably" have brought about an acquittal: the jury heard this testimony, Song's corresponding complaints about the adequacy of the investigation, and his argument about a ricochet theory, and convicted Song anyway.

Because Song fails to establish all five of the *Berry* factors, and a failure as to even a single factor is fatal to his motion for a new trial based on newly discovered evidence, *Freeman*, 77 F.3d at 817, his motion should be denied.

## II.      Song fails to establish a *Brady* violation justifying a new trial.

Song's motion for a new trial based on a purported *Brady* violation fails for similar reasons to his motion based on newly discovered evidence. Even if one assumes the evidence is exculpatory or impeachment material, Song cannot establish the evidence's materiality for the same reason explained above regarding the "newly discovered evidence."

Song's *Brady* claim separately fails because he cannot establish that the evidence was "suppressed." As noted above, for evidence to be "suppressed," it "must not have been discoverable through the defendant's due diligence." *Brown*, 650 F.3d at 588. Here,

Song could have learned of the alleged absence of in-depth photos of ground strikes by examining the United States' production of crime scene photos or by asking whether such photos existed. Song's counsel did neither in the five months after the United States produced its evidence. In fact, Song never requested discovery at all. Song's counsel could have, like other defendants, gone to the scene and obtained their own evidence. They again did not do so at any time between July 4, 2025 and February 27, 2026. Finally, because no *Brady* violation occurs where a defendant learns of the evidence at trial with enough time to "effective[ly] use [it] at trial," *Perry*, 35 F.4th at 348, and Song learned of Ranger Hill's testimony with sufficient time to use it to cross-examine him about it and to incorporate it into closing, Song cannot establish a *Brady* violation.

**III.    Song cannot establish a *Youngblood* violation because he offers nothing more than conclusory allegations of bad faith.**

To establish a *Youngblood* violation based on the failure to preserve evidence of potentially exculpatory value, Song must prove that government agents acted in bad faith. *Glenn*, 935 F.3d at 320. Bad faith means more than mere negligence. *Id.*; *Youngblood*, 488 U.S. at 58. Instead, it requires some evidence that government agents took conscious action to destroy evidence—for instance, by "intentionally los[ing] or destroy[ing] . . . evidence . . . to impede [the] defense." *United States v. Denton*, No. 22-40020, 2023 WL 143169, at *1 (5th Cir. Jan. 10, 2023). And to establish bad faith, a defendant must do more than "point to potentially useful evidence, claim it was improperly preserved, and then allege bad faith without factual support." *Armstrong v. Ashley*, 60 F.4th 262, 273 n.11 (5th Cir. 2023). *Youngblood*'s rule requiring evidence of

United States' Opp. to Song's Mot. for New Trial – Page 13

bad faith reflects the Supreme Court's judgment that courts should "weed out such claims [lacking evidence of bad faith] because of the difficulty of 'imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" *Armstrong,* 60 F.4th at 274 (quoting *Youngblood*, 488 U.S. at 58).

But Song's brief is barren of any evidence of bad faith. Despite having the opportunity to cross-examine the United States' witnesses at length at trial, he offers no evidence that any agent acted with a subjective intent to deprive him of evidence. Although he now asks for a new opportunity to fish for evidence of bad faith at a hearing, he offers no authority for this demand, nor does he explain why his opportunity to obtain this evidence in the three-week trial was insufficient.

Song's related argument (at 6 and 9)—that he need not establish bad faith because the ground strike evidence had apparent exculpatory value and comparable evidence cannot now be obtained by reasonable means—is foreclosed by Fifth Circuit caselaw. For his argument, Song erroneously relies on *California v. Trombetta*, 467 U.S. 479 (1984). *See* Dkt. No. 381 at 6, 9. But in *Armstrong*, the Fifth Circuit encountered and rejected the exact same argument Song offers based on *Trombetta. Armstrong*, 60 F.4th at 273 n.11 (observing argument that because the government agent "would have known the fingerprint was exculpatory, . . . a bad faith allegation is not required"). In *Armstrong*, the Fifth Circuit held that (1) the argument Song relies on "conflicts with *Youngblood*"; (2) because *Trombetta* was "decided before *Youngblood*," it does not control; and (3)

"regardless, [*Trombetta*] announces no such rule" as the one Song appears to now rely on. *Id.*

Consequently, because Song cannot establish bad faith and his claim that he need not do so based on *Trombetta* is foreclosed, his motion should be denied.

## IV.    The interests of justice do not require a new trial.

Song's attempt (at 9–10) to repackage his defective *Youngblood* claim to assert he is entitled to a new trial because the jury did not see the potentially exculpatory ground strike evidence is without merit. Song points to no authority supporting that a failed *Youngblood* claim can nonetheless justify granting a new trial. And a new trial is not warranted in any case: the evidence supporting Song's guilt is overwhelming; Song and his counsel are responsible for not obtaining the evidence whose absence he now complains of; and the evidence of ground strikes was already in the record—the jury just didn't find it convincing.

## V.    No unique situation exists supporting the need to depart from the usual rule that Rule 33 motions should be decided without holding an evidentiary hearing.

Finally, there is no need for a hearing on any of Song's arguments, including his *Youngblood* claim. It has long been "the law of this circuit . . . that a motion for new trial may ordinarily be decided upon affidavits without an evidentiary hearing." *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977). "Hearings under Rule 33 are reserved for unique situations typically involving allegations of jury tampering, prosecutorial misconduct, or third-party confession." *United States v. Dickerson*, 909 F.3d 118, 125 (5th Cir. 2018) (cleaned up). Because Song points to no unique situation justifying a

hearing, and the evidence he claims to now seek could have been obtained at the three-week trial in this matter, his request should be denied.

## CONCLUSION

The United States respectfully requests that this Court deny Defendant Song's Motion for New Trial and Request for Evidentiary Hearing. Dkt. No. 381.

Dated: April 10, 2026                                Respectfully submitted,

                                                     RYAN RAYBOULD
                                                     UNITED STATES ATTORNEY

                                                     */s/ Matthew Capoccia*
                                                     Matthew Capoccia
                                                     Assistant United States Attorney
                                                     Texas State Bar No. 24121526
                                                     801 Cherry Street, Suite 1700
                                                     Fort Worth, Texas 76102
                                                     Telephone: 817-252-5200
                                                     Email: matthew.capoccia@usdoj.gov

**United States' Opp. to Song's Mot. for New Trial – Page 16**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2026, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorney of record who has consented in writing to accept this Notice as service of this document by electronic means. A courtesy copy of the filed motion has also been emailed to the above-mentioned defense counsel.

*/s/ Matthew Capoccia*

Matthew Capoccia
Assistant United States Attorney
