IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA,

v.                                                                    No. 4:25-CR-259-P

BENJAMIN SONG (03),
Defendant.


**DEFENDANT SONG'S MOTION FOR LEAVE TO FILE REPLY IN SUPPORT OF
MOTION FOR NEW TRIAL AND REQUEST FOR EVIDENTIARY HEARING**

Use of Generative Artificial Intelligence

This motion was in part prepared with generative artificial intelligence and reviewed by counsel before filing.

Defendant Benjamin Song respectfully moves for leave to file a reply in support of his Motion for New Trial and Request for Evidentiary Hearing. See Dkt. 381. The Government has filed its response. See Dkt. 386. Under Local Criminal Rule 47.1(f), a reply brief may be filed only if the moving party requests, and the presiding judge grants, leave to do so.

**REASONS LEAVE SHOULD BE GRANTED**

Leave is warranted because the Government's response raises and sharpens several issues on which a short reply would aid the Court, including whether the newly discovered evidence is merely impeachment, whether the defense could reasonably have discovered earlier that investigators did not photograph, measure, map, swab, or otherwise preserve the alleged strike-site evidence, whether the omitted evidence bears directly on trajectory, line of fire, and intent, and whether, at minimum, an evidentiary hearing is warranted. See; *United States v. Sims*, No. No. 4:18-CR-253-A, 2020 WL 1862906 (N.D. Tex. Apr. 14, 2020) (granting leave to file reply where

MOTION FOR LEAVE TO FILE REPLY IN SUPPORT OF MOTION FOR NEW TRIAL    Page 1

the government's response raised issues warranting additional briefing). Courts routinely grant leave to file reply to briefs when the response introduces arguments or characterizations that the moving party has not yet had the opportunity to address.

Specifically, the Government's response raises the following issues that warrant a reply; whether the newly discovered evidence is merely impeachment or instead goes directly to the physical circumstances of the offense-including trajectory, line of fire, and intent- rather than simply to witness credibility; whether the defense could reasonable have discovered earlier that investigators did not photograph, measure, map, swab, or otherwise preserve all alleged strike-site evidence; and whether, at minimum evidentiary hearing is warranted to develop the factual record. Given the gravity of the underlying motion for new trial which implicates defendant's fundamental right to a fair trial and the integrity of the proceedings full briefing is essential before the court rules on these issues.

The proposed reply will be concise, addresses only matters raised in the Government's response, and will comply with the applicable page and formatting limits as required by the Honorable Judge Mark T. Pittman. Granting leave will cause no prejudice to the Government, as the reply is limited to issues the Government itself raised and does not introduce new claims or theories of relief.

Counsel for Defendant has conferred with counsel for the Government by email regarding the relief requested and requested the Government's position on this motion so that the certificate of conference may accurately reflect that position.

Defendant therefore respectfully requests that the Court grant leave to file the proposed reply in support of the Motion for New Trial and Request for Evidentiary Hearing and direct the

Clerk to file the tendered reply, or alternatively permit Defendant to file it by whatever deadline the Court sets.

*/s/  Tailim Song*
Respectfully submitted,
TAILIM SONG
State Bar No. 00792845
tsong@songwhiddon.com
8131 LBJ Fwy, Suite 770
Dallas, Texas 75251
(214) 528-8400 Telephone
(214) 528-8402 Facsimile
COUNSEL FOR DEFENDANT
BENJAMIN SONG

Phillip Hayes
3300 Oak Lawn Ave # 600
Dallas, TX 75219
214-774-0488
Fax: 214-528-6601
SBOT # 24012803
Phayes1995@hotmail.com
COUNSEL FOR DEFENDANT
BENJAMIN SONG

## CERTIFICATE OF CONFERENCE

I certify that on April 15, 2026, I conferred by email with counsel for the Government regarding this motion and requested the Government's position on the relief sought herein. As of the time of filing, the Government is opposed the relief requested.  A true and correct copy of the email exchange is attached hereto.

*/s/  Tailim Song*
Tailim Song

## CERTIFICATE OF SERVICE

I certify that on April 17, 2026, this document was filed via the Court's CM/ECF system, which will serve a copy on all counsel of record.

