UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

| | | |
|---|---|---|
| United States of America | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case 4:25-CR-259-O |
| | § | |
| Daniel Rolando Sanchez Estrada (09), | § | |
| Defendant. | § | |
| | § | |

**Defendant Daniel Rolando Sanchez Estrada's
Objections to Preliminary Order of Forfeiture
and Request for Hearing**

Defendant Daniel Rolando Sanchez Estrada objects to the Court's Preliminary Order of

Forfeiture (ECF 519), on both procedural and substantive grounds. He asks that the Court rescind

the Preliminary Order and either deny the Government's motion outright or set the matter for a

hearing as required by Federal Rule of Criminal Procedure Fed. R. Crim. P. 32.2(b)(1)(B). He also

asks that the Court order the return of all the property held by the Government in which Mr.

Sanchez has a possessory or property interest. *See* Fed. R. Crim. P. 33(g).

**Background**

The jury convicted Daniel Sanchez Estrada of corruptly concealing or attempting to

conceal a document or object, in violation of 18 U.S.C. § 1512(c)(1), and conspiracy to commit

that offense, in violation of § 1512(k). According to Count Eleven of the Second Superseding

Indictment, Mr. Sanchez committed the concealment offense when he "transported a box that

contained numerous Antifa Materials ... from his residence in Garland, Texas, to a location in

Denton, Texas." (ECF 127 at 20). According to Count Twelve, the documents and pamphlets in

the box "would implicate" his wife Maricela Rueda "in the riot and shooting and the Prairieland

Detention Center that occurred at the Prairieland Detention Center that occurred on July 4, 2025." (ECF 127 at 21).

The Second Superseding Indictment included a forfeiture notice. (ECF 127 at 23–26). The forfeiture allegations relating to Mr. Sanchez and to Counts Eleven and Twelve are much narrower than the other forfeiture allegations. For the other counts, the Government asserted the authority to take various property "involved in," "used to commit," or "used in" the offense of conviction. (ECF 127 at 23–25). The Government also cited and relied on statutes providing broader forfeiture authority for those other counts.

Counts Eleven and Twelve are different. If criminal forfeiture is available *at all* for these convictions, it must be through the combined power of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The former statute authorizes *civil* forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." 18 U.S.C. § 981(a)(1)(C). The latter statute authorizes *criminal* forfeiture where *civil* forfeiture is otherwise allowed.[1] This authority extends only to the "proceeds" of the offense.

---

[1] Title 28, Section 2461(c) provides:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code. The procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding, except that subsection (d) of such section applies only in cases in which the defendant is convicted of a violation of such Act.

The Government recognized its limited statutory forfeiture authority in the Second Superseding Indictment: it said it would seek forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to the offense." (ECF 127 at 25). On February 9, 2026, the Government filed a Bill of Particulars enumerating a laundry list of items taken from Mr. Sanchez's pickup truck, his parent's home on Dove Meadow Drive in Garland, and the apartment on East Prairie Street in Denton.

On March 13, 2026, the jury returned guilty verdicts against Mr. Sanchez for Counts Eleven and Twelve. By Rule, the Court must address any claim for forfeiture "[a]s soon as practical" after that verdict. Fed. R. Crim. P. 32.2(b)(1)(A). But the Government took no action to pursue forfeiture at that time. Even after Mr. Sanchez's objections to the PSR addressed the absence of any "proceeds," the Government did nothing. (ECF 417 at 1, Objection Number 2; *see also* PSR Addendum, ECF 467-1, at 6).

On June 16, 2026, the Government filed its Opposed Motion for a Preliminary Order of Forfeiture (ECF 515). That did not leave enough time to complete the forfeiture process set out by Rule 32.2. According to Rule 32.2(b)(1)(B), the Court must hold a hearing "on either party's request" before making any determinations about forfeiture. After the hearing, the Court should enter a preliminary order of forfeiture. Fed. R. Crim. P. 32.2(b)(2). Generally, the Court is required to enter the preliminary order "sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant."