*/s/  Tailim Song*
Tailim Song

**From:** tsong@songwhiddon.com <tsong@songwhiddon.com>
**Sent:** Wednesday, April 15, 2026 3:41 PM
**To:** 'Smith, Shawn (USATXN) 7' <Shawn.Smith2@usdoj.gov>; 'Gatto, Frank (USATXN)' <Frank.Gatto@usdoj.gov>; 'Capoccia, Matthew (USATXN)' <Matthew.Capoccia@usdoj.gov>
**Cc:** 'phayes1995_hotmail.com' <phayes1995@hotmail.com>; 'Shayla Hamilton' <shamilton@songwhiddon.com>; 'Jordan Whiddon' <jwhiddon@songwhiddon.com>
**Subject:** RE: [EXTERNAL] RE: United States v. Arnold, 4:25-cr-00259-P, in the Northern District of Texas

Dear Shawn:

Thank you for your response.

I understand the Government's position to be that there is no newly discovered evidence (which is controverted) and, accordingly, that the Government opposes the filing of a reply brief (and/or an evidentiary hearing). We will note that position in the certificate of conference.

Respectfully, opposition to the filing of a reply brief does not alter the Government's substantive position on the underlying motion. It simply concerns whether Defendant may submit additional briefing in response to the arguments raised in the Government's Response to the Motion for New Trial.

We anticipate filing the Motion for Leave on Friday. If the Government's position changes before then, please let us know and we will update the certificate of conference accordingly.

**Sincerely,**

**Tailim Song**
*Partner*

**SONG WHIDDON, PLLC**
**8131 LBJ Freeway, Suite 770**
**Dallas, Texas 75251**
**Telephone (214) 528-8400**
**Fax (214) 528-8402**

**IMPORTANT NOTICES:**
**This message is attorney privileged and confidential information and is transmitted for the exclusive information and use of the addressee. Please notify the sender by email if you are not the intended recipient. If you are not the intended recipient, you may not copy, disclose, or distribute this message or its contents to any other person and any such actions may be unlawful.**

**This communication does not reflect an intention by the sender or the sender's agent or sender's client to conduct a transaction or make any agreement by electronic means. Nothing contained in this message or in any attachment shall satisfy the requirements for writing, and nothing contained herein shall constitute a contract or electronic signature under the Electronic Signatures in Global and National Commerce Act, any version of the Uniform Electronic Transactions Act or any other statute governing electronic transactions.**

**Please note that this law firm does not accept time sensitive or action-oriented messages via email. We further reserve the right to monitor and review the content of all messages sent to or from this email address. Messages sent to or from this email address may be stored on the law firm email system.**

**From:** Smith, Shawn (USATXN) 7 <Shawn.Smith2@usdoj.gov>
**Sent:** Wednesday, April 15, 2026 3:20 PM
**To:** tsong@songwhiddon.com; Gatto, Frank (USATXN) <Frank.Gatto@usdoj.gov>; Capoccia, Matthew (USATXN) <Matthew.Capoccia@usdoj.gov>
**Cc:** 'phayes1995_hotmail.com' <phayes1995@hotmail.com>; 'Shayla Hamilton' <shamilton@songwhiddon.com>; 'Jordan Whiddon' <jwhiddon@songwhiddon.com>
**Subject:** Re: [EXTERNAL] RE: United States v. Arnold, 4:25-cr-00259-P, in the Northern District of Texas

The government's position is that there is no newly discovered evidence so it is opposed to a reply brief and/or hearing.

---

**From:** tsong@songwhiddon.com <tsong@songwhiddon.com>
**Sent:** Wednesday, April 15, 2026 3:05 PM
**To:** Gatto, Frank (USATXN) <Frank.Gatto@usdoj.gov>; Capoccia, Matthew (USATXN) <Matthew.Capoccia@usdoj.gov>; Smith, Shawn (USATXN) 7 <Shawn.Smith2@usdoj.gov>
**Cc:** 'phayes1995_hotmail.com' <phayes1995@hotmail.com>; 'Shayla Hamilton' <shamilton@songwhiddon.com>; 'Jordan Whiddon' <jwhiddon@songwhiddon.com>
**Subject:** [EXTERNAL] RE: United States v. Arnold, 4:25-cr-00259-P, in the Northern District of Texas

Counsel:

We are preparing to file Defendant Benjamin Song's Motion for Leave to File Reply in support of his Motion for New Trial and Request for Evidentiary Hearing in the above-captioned matter.