The Court granted the Government's motion on June 17, without any response from Mr. Sanchez. Friday, June 19 is a federal holiday.

### Argument

1.    The Court granted the Government's opposed motion for preliminary order without giving Mr. Sanchez any opportunity to respond, and without conducting the hearing that

is required for contested forfeitures. The hearing *must precede* any determination about forfeitability; and the forfeitability determination should be reflected in the preliminary order of forfeiture. Ordering the forfeiture of numerous items of personal property without any opportunity to be heard violates the Fifth Amendment and the governing statutes and rules. *See,* e.g., U.S. Const., amend. V[2]; Fed. R. Crim. P. 32.2(b)(1).

2. The Government's motion includes incorrect assertions apparently copied and pasted from other forfeiture motions. For example, paragraph 6 asserts that Mr. Sanchez "used the subject property to participate and carry on a riot and committing any act of violence in furtherance of a riot, and during the course of such use and thereafter performed and attempted to perform other acts including engaging in acts of violence which constituted a clear and present danger of damage and injury to the property and person.." (ECF 515 at 3-4). That is not true; the Government's witnesses repeatedly acknowledged, and the Government's exhibits showed, that Mr. Sanchez was nowhere near the Prairieland Detention facility at the time of the protest. No one accused him of committing any act of violence. These false allegations are also irrelevant to the critical question of whether there are *any* "proceeds" of the two offenses of conviction, and if so, whether any of the myriad items listed on Exhibit A are proceeds or are traceable to proceeds.

3. The Government's motion refers to an "Attachment A." That attachment does not appear on ECF and may have been inadvertently omitted from the ECF filing. The Government provided Mr. Sanchez's attorneys with a document entitled Attachment A on the day of filing, and that document is the same or similar to "Exhibit A" that was filed as part of ECF 255.

4. As the party seeking forfeiture, the Government bears the burden of establishing that it is entitled to that relief. Mr. Sanchez would urge the Court to hold that, because criminal

---

[2] The Fifth Amendment to the U.S. Constitution provides, in pertinent part: "No person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

forfeiture is part of the statutory punishment for a criminal offense, the necessary facts must be alleged in the indictment and proven to the factfinder beyond a reasonable doubt.[3] Alternatively, the Government must at least prove that the items in question are "proceeds" by a preponderance of the evidence.

> 5.      Mr. Sanchez urges the Court to hold that convictions under 18 U.S.C. § 1512(c) and (k) do not give rise to any forfeiture authority *at all*. As noted above in the background section, the Government is relying on a series of statutory cross-references as authority for the requested forfeiture. Title 18, Section 981 authorizes forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title, or a conspiracy to commit such offense." 18 U.S.C. § 981(a)(1)(C). That money-laundering statutes define "specified unlawful activity" to include "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31." 18 U.S.C. § 1956(c)(7)(A). Section 1961(1) defines "racketeering activity" to mean, in part:

> (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1512 (relating to tampering with a witness, victim, or an informant).

Obviously, the document-concealment offense under 18 U.S.C. § 1512(c)(1) does not "relat[e] to tampering with a witness, victim, or an informant." But even ignoring the parenthetical, § 1512(c)(1) is not included because of the "reference canon" of statutory construction:

> According to the "reference" canon, when a statute refers to a general subject, the statute adopts the law on that subject as it exists whenever a question under the statute arises. ... In contrast, a statute that refers to another statute by specific title or section number in effect cuts and pastes the referenced

---

[3] The parties agreed that the Court, rather than the jury, would adjudicate any "forfeiture determinations." (ECF 257). That was the extent of Mr. Sanchez's agreement; he did not stipulate to the forfeitability of any items; and he certainly did not agree that the Court would decide the matter based only on a last-minute Government motion, without any opportunity to respond, lacking adequate evidence, and using an improper legal standard.