Insofar as reply briefs in criminal cases require leave in the Honorable Judge Mark T. Pittman's Court, we are writing to confer and ask whether the Government opposes the requested relief. The proposed motion is limited to seeking leave to file a short reply addressing issues raised in the Government's response, including whether the newly discovered evidence is merely impeachment, whether the defense could reasonably have discovered earlier that investigators did not photograph, measure, map, swab, or otherwise preserve the alleged strike-site evidence,

whether the omitted evidence bears directly on trajectory, line of fire, and intent, and whether an evidentiary hearing is warranted.

Please let us know by noon Friday, April 17, 2026 whether the Government opposes the motion, so that we may accurately state your position in the certificate of conference.

**Sincerely,**

**Tailim Song**
*Partner*

**SW**

**SONG WHIDDON, PLLC**
**8131 LBJ Freeway, Suite 770**
**Dallas, Texas 75251**
**Telephone (214) 528-8400**
**Fax (214) 528-8402**

**IMPORTANT NOTICES:**
**This message is attorney privileged and confidential information and is transmitted for the exclusive information and use of the addressee. Please notify the sender by email if you are not the intended recipient. If you are not the intended recipient, you may not copy, disclose, or distribute this message or its contents to any other person and any such actions may be unlawful.**

**This communication does not reflect an intention by the sender or the sender's agent or sender's client to conduct a transaction or make any agreement by electronic means. Nothing contained in this message or in any attachment shall satisfy the requirements for writing, and nothing contained herein shall constitute a contract or electronic signature under the Electronic Signatures in Global and National Commerce Act, any version of the Uniform Electronic Transactions Act or any other statute governing electronic transactions.**

**Please note that this law firm does not accept time sensitive or action-oriented messages via email. We further reserve the right to monitor and review the content of all messages sent to or from this email address. Messages sent to or from this email address may be stored on the law firm email system.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA,

v.                                                            No. 4:25-CR-259-P

BENJAMIN SONG (03),
Defendant.

**DEFENDANT SONG'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL
AND REQUEST FOR EVIDENTIARY HEARING**

Defendant Benjamin Song files this Reply in support of his Motion for New Trial and

Request for Evidentiary Hearing.  The Government's response narrows the issue too aggressively.

Song's claim is not that the Government had some duty to tell him what he himself remembered

about where he fired. The newly discovered evidence is the Government's own omission: law

enforcement investigators who identified alleged fresh strike points on pavement and processed

the scene did not photograph, measure, map, swab, or preserve those alleged ground and concrete

impacts, and the defense did not learn that until trial. That omission mattered because the

Government used direction of fire, trajectory, and scene reconstruction to prove intent.

The Government also wrongly reduces the issue to "close-up photos" and then categorizes

the problem "mere impeachment." It is more than that. Where intent turns on whether the round

that struck Lt. Gross traveled directly at or after deflection from the wet ground, rain puddle, or

concrete, documentation and preservation of the strike sites is substantive physical evidence. The

Fifth Circuit's decision in *Draughon v. Dretke*, 427 F.3d 286 (5th Cir. 2005), although arising

under *Strickland*[1] rather than Rule 33, is instructive because it treated ricochet and trajectory

evidence as central to intent and prejudice rather than peripheral impeachment. *Id.* at 296-97.

---

[1] *Strickland v. Washington,* 466 U.S. 668 (1984).

## I. THE GOVERNMENT'S OWN FILINGS CONFIRM THE CENTRALITY OF RICOCHET, LINE OF FIRE, AND INTENT.

The Government's own filings confirm that trajectory and line-of-fire evidence were central to the case. In its opposition, the Government expressly distinguishes between "impeachment evidence[2]" concerning the absence of close-up photos and "potentially exculpatory evidence that might have been obtained if the United States had collected and preserved all evidence relating to the ground strikes.[3]" That concession matters. It acknowledges that the dispute is not simply about missing close-up pictures; it is about the loss of underlying physical evidence that could have shown ricochet, direction of travel, and intent.

Mid-trial, the Government also moved for a supplemental transferred-intent instruction, telling the Court that, based on Ranger Hill's redirect testimony, "the detention officers were in the line of fire when Song opened fire, both the first time Song fired, and the second time he fired[4]" and that the evidence showed Song intended to target the detention officers and Lt. Gross. A party does not seek a supplemental instruction to conform to the evidence on an issue that is supposedly immaterial. The Government itself treated line of fire, target, and trajectory as consequential enough to require an additional legal theory for the jury.