statute *as it existed when the referring statute was enacted, without any subsequent amendments.*

*Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 209–10 (2019) (emphasis added); accord *Brown v. United States*, 602 U.S. 101, 116 (2024). The racketeering definition in § 1961(1) "refers to another statute by specific ... section number." *Id.*; *see* 18 U.S.C. § 1961(1) ("section 1512"). That reference to § 1512 was enacted November 10, 1986, in Pub. L. 99-646, Sec. 50(a), 100 Stat. 3605. Back then, § 1512 had no document-concealment provision. *That* crime was created by the Sarbanes Oxley Act, Pub L 107-204, tit. XI, sec. 1102, 116 Stat 807 (2002). In other words, under "the reference canon," "racketeering activity" in § 1961(1) includes only the 1986 version of § 1512, "without any subsequent amendments." *Jam*, 586 U.S. at 209-10. That means that concealing documents under § 1512(c)(1) *is not* "racketeering activity," and therefore is not "specified unlawful activity," and therefore a conviction under that statute will not give rise to *any* kind of forfeiture authority (or at least no forfeiture authority under § 981).

6.      Even if § 981 *can* apply to this kind of conviction, it would only authorize forfeiture of "proceeds." The Government's motion does not expressly allege that any specific item represents "proceeds" of the offenses of conviction. The motion contains a false allegation that Mr. Sanchez "used" the items to participate and carry on a riot, and to commit an act of violence, but (a) all the evidence at trial rebuts that assertion and (b) even if it were true, it would not make the items "proceeds" of the two offenses of conviction.

7.      The governing statute provides two definitions of "proceeds." *See* 18 U.S.C. § 981(a)(2)(A), (B); *see also United States v. Davis*, 53 F.4th 833, 852–54 (5th Cir. 2022) (vacating a forfeiture sentence because the district court used the wrong statutory definition of "proceeds"). Under both definitions, "proceeds" means money or property the defendant obtained *by* and *through* the offense of conviction. *Compare* § 981(a)(2)(A) ("property of any kind obtained, directly or indirectly, *as the result of the commission of the offense* giving rise to the forfeiture) *with*

§ 981(a)(2)(B) ("the amount of money acquired *through the illegal transactions* resulting in the forfeiture") (emphases added).

8.      For every item listed in Exhibit A that is owned or that was previously possessed by Mr. Sanchez, he had the item *long before* the conduct giving rise to his two convictions. *See, e.g.,* Trial Tr. vol. 8, p. 219 (noting that the most recent date in the box of pamphlets was 2021); *id.* at 219–20 (FBI Case agent admitting that, for all she knew, the box could have been "packed back in 2021 and just never opened" before reaching the Denton apartment); *id.* at 228–29 (Case Agent unable to say whether the journals found at the Dove Meadow residence were dated more recently than 2021).

9.      The timing of the Government's motion and the Preliminary Order have made it difficult to address each and every item on the Government's wish list. What's more, the Government only avers in the most general terms that "the evidence offered at trial" establishes that every item it wants "has the requisite nexus" with Counts One and Two. (ECF 515 at 4).

10.     The first two items on the list (paragraphs 2.a and 2.b of the Motion) are Mexican and American currency that the FBI Task Force Officers took from Mr. Sanchez's pickup truck during a warrantless search before it was towed. The seizure of that cash is described more fully in the Motion to Suppress, ECF 202 at 4–5 & 17–19. As Mr. Sanchez explained in the motion, officers had no authority to seize the cash at that time, and the evidence strongly suggests that they took it so that he could not post bail after the arrest they engineered. Far from forfeiting the cash, the Court should order the return of the money to Mr. Sanchez under Federal Rule of Criminal Procedure 33(g).