Those filings defeat the current effort to trivialize the missing strike site evidence. Contemporaneous photographs, measurements, swabs, and mapping of the alleged ground and concrete strikes were not "merely cumulative or impeaching." They were among the most important objective facts bearing on whether any round was fired directly at a person or instead first struck an intermediate surface.

---

[2] United States' Opp. to Song's Mot. for New Trial at page 1.
[3] Id.
[4] Government's Motion for a Supplemental Jury Instruction on the Doctrine of Transferred Intent at page 2.

That is why *Draughon* is useful. The Fifth Circuit held there that counsel's failure to investigate the forensics of the fatal bullet "deprived Draughon of a substantial argument" and left "an unchallenged factual predicate for the State's main argument that Draughon intended to kill." *Draughon v. Dretke*, 427 F.3d at 296. The court emphasized that "[t]he importance of this [forensic ricochet] testimony cannot be overstated." *Id.* Although *Draughon* arose in the ineffective-assistance context, its reasoning undercuts the suggestion that ricochet and trajectory evidence are collateral. They go to the heart of intent.

## II. SONG SATISFIES RULE 33.

### A. The newly discovered evidence was the Government's undisclosed non-documentation and non-preservation of central strike site evidence.

The Government says Song's claim is "disingenuous" because, if he fired into the ground, he would already know that.[5] That misses the point. Song did not "discover" at trial his own account of events. He discovered that investigators who had identified alleged strike locations had not photographed, measured, swabbed, or otherwise documented them, despite using specialized scene-processing tools and despite the centrality of trajectory to the Government's intent theory.[6]

Those are not facts within the defendant's personal knowledge. Whether the scene had been preserved, whether alleged strike points had been fixed by measurement, whether scanner data existed, whether swabs had been taken, and whether no such documentation existed at all are all matters within the Government's knowledge unless and until disclosed.

### B. The Government cannot convert its omission into a due-diligence failure by the defense.

The Government's due-diligence argument assumes the defense should have inferred from the absence of certain photographs in a large discovery production that no strike site photographs

---

[5] United States' Opp. to Song's Mot. for New Trial at pages 8-10.
[6] Song's Mot. for New Trial at pages 3-5.

or measurements existed and should then have reconstructed the scene on its own months earlier.[7]

*Brady*[8] does not work that way. The prosecution may not satisfy its disclosure obligations by forcing the defense to guess, from silence and absence, that critical physical evidence was never created or preserved. *See Banks v. Dretke*, 540 U.S. 668, 695-96 (2004); *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995).

Nor does it answer the problem to say that the defense could have done more after learning the omission mid-trial. Effective use of this information required timely scene access, expert consultation, preservation requests, motions to limit speculative trajectory testimony, and strategic decisions in opening, cross-examination, and closing. By the time Ranger Hill acknowledged that no photographs had been taken, the meaningful opportunity to do those things had already been impaired.

The Government's suggestion that later defense photographs or a mid-trial continuance would have cured the problem is also mistaken. The opposition notes that counsel for Batten and Evetts later went to Prairieland and took their own photographs.[9] But later defense snapshots are not a substitute for contemporaneous crime-scene documentation of transient impact evidence. Dirt changes with weather, foot traffic, and cleanup. Concrete surfaces change through wear, sweeping, repair, and scene release.[10] Same is true for wet ground strikes. Once the Government failed to photograph, measure, swab, and preserve the alleged strike sites when they were first observed, the best evidence (if not all evidence) was gone. A continuance could not recreate it.

**C. The omitted evidence was not cumulative or merely impeaching.**

---

[7] United States' Opp. to Song's Mot. for New Trial at page 10.
[8] *Brady v. Maryland,* 373 U.S. 83 (1963)
[9] United States' Opp. to Song's Mot. for New Trial at page 4.
[10] Song's Mot. for New Trial at pages 8-9.

The Government says the omitted evidence was only impeaching and, alternatively, cumulative of the video.[11] Neither is correct.