11.     Regardless of whether officers had authority or reason to seize the cash initially, there was *no* evidence at trial that the cash was fruits or "proceeds" of a concealment offense or conspiracy. It is honestly hard to imagine how *anything* could be proceeds of the offenses. There

was no such evidence at trial. Electronic word searches of the transcript do not reveal any discussion of the cash taken from Mr. Sanchez at the time of his arrest.

12.     The Government seeks a variety of items taken from the Denton Apartment, from Mr. Sanchez's parents' house in Garland, and from his pickup truck after his arrest. Based on the broadly worded descriptions in the motion and even in Exhibit A, it is hard to speak with much specificity, or to identify with confidence which items belong to Mr. Sanchez. In general, the Government has contended throughout that the contents of at least one box taken from that apartment belonged to Mr. Sanchez, and the box included various items—keepsakes from his time as an elementary school Hip Hop dance coach, some political literature and pamphlets, and some artwork. The Government's list also appears to include items taken from the apartment that did not belong to Mr. Sanchez. According to media reports from around the time of the search, police seized several items that belong to the residents of the Denton Apartment and had refused to return those items.

13.     Many of the items the Government is seeking are political literature that is protected under the First Amendment. The Supreme Court has "long recognized that the seizure of films or books on the basis of their content implicates First Amendment concerns not raised by other kinds of seizures." *New York v. P.J. Video, Inc.*, 475 U.S. 868, 873 (1986). Courts must therefore exercise "the most scrupulous exactitude" when law enforcement decides to seize "books" and other literature and "the basis for their seizure is the ideas which they contain." *Stanford v. Texas*, 379 U.S. 476, 485 (1965). As Mr. Sanchez explained earlier, the pamphlets and artwork were initially seized pursuant to a warrant that did not satisfy the constitutional demands of particularity. (ECF 247 at 13–17).

14.     The same constitutional concerns counsel against allowing the Government to permanently retain and potentially destroy protected literature because it does not like the ideas

conveyed, and especially through a statute that does not even purport to authorize such seizures. Section 981(a)(1)(C) allows prosecutors to deprive money launderers of illicit profits. Nothing in its language comes remotely close to authorizing the Government to keep and destroy what it calls "Handwritten Notes" and "Anti-Government Papers." (ECF 255 at 3), a "Zip Up Hoodie with picture depicting U.S. ICE Truck on Fire" (ECF 255 at 4), or a "Poster" (ECF 255 at 4) with a message critical of a governmental agency.

15.     In addition to these items associated with disfavored ideologies, the Government also seeks forfeiture of a variety of everyday items that have no apparent connection to the protest, or Antifa, or leftism at all. Agents seized several "electronic devices" that were not used in any nefarious way, and which certainly were not "proceeds" of the crimes in Counts Eleven and Twelve. No statute authorizes their forfeiture.

16.     Because nothing on the list represents "proceeds" of the offenses of conviction—or because the Government hasn't pointed to a single shred of evidence that the items are proceeds—the Court should rescind its Preliminary order and deny the motion outright. But if the Government did have evidence that one or more of the items it seeks are proceeds, Mr. Sanchez would be entitled to an evidentiary hearing to contest that proof. And if the Government were to successfully prove that one or more items were "proceeds," or derived from proceeds," then the Court should enter a new Preliminary Order in advance of sentencing to allow the parties to suggest corrections before the order becomes final as to Mr. Sanchez at the sentencing hearing.

### Conclusion

The Court should rescind its Preliminary Forfeiture Order. Mr. Sanchez asks that the Court either deny the Government's motion outright or convene the required hearing *before* entering any preliminary order, as required by the governing rule.

Respectfully submitted,

/s/ J. Matthew Wright

Assistant Federal Public Defender
600 S. Tyler Street, Suite 2300
Amarillo, Texas 79101
Matthew_Wright@fd.org
Texas Bar Number 24058188

## CERTIFICATE OF SERVICE

I filed this document via ECF. Opposing counsel are registered filers and are deemed served.

/s/ J. Matthew Wright