This was not just a matter of showing that investigators did sloppy work in the abstract. The missing documentation concerned substantive forensic facts: the precise locations, dimensions, orientation, and character of the alleged impact points; the relation of those points to the shooter, Lt. Gross, and surrounding surfaces; and whether those impacts supported a ricochet path. Those are merits facts, not just credibility arguments.

Nor was a fleeting video image of a puff of dirt (which is controverted and appear to be at least two) equivalent to preserved and measured strike site evidence from all (unfound) ground strikes in the concrete and wet dirt. Cross-examination that elicited *there are no photos* is not equivalent to expert analysis of actual documented impact points. The jury here heard only that the best scene evidence did not exist. The jury did not hear what that evidence, if preserved, would have shown.

By the time the defense elicited that *no ground strike photographs had been taken*, the prejudice had already occurred. As the motion for new trial explains, investigators had a Leica RTC360 scanner available for measurement purposes; Burris referenced a reconstruction that did not include trajectory or shooter-position determinations; Hill said there were defects in the concrete that appeared to be fresh bullet defects; yet no swabs were taken, no photographs were taken of the concrete strikes, no measurements fixed those locations to the scene, no effort was made to search for additional ground strikes, and no projectile was recovered other than the single deformed projectile removed from Lt. Gross's vest.[12] It was also acknowledged only at trial that no projectiles struck the Prairieland Detention Center, the guard shack, Lt. Gross's vehicle, or the

---

[11] United States' Opp. to Song's Mot. for New Trial at pages 11-12.
[12] Song's Mot. for New Trial at pages 3-5.

Fire Marshal's vehicle.[13] Cross-examination about what was not done is not a substitute for the evidence itself. The jury did not reject a ricochet reconstruction. It heard only that the Government had failed to preserve the very scene evidence needed to conduct one.

**D. The omitted evidence was material and could probably have altered the verdict on intent.**

The Government's "overwhelming evidence" formulation is too broad. The Rule 33 question is whether the omitted evidence mattered on the contested issue for which it would have been offered. Here, that issue was intent to kill. The Government leaned heavily on physical-scene interpretation to establish that Song aimed at Lt. Gross rather than at the ground.[14]

Again, *Draughon* is instructive. There, even with eyewitness testimony and other inculpatory proof, the Fifth Circuit recognized that ricochet and trajectory evidence could meaningfully alter the jury's view of intent because it undermined the State's "aimed shot" theory. *Draughon v. Dretke*, 427 F.3d at 296-97. The same is true here. If the actual round that caused the injury traveled after deflection from the ground or concrete, that fact speaks directly to whether Song intentionally fired at Lt. Gross.

That distinction matters under federal attempted-murder law. The Supreme Court has explained that, although a completed murder may in some circumstances occur without a specific intent to kill, "an attempt to commit murder requires a specific intent to kill." *Braxton v. United States*, 500 U.S. 344, 351 footnote (1991). And courts applying 18 U.S.C. § 1113 have likewise recognized that proof of reckless or wanton conduct cannot substitute for proof of an intent to kill. *See United States v. Kwong*, 14 F.3d 189, 194-95 (2d Cir. 1994). If the missing strike site evidence supported a skip-shot or ricochet path, the jury could have viewed the firing as dangerous, reckless,

---

[13] *Id.* at pages 4-5.
[14] Government's Motion for a Supplemental Jury Instruction on the Doctrine of Transferred Intent at page 2 and United States' Opp. to Song's Mot. for New Trial at pages 1-5 and 11-12.

REPLY IN SUPPORT OF MOTION FOR NEW TRIAL                                    Page 6

or intended to frighten rather than as a direct attempt to kill. That is why the omitted forensic evidence was material.[15]

The Government points to cooperating witnesses who said Song later made inculpatory statements.[16] In *Draughon*, the State also pointed to their witness as substituting for the missing evidence. *Draughon v. Dretke*, 427 F.3d at 294. But none of that replaces objective forensic evidence about whether the round that caused the injury traveled directly or after deflection. The physical scene either corroborated the Government's theory or it did not. In *Draughon*, the absence of forensic scene testimony both probably caused a different result and "undermine[d] confidence in the outcome." *See Id.* at 293, 298 (explaining the second *Strickland* prong and that it was met). So too here, the Government's failure to preserve or disclose the underlying strike site evidence in time for the defense to test it and present forensic scene testimony probably caused a different

---

[15] To the extent the Court analyzes Song's motion under *Berry*, he satisfies all five factors. First, the newly discovered evidence was not Song's own recollection that rounds may have struck the ground, but the trial revelation that investigators never photographed, measured, swabbed, or otherwise documented the alleged ground and concrete strike sites, even though Ranger Hill testified that a Leica RTC360 scanner was obtained and Burris referenced only a shell-casing reconstruction rather than any trajectory analysis. (Song's Mot. for New Trial at pages 3–5) Second, that omission could not reasonably have been discovered earlier from the production of other scene photographs, and once Hill and Burris disclosed it during trial, the transient dirt-and-concrete evidence could not be recreated. (Id. at 8–10) Likewise, the statement "several hundred photos of the scene of the shooting at Prairieland Detention Center, including photos of the concrete area in front of Song *where any ground strikes would have been*. *See, e.g.*, Gov. Ex. 52 at 1–6," is disingenuous because, even in the page 1 photograph (the image appearing closest to the location of the purported shots) the photographer's distance makes any concrete strikes, which Ranger Hill says were present, impossible to see, and the remaining nighttime photographs were taken from even farther away. (United States' Opp. to Song's Mot. for New Trial at page at 3 (emphasis added)) Third, this evidence was not cumulative or merely impeaching because it concerned the existence and preservation of the only objective physical evidence bearing on trajectory, ricochet, and direction of fire, and the Government itself has distinguished between impeachment evidence and the "potentially exculpatory evidence" that might have been obtained had all ground-strike evidence been collected and preserved. (United States' Opp. to Song's Mot. for New Trial at pages 1–2) Fourth, the evidence was material because attempted murder requires proof of a specific intent to kill, not mere recklessness or wanton conduct. See *Braxton v. United States*, 500 U.S. 344 (1991); *United States v. Kwong*, 14 F.3d 189 (2d Cir. 1994). The Government itself treated line-of-fire evidence as central enough to seek a supplemental transferred-intent instruction after Hill testified that detention officers were allegedly in the line of fire. (Government's Motion for a Supplemental Jury Instruction on the Doctrine of Transferred Intent at page 2) Fifth, this evidence would probably have produced a different result because the jury never heard what preserved strike-site evidence, projectile testing, or a competent ricochet analysis would have shown; it heard only that the Government failed to preserve the best forensic evidence on intent. In a case that turned on specific intent, the verdict should not stand where the Government both relied on trajectory and failed to preserve the very physical evidence most capable of proving or disproving it.

[16] United States' Opp. to Song's Mot. for New Trial at page 4.

REPLY IN SUPPORT OF MOTION FOR NEW TRIAL                                    Page 7

verdict and, indeed, "put[s] the whole case in such a different light as to undermine confidence in the verdict."

## III. THE BRADY VIOLATION WAS NOT CURED BY LATE TRIAL REVELATION.

The favorable evidence was not just the abstract fact that photographs were absent. It was that investigators had identified allegedly fresh strike locations, yet failed to photograph, measure, preserve, or disclose that omission before trial, depriving the defense of the ability to conduct meaningful expert analysis and pretrial litigation.

The Government argues that the evidence was not suppressed because the defense could have discovered the omission from the discovery production or by asking.[17] But the Government cites no authority holding that *Brady* is satisfied where the prosecution says nothing about the nonexistence of central scene documentation and leaves the defense to infer from omission that the evidence was never created or preserved. Under *Kyles*, the knowledge of scene investigators is imputed to the prosecution. *Kyles v. Whitley*, 514 U.S. at 437-38. If investigators knew before trial that no photographs or measurements existed for the alleged strike sites they later relied on, the Government had a duty to disclose that in time for the defense to use it.

The Government's own opposition also concedes the point it tries to minimize. It expressly distinguishes between the late-revealed absence of strike site photographs and the "potentially exculpatory evidence that might have been obtained if the United States had collected and preserved all evidence relating to the ground strikes.[18]" Once the Government acknowledges that the uncollected strike evidence may have been exculpatory, its attempt to reduce the issue to impeachment collapses.

---

[17] United States' Opp. to Song's Mot. for New Trial at pages 12-13.
[18] United States' Opp. to Song's Mot. for New Trial at pages 1-2.

Nor is the problem cured by saying the defense learned of the omission during trial and made some use of it. Effective use here required more than cross-examining Ranger Hill after the scene had long since changed. It required the chance to seek scene access, retain a reconstruction expert, request preservation of the strike locations, consider testing of the recovered projectile for substrate transfer, and move pretrial against speculative trajectory opinions. A mid-trial revelation that the Government never preserved the core physical evidence did not cure that prejudice.

## IV. AT MINIMUM, THE RECORD WARRANTS AN EVIDENTIARY HEARING UNDER *YOUNGBLOOD* AND *TROMBETTA*.

Even if the Court does not grant a new trial on the present record, it should hold an evidentiary hearing. The Government portrays Song's bad-faith argument as conclusory.[19] It is not.

The current record shows that investigators identified what appeared to be fresh bullet defects; a Leica RTC360 scene scanner was obtained for measurement purposes; shell casings were recovered with targeted effort; other scene items were documented; yet no photographs were taken of the alleged strike points, no swabs were taken from those points, no measurements fixed them to the scene, and no comparable preservation was undertaken.[20] That is not a bare allegation. It is a concrete claim of selective non-documentation of the very evidence most likely to resolve direction of fire.

The Government's transferred-intent filing underscores why factual development is warranted. In the Government's Motion for a Supplemental Jury Instruction on the Doctrine of Transferred Intent, the Government represented that Hill's redirect testimony created a new evidentiary development regarding who was in the line of fire and that the evidence showed Song

---

[19] United States' Opp. to Song's Mot. for New Trial at pages 13-15
[20] Song's Mot. for New Trial at pages 3-5.

intended to target the detention officers and Lt. Gross.[21] If line of fire was important enough to prompt a supplemental jury-instruction request, then the scene-processing decisions affecting that same issue are important enough to examine under oath.

The factual questions are concrete: who first observed the alleged strike points; what the scanner captured; whether any notes, sketches, photo logs, scanner exports, body-camera footage, or internal communications referenced those strike locations; why fresh concrete defects were not photographed or measured; and when prosecutors learned that no such documentation existed.[22] Those questions go directly to whether the evidence had apparent exculpatory value when observed, whether comparable evidence remained reasonably available, and whether the failure to preserve was merely negligent or reflected a conscious investigative choice. Those are hearing questions.

## V. THE INTERESTS OF JUSTICE FAVOR A NEW TRIAL.

Rule 33 hearings and new trials are unusual. But this is an unusual case. The central physical evidence on intent was transient. The defense did not learn until trial that investigators had not documented it. The Government nonetheless used scene interpretation, line-of-fire evidence, and strike evidence to argue intent. The jury never saw the contemporaneous strike site evidence because the Government never documented or preserved it.

This is not a routine post-verdict complaint about better lawyering or marginal impeachment. It is a challenge to the reliability of the physical proof on the central disputed element. When central physical evidence is left undocumented and the defense does not learn that fact until trial, confidence in the verdict is undermined. *Draughon v. Dretke*, 427 F.3d at 293, 298.

---

[21] Government's Motion for a Supplemental Jury Instruction on the Doctrine of Transferred Intent at page 2.
[22] Song's Mot. for New Trial at pages 9-10.

Rule 33 exists so that verdicts are not left in place when the trial process has failed to provide a reliable basis for deciding guilt on a disputed, fact-intensive question.[23]

## VI. CONCLUSION.

For these reasons, and those stated in the motion, the Court should grant Defendant Song's Motion for New Trial. In the alternative, the Court should grant an evidentiary hearing and order production of the scene-processing materials identified in the motion.

Respectfully submitted,

*/s/  Tailim Song*
TAILIM SONG
State Bar No. 00792845
tsong@songwhiddon.com
8131 LBJ Fwy, Suite 770
Dallas, Texas 75251
(214) 528-8400 Telephone
(214) 528-8402 Facsimile

Phillip Hayes
3300 Oak Lawn Ave # 600
Dallas, TX 75219
214-774-0488
Fax: 214-528-6601
SBOT # 24012803
Phayes1995@hotmail.com
COUNSEL FOR DEFENDANT
BENJAMIN SONG

### CERTIFICATE OF SERVICE

I certify that on April 17, 2026, this document was filed via the Court's CM/ECF system, which will serve a copy on all counsel of record.

*/s/  Tailim Song*
Tailim Song

---

[23] Song's Mot. for New Trial at pages 9-10